Jon W. Monson, OSB No. 102650
jmonson@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR  97201
(503) 224-3092

William K. Pao (*pro hac vice*)
wpao@omm.com
Meg K. Lippincott (*pro hac vice*)
mlippincott@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA  90071
(213) 430-6000

Daniel L. Cantor (*pro hac vice*)
dcantor@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
(212) 326-2000

*Attorneys for Defendant Canaan Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PHILIPPE LEMIEUX, individually and on behalf of all others similarly situated, | Case No. 3:20-cv-00356-MO |
| Plaintiff, | **DEFENDANT CANAAN, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)** |
| v. | |
| CANAAN INC., NANGENG ZHANG, JIAXUAAN LI, JIANPING KONG, QQIFENG SUN, QUANFU HONG, CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CMB *(caption continued next page)* | **ORAL ARGUMENT REQUESTED** |

INTERNATIONAL CAPITAL LIMITED,
GALAXY DIGITAL ADVISORS LLC,
HUATAI FINANCIAL HOLDINGS (HONG
KONG) LIMITED, TIGER BROKERS (NZ)
LIMITED, HAITONG INTERNATIONAL
SECURITIES COMPANY LIMITED, and
VIEWTRADE SECURITIES, INC.,

      Defendants.

## LR 7-1 CERTIFICATE OF CONFERRAL

The undersigned counsel for Defendant Canaan Inc. ("Canaan") certifies that counsel for Canaan made a good faith effort through telephone conference with counsel for Plaintiff to resolve the dispute at issue on this Motion to Transfer Venue (the "Motion") and have been unable to do so. Plaintiff opposes the Motion.

## MOTION

Canaan respectfully requests that this Court issue an order transferring this litigation to the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a). This Motion is supported by the following Memorandum and the supporting declaration of Meg K. Lippincott ("Lippincott Decl.").

## PRELIMINARY STATEMENT

This case has no business being in Oregon, which is home to none of the events, evidence, witnesses, defendants or—now—even the plaintiffs seeking to lead it. The only venue with *any* connection to this dispute is the SDNY, the court to which the case should be transferred. Canaan is a Nasdaq-listed Chinese company whose IPO was underwritten principally in New York, negotiated in New York, executed in New York, and administered in New York. Canaan's agent to receive service of process is in New York. So is the plaintiffs' law firm that rushed to bring the first putative class action in this dispute and to seek designation for itself as Lead Counsel. Indeed,

Page 2 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

the complaint in this case asserts no factual connection at all to Oregon—except for Plaintiff Philippe Lemieux himself, a purported Oregon resident who allegedly purchased $1,630 of Canaan stock. *See* ECF Dkt. No. 1 (filed Mar. 4, 2020.)  And now Lemieux has apparently abandoned the case.

Although the Complaint portrays Lemieux as equipped to "fairly and adequately protect the interests" of the putative class and prays for an order "designating [Lemieux] as Lead Plaintiff," Lemieux was nowhere to be found when the law firm representing him moved 60 days later for different, **non-Oregon** plaintiffs to be appointed as Lead Plaintiffs. *Compare* Compl. ¶ 48, *Prayer for Relief* ¶ (a) *with* ECF Dkt. No. 13 (filed May 4, 2020).  That motion did not mention Lemieux or explain why he no longer wished to represent the putative class he was so eager to stand in for just two months ago.  The only remaining connection to Lemieux, and, by extension, to Oregon, is his name on Movants' caption sheet.  If any plaintiff can be used as a placeholder to secure access to his counsel's preferred venue—only to be replaced at the 11th hour by plaintiffs with zero connection to that district—then anyone can file a putative class action more or less anywhere. The Court should not countenance such maneuvering.

Defendants respectfully request that the Court issue an order, under 28 U.S.C. § 1404(a), transferring this litigation to the SDNY, a more convenient venue that will produce a more efficient and just result.  Transfer is warranted because: (i) the SDNY has a local interest in resolving this dispute in which none of the operative facts relate to Oregon; (ii) the agreements necessary for the IPO were negotiated in New York and are governed by New York law; (iii) the SDNY is a more convenient forum for potential witnesses, many of whom are located in China; (iv) the SDNY is a more convenient forum for the parties, including the many New York-based defendants and even plaintiffs' New York counsel; (v) the SDNY has substantial expertise in handling securities class

Page 3 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

actions and in applying and interpreting New York law; and (vi) the SDNY offers an efficient venue for resolution of this matter.  No considerations weigh against transfer.

## BACKGROUND

### I.    Canaan's IPO.

Canaan is a cryptocurrency leader that has helped pioneer access to secure virtual currencies.  It was founded in 2013 to provide supercomputing solutions incorporating its proprietary high-performance application-specific integrated circuit technology for cryptocurrency mining.  (Lippincott Decl. ¶ 3, Ex. 1 ("Registration Statement") at 1.)  It has since grown into the second-largest designer and manufacturer of Bitcoin mining machines.  (*Id.*)  Although incorporated in the Cayman Islands, Canaan conducts its cutting-edge operations through its subsidiaries in China, and has its principal executive offices in Hangzhou, China.  (*Id.* at 3-4.)  Canaan has no operations or presence in the United States, let alone in Oregon.  Canaan does not have offices, customers, or distributors in Oregon.  None of Canaan's senior executives have ever been to Oregon.

Like many startups in the tech world, Canaan dreamed of expanding its role in an emerging industry and accessing the robust worldwide capital markets, which led it to pursue an initial public offering ("IPO").  Looking beyond China, it set its sights on the world's second-largest stock exchange, the Nasdaq, based in New York.  Canaan then began the rigorous process of listing 10 million American Depositary Shares (ADS), the securities that allow foreign companies to connect with investors on a U.S. exchange.

The preparation for its IPO took place in China and New York.  Canaan worked with multiple underwriters (the "Underwriter Defendants"), including New York-based lead underwriter Citigroup Global Markets Inc. ("Citi"), which acted as the sole representative for all

the underwriters.  (Lippincott Decl. ¶ 3, Ex. 2 ("Underwriting Agreement") at 42.)  Another of the Underwriter Defendants, Galaxy Digital Advisors LLC, is also based in New York City. (Registration Statement at 174.)   Canaan negotiated the Underwriting Agreement with the Underwriter Defendants in New York City.   Under the Underwriting Agreement, all communications to the underwriters were to be directed to Citi's offices in New York City. (Underwriting Agreement at 36.)  Canaan also engaged The Bank of New York Mellon, a New York banking corporation, as the depositary (the "Depositary") for the IPO.  (Lippincott Decl. ¶ 3, Ex. 3 ("Deposit Agreement") at 1.)

Canaan's efforts culminated in its IPO on November 21, 2019, which raised $90 million to support the continued development of its innovative technology.  The negotiation of the IPO pricing took place in New York, and the ADS continue to be administered from the Depositary's New York office.  (Registration Statement at 158.)

## II.    This Action.

Just a few months after the IPO, Canaan suffered a short-seller attack.  On February 20, 2020, Marcus Aurelius Value—a pseudonymous investment analyst that stood to gain from a drop in the company's share price—posted an online report purporting to reveal "Canaan's numerous false and/or misleading statements."   (Compl. ¶ 38).  Dozens of such opportunistic attacks, launched from behind a veil of anonymity, have taken aim at public companies in recent years— often blindsiding their targets with inflammatory allegations.[1]  The MAV Report alleged that Canaan had not disclosed related-party transactions.  (Compl. ¶ 39.)  It also claimed that Canaan's financial prospects were worse than disclosed, *id.* ¶ 40, that Canaan deleted distributors from its

---

[1] Jeff Katz and Annie Hancock, "Short Activism: The Rise in Anonymous Online Short Attacks, *Harvard Law School Forum on Corporate Governance,* Nov. 27, 2017, available at https://corpgov.law.harvard.edu/2017/11/27/short-activism-the-rise-in-anonymous-online-short-attacks/.

Page 5 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

website before the IPO, *id.* ¶ 41, and that certain Canaan clients were unlikely to be repeat customers, *id.* ¶ 42. The day the MAV Report appeared, Canaan's stock price dropped 6.8%. (*Id.* ¶ 43.)

In the wake of the MAV Report, at least six different plaintiffs' firms issued press releases announcing "investigations" into shareholder claims against Canaan.[2] In the rush to be first to the courthouse, The Rosen Law Firm, P.A. ("Rosen") managed to find Philippe Lemieux (the "Named Plaintiff"), an Oregon resident and owner of just 200 of the 10 million ADS—i.e., 0.002%— offered in Canaan's IPO. New York-based Rosen quickly filed the present case under Lemieux's name on March 4, 2020, in this Court, despite the cause of action lacking any connection to Oregon. On behalf of himself and the putative class, Lemieux asked the Court for an order "designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel." (Compl. *Prayer for Relief* ¶ (a).)

Borrowing heavily from the MAV Report, the Complaint alleges that the Registration Statement failed to disclose related-party transactions, misrepresented Canaan's financial prospects, omitted material information about Canaan's distributors, and omitted information that prior clients were not likely to be repeat customers. (*Id.* ¶¶ 37-42.) It names as Defendants: (i) Canaan; (ii) two Canaan executives and three Canaan directors (the "Individual Defendants"); and (iii) eight Underwriter Defendants. (*Id.* ¶¶ 7-13.) The Named Plaintiff purported to represent a class of "all persons other than Defendants who purchased or otherwise acquired Canaan ADSs . . . and were damaged thereby." (*Id.* ¶ 45.) The Complaint alleges violations of Securities

---

[2] These include The Rosen Law Firm, P.A., Pomerantz LLP, Robbins LLP, The Law Offices of Howard G. Smith, The Law Offices of Frank R. Cruz, and Kirby McInerney LLP.

Act Section 11 and Section 12(a)(2) by all Defendants, and Section 15 by the Individual Defendants. (*Id.* ¶¶ 2, 54, 69, 73.)

Just two days after Lemieux's Complaint was filed, a nearly identical state-court case was filed in New York, the logical state for any such litigation to be filed. *See Salmaan Abdullahi v. Canaan Inc., et al.*, No. 651515/2020, ECF Dkt. No. 1 (Sup. Ct., N.Y. Cty. Mar. 6, 2020) (attached as Lippincott Decl. Ex. 4).[3]  The Underwriting Agreement and the Deposit Agreement are governed by the laws of the State of New York and contemplate the resolution of any disputes arising from the contracts in New York.  (Underwriting Agreement at 20, 37-38; Deposit Agreement at Sections 7.6, 7.9.)  Further, the Registration Statement designated Cogency Global Inc. in New York City as Canaan's agent to receive service of process for any action brought in the SDNY or New York state court.  (Registration Statement at 60.)

Then, on May 4, 2020—the final day of the 60-day window for Lead Plaintiff motions— Lemieux disappeared from his own case.  His counsel, Rosen, found two replacement plaintiffs, Boluka Garment Co., Limited and Hongkuo Tang, who moved for appointment as Lead Plaintiffs (the "Moving Plaintiffs"), as well as approval of Rosen as Lead Counsel and Ransom, Gilbertson, Martin & Ratliff, LLP as Liaison Counsel.  In a mandatory LR 7-1 meet-and-confer discussion, Rosen confirmed that these two new plaintiffs are not Oregon residents.  (Lippincott Decl. ¶ 4.)

## **ARGUMENT**

### I.    **THE COURT SHOULD TRANSFER THIS CASE TO THE SDNY UNDER 28 U.S.C. § 1404(A).**

Under 28 U.S.C. § 1404(a), this case should be transferred to New York.  "Section 1404(a) was enacted to allow 'easy change of venue'" for defendants when a case is filed where it does not

---

[3] Canaan has moved to stay this action pending adjudication of the overlapping federal case. (*Salmaan Abdullahi v. Canaan Inc., et al.*, Case No. 651515/2020, ECF No. 17 (Sup. Ct., N.Y. Cty.).

belong. *Partney Const., Inc. v. Ducks Unlimited, Inc.*, No. 08-574-SU, 2008 WL 4838849, at *2 (D. Or. Nov. 3, 2008) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 (1981)). This case does not belong in Oregon, which has no connection to the underlying factual allegations—and no connection to the Named Plaintiff, now that Lemieux does not even want to lead the case. Rather, the relevant events all took place in China and New York. Most of the relevant parties reside in Asia or New York, from key defendants and witnesses to the Moving Plaintiffs and their counsel. The natural venue for this case is the SDNY, where it plainly could have—and should have—been filed.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." Courts have "broad discretion" in transferring an action, even when the original venue is proper. *Partney*, 2008 WL 4838849 at *2. To find that a case merits transfer, courts must determine: (i) whether the transferee court is one in which the action could have been commenced originally; and if so, (ii) whether transfer would result in greater convenience to the parties and witnesses and advance the interest of justice. *Id.* at *2. In evaluating this second factor, relevant considerations include: (i) "local interest in the controversy"; (ii) "the location where relevant agreements were negotiated and executed"; (iii) "convenience of the witnesses"; (iv) "convenience of the parties"; (v) "the state that is most familiar with the governing law"; (vi) "the relative court congestion and time of trial in each forum"; (vii) "the ease of access to sources of proof"; and (viii) "the plaintiff's choice of forum." *Id.* at *2; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Both prongs of this analysis warrant transfer from the District of Oregon to the SDNY.

**A. This Case Could Have Been Filed in the SDNY.**

This case easily meets the threshold requirement for transfer under Section 1404(a): the Named Plaintiff could have originally filed this case in the SDNY.  28 U.S.C. § 1404(a).  "An action is one that might have been brought in the transferee court when (1) the transferee court would have had subject matter jurisdiction at the time the action was filed; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper." *Encore D.E.C., LLC v. APRES1 I, LLC*, No. 3:14-cv-01238-ST, 2014 WL 12576650, at *3 (D. Or. Dec. 22, 2014).

Because the Securities Act grants all district courts of the United States subject matter jurisdiction over Securities Act claims, there is no question that SDNY has subject matter jurisdiction over this case.  15 U.S.C. § 77v.  Venue and personal jurisdiction are also proper in the SDNY under the Securities Act because Canaan's ADS are listed on the New York-based Nasdaq exchange, which is sufficient to establish venue under Section 22(a).  (Compl. ¶ 7); 15 U.S.C. § 77v(a) ("Any such suit or action may be brought . . . in the district where the offer or sale took place . . . .").  And since venue is proper in the SDNY, there is also personal jurisdiction over Canaan in the SDNY based on Section 22's nationwide service of process clause.  *S.E.C. v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) ("[B]y empowering the district court to serve process nationwide, § 22 of the Securities Act permits district courts to obtain personal jurisdiction over parties who are properly served.").  Indeed, for these reasons, cases involving Chinese companies listed on American exchanges are frequently brought in the SDNY.  *See, e.g., Wandel v. Phoenix Tree Holdings Ltd. et al.*, No. 1:20-cv-3259 (S.D.N.Y.) (filed Apr. 24, 2020); *Shiferaw v. iQIYI Inc. et al.*, No. 1:20cv-3115 (S.D.N.Y.) (filed Apr. 17, 2020); *Bellingham v. Quidian Inc. et al.*, No. 1:20-cv-577 (S.DN.Y.) (filed Jan. 22, 2020); *Marchand v. Momo Inc.*, No. 1:19-cv-4433 (S.D.N.Y.) (filed May 15, 2019).

**B.  The Convenience of the Parties and Witnesses and the Interest of Justice Strongly Favor Transfer.**

Transfer of this case to the SDNY will promote the convenience of the parties and witnesses and the interest of justice.  28 U.S.C. § 1404(a).  Of the eight relevant considerations in this step of the transfer analysis, six strongly weigh in favor of transferring this action to the SDNY and two are (at worst) neutral—which is more than sufficient to warrant transfer.  *See, e.g., Eskenazi v. Slover*, No.. CV 17-4741 FMO (JEMx), 2017 WL 8186045, at *5 (C.D. Cal. Nov. 7, 2017) (granting motion to transfer when only two factors weighed in favor of transfer while the remaining factors were neutral).

   *1.  Local Interest in the Controversy*

The SDNY has a strong local interest in this case, while Oregon has none—or at least no more than any other state besides New York.  Courts generally have a strong interest in having localized disputes decided at home.  *See, e.g., Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (granting transfer "in the interest of justice" where the SDNY had a "greater interest" in resolving the matter); *Miskam v. Dollar Tree Stores*, No. 15CV1523-CPC(JLB), 2015 WL 5559863, at *3 (S.D. Cal. Sept. 21, 2015) ("there is a greater public interest in adjudicating Plaintiff's case in the [district where] . . . the events took place").  By contrast, when "there is no local interest in [a] case," there is "no point in unfairly burdening Oregon citizens to serve as jurors." *Fox v. U.S. Gov't*, No. 3:19-cv-00874-YY, 2019 WL 6493924, at *2 (D. Or. Dec. 3, 2019); *see also Dunn & Fenley, LLC v. Diederich*, Nos. 06-6243-TC, 06-6281-TC, 09-6095-TC, 2010 WL 11595950, at *6 (D. Or. Jan. 13, 2010) (citing the "unfairness of jury duty on the people of a community having no relation to litigation" as a factor in granting transfer).  In addition, "a jury of local residents . . . is likely to be more attentive to issues directly involving their state rather than a foreign state." *Partney*, 2008 WL 4838849, at *5.

The SDNY's strong connection to this case warrants transfer. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 762 (C.D. Cal. 2016) (granting transfer where "the great majority of the operative facts" occurred in the transferee district). These claims arise out of Canaan's IPO, which involved the listing of Canaan's ADS on the Nasdaq Global Market in New York. Two of the Underwriter Defendants, including Citi, are based in New York. (Registration Statement at 174.) Canaan's ADS continue to be traded on Nasdaq, and the Depositary that administers the ADS does so from its New York office. (Registration Statement at 158.) Because the SDNY has a substantial interest in ensuring the fairness of the IPO and the integrity of New York's stock markets, the SDNY has a substantial interest in the event that directly gave rise to the claims in the Complaint—the putative class's purchase of ADS from Canaan.

On the other hand, the District of Oregon has no connection to this case. While the Named Plaintiff is an Oregon resident, he has not even filed a motion to be appointed Lead Plaintiff and no longer has any meaningful role in the litigation. The Moving Plaintiffs are not Oregon residents, nor does the Complaint make a single mention of relevant facts or events taking place in Oregon. And for good reason. The allegations all focus on Canaan's alleged misstatements and omissions in the Registration Statement, which was issued as part of an IPO in New York for a foreign company that does not have offices, distributors, or customers in Oregon.

Where, as here, the original venue has no factual relation to the case and its only connection is a member of a nationwide class, transfer is appropriate to the venue with some more meaningful connection to the case (i.e., the SDNY). *Fox*, 2019 WL 6493924, at *2 (granting motion to transfer in a case that had "no connection to the District of Oregon [or where] plaintiff himself does not even reside in this district").

Page 11 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

### 2. *Location Where Relevant Agreements Were Negotiated*

That the relevant agreements were negotiated in New York and governed by New York law also favors transfer to the SDNY.  The negotiation of the IPO price and of the Underwriting Agreement terms took place in New York.  None of the relevant agreements were negotiated or executed in Oregon.  Thus, this factor "weighs heavily in favor of transfer" to the SDNY.  *Ward v. Lime Fin. Servs., Ltd*, No. CV.08-840-AC, 2009 WL 10692461, at *3 (D. Or. Jan. 15, 2009) (granting motion to transfer where agreements were executed in transferee district).

As New York-negotiated and -executed documents, the Underwriting Agreement (which, among other things, provides for the indemnification of the Underwriter Defendants by Canaan) and the Deposit Agreement (which governs the rights of all owners and holders of the ADS) are governed by New York law.  (Underwriting Agreement at 37; Deposit Agreement at Section 7.9.) Where "there is at least a possibility that resolution of [a plaintiff's] claims will require application of [the transferee district's] law," this factor weighs in favor of support, if not strongly.  *Rubio*, 181 F. Supp. 3d at 765.  This is because the SDNY has an interest in New York law being applied consistently.  *Metz*, 674 F. Supp. 2d at 1149 (recognizing that "New York has a significant interest in interpreting its own laws"); *see also Decter v. MOG Sales, LLC*, No. 2:06-cv-1738-MCE-GGH, 2006 WL 3703368, at *3 (E.D. Cal. Dec. 14, 2006) (granting transfer to a forum "more familiar with the contours and applicability of [the applicable] law").

### 3. *Convenience of the Witnesses*

The SDNY is a far more convenient forum for the roster of largely Asia-based potential witnesses in this case.  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *Dorrah v. Deerbrook Ins. Co.*, No. 11-6136-TC, 2011 WL

Page 12 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

13244942, at *3 (D. Or. Dec. 20, 2011) (citing *In re Hoffmann-La Roche Inc.*, Misc. No. 911, 2009 WL 4281965 (Fed. Cir. Dec. 2, 2009)).  It is unlikely that this case will entail a single witness who is a resident of Oregon.  The likely witnesses are those involved in the preparation of the Registration Statement, those who might have knowledge of the alleged misstatements and omissions, those who invested in the IPO, and those who analyzed Canaan's stock and might have testimony and documents relevant to the alleged misstatements and omissions and loss causation. The vast majority of these anticipated witnesses reside in Asia.

*Asia-Based Potential Witnesses.*  Canaan's employees and the Individual Defendants are all based in Hangzhou, China.  (Registration Statement at 4, 144.)  Canaan's attorneys for the IPO, Simpson Thacher, worked out of Hong Kong.  (Registration Statement at cover page, 186.)

Of the Underwriter Defendants, four are based in Hong Kong.  Certain of the Underwriter Defendants' attorneys at Freshfields Bruckhaus Deringer worked on the IPO from their Hong Kong offices.  (Registration Statement at cover page.)

Canaan's independent auditor for the consolidated financial statements included in the Registration Statement was PricewaterhouseCoopers Zhong Tian LLP, based in Shanghai. (Registration Statement at 186.)  Canaan also hired Shanghai-based Frost & Sullivan (Beijing) Inc., Shanghai Branch Co., an independent research firm, to prepare a report on its industry and market for the prospectus.  (Registration Statement at i.)

The potential witnesses targeted by the MAV Report's attack—the alleged related party, several of Canaan's distributors, and Canaan's China-based customers—are based in Asia.  The alleged related party, Hangzhou Grandshores Weicheng Technology Co., Ltd., is a Cayman Island-incorporated, Hong Kong-listed company.  (Compl. ¶ 33.)  Its chairman, Yao Yongjie, who the Complaint alleges is also an investor in Canaan, is based in Hong Kong.  (*See* Compl. ¶ 39.)  Any

Page 13 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

corporate representative for them would also likely be based in Asia.  The eight distributors that Canaan allegedly deleted from its website are located around the world.[4]  Canaan's clients over the past several years have been primarily based in China.  (Compl. ¶ 36; Registration Statement at 19.)  Canaan's investors are based all over the world but, historically, have been concentrated in China, and at the time of the IPO, no U.S. investors held Canaan shares.  (Registration Statement at 144.)

It is more convenient to travel from China to New York City than to Portland, Oregon.  The existence and frequency of direct flights and total travel time from the witnesses' home bears directly on the "accessibility" of the forum and clearly favors transfer to the SDNY.  *United States v. Daewoo Indus. Co.*, 591 F. Supp. 157, 164 (D. Or. 1984) (granting transfer where it "may serve to reduce travel time and make trial days more flexible").  Whereas there are multiple nonstop flights every day between Shanghai (about 100 miles from Canaan's Hangzhou headquarters) and New York, there are none between Shanghai and Portland.  (Lippincott Decl. ¶ 3, Exs. 5-6.)  There are also direct flights between Hong Kong and New York City, but none between Hong Kong and Portland.  (Lippincott Decl. ¶ 3, Exs. 7-8.)

*New York-Based Potential Witnesses.*  Of the Underwriter Defendants, two are based in New York.  (Registration Statement at 174.)  While, as noted above, some of the Underwriter Defendants' attorneys from Freshfields Bruckhaus Deringer worked from Hong Kong, others worked out of the firm's New York offices in connection with the IPO.  (Registration Statement at cover page, 186.)  For these New York-based potential witnesses, "common sense would suggest that a trial in their resident state would be more convenient than travel to Oregon."  *Partney*, 2008 WL 4838849 at *4.

---

[4] *See* Marcus Aurelius Value, *Canaan Fodder*, available at: http://www.mavalue.org/research/canaan-fodder/ (Feb. 20, 2020).

Page 14 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

The New York-based Depositary was involved in the preparation of the Registration Statement and the administration of the IPO and thus may have relevant testimony about the alleged misstatements.  (Registration Statement at 158.)  The Depositary is likely the only third-party witness that would be subject to the trial subpoena power of either district court.  That the Depositary would be subject to the SDNY's trial subpoena power makes New York a favored venue.  *Partney*, 2008 WL 4838849 at *4 ("It is important that [a non-party witness's] appearance can be compelled if necessary").

*Miscellaneous Potential Witnesses.*  The remaining two Underwriter Defendants are based in Boca Raton, Florida, and New Zealand.  (Registration Statement at 174.)  For the Florida-based underwriter, New York is also more convenient, as it can be accessed from Boca Raton by nonstop flight in under three hours, whereas travel from Boca Raton to Portland involves at least one stop and more than seven hours.  (Lippincott Decl. ¶ 3, Exs. 9-10.)  As for the New Zealand-based underwriter, there are no nonstop flights from New Zealand to either New York or Portland, and, thus, both venues are equally inconvenient.[5]

4.  *Convenience of the Parties*

Given that Canaan and the Individual Defendants are based in China, New York is a more convenient forum for them than Oregon—a factor that weighs strongly in favor of transfer.  "[T]he location of the defendants is a weighty consideration in deciding whether [a] securities class action is properly transferred."  *In re Yahoo! Inc.*, Nos. CV 07-3125 CAS (FMOx), CV07-3902-CAS (FMOx), 2008 WL 707405, at *3 (C.D. Cal. Mar. 10, 2008).  As noted, there are multiple nonstop flights every day between Shanghai and New York, but none between Shanghai and Portland.

---

[5] Because the true identity of Marcus Aurelius Value, the publisher of the MAV Report, is not—and may never be—known, its location remains unknown.

Page 15 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

(Lippincott Decl. ¶ 3, Ex. 5-6.)  Likewise, seven of the eight Underwriter Defendants would find New York more convenient than Portland.  (Lippincott Decl. ¶ 3, Exs. 5-10.)  Canaan's undersigned counsel also have offices in New York.

Because "'securities class actions focus almost entirely on the defendants' conduct,'" the plaintiffs' convenience is hardly relevant.  *Yahoo*, 2008 WL 707405, at *3 (quoting *In re Hanger Orthopedic Grp., Inc.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006)).  Even so, the SDNY is likely more convenient for the Moving Plaintiffs and the putative class.  The Moving Plaintiffs appear to be based in Asia, and there is no evidence to suggest that purchasers of Canaan's ADS are disproportionately located in either Oregon or New York.  Plaintiffs' lead counsel is also based in New York.  Thus, the convenience of virtually ***all*** parties would be well served by granting this Motion to Transfer.

5.  *Familiarity of Each Forum with the Applicable Law*

The SDNY's familiarity with securities class actions and New York law weighs in favor of transfer.  While both federal forums are well equipped to apply federal Securities Act law—and this Court has undisputed experience handling complex cases—New York courts have particularly well-known expertise in securities class actions.  For instance, in 2019, there were 103 securities class actions filed in the Second Circuit—nearly 40 percent of the nation's total—compared to 52 filed in the Ninth Circuit, the majority of them in California.[6]  Foreign issuers and their depositaries often choose New York courts as the exclusive forum in deposit agreements as a result.  Here, in recognition of the expertise of New York courts, Canaan designated an agent for service of process in New York and referenced the resolution of claims in New York in the Deposit Agreement and

---

[6] Cornerstone Research, *Securities Class Action Filings—2019 Year in Review*, available at: https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2019-Year-in-Review (Feb. 14, 2020).

Page 16 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

Underwriting Agreement. (Registration Statement at 60; Deposit Agreement at Section 7.6; Underwriting Agreement at 20.) SDNY also has expertise in applying and interpreting New York law, which governs the Deposit Agreement and Underwriting Agreement. (Underwriting Agreement at 37; Deposit Agreement at Section 7.9.) Should the resolution of this case require the interpretation of provisions in those agreements, the SDNY is particularly well suited to decide those issues.

### 6. Relative Court Congestion

SDNY will be an efficient venue for resolution of this case, which further supports transfer. The Court may consider the administrative difficulties flowing from court congestion in determining whether transfer is appropriate. The relevant inquiry is "'whether a trial may be speedier in another court because of its less crowded docket.'" *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). Here, the most recent statistics slightly favor the SDNY. Both the median time to resolution in civil actions (6.5 months in the SDNY compared to 11.7 months in the District of Oregon) and the median time to trial (31.1 months in the SDNY compared to 34.9 months for the District of Oregon) are shorter in the SDNY.[7] Thus, "efficient and expeditious administration of justice would be furthered by transfer." *Sussman v. Soleil Mgmt. LLC*, No. ED CV 18-1176 FMO (FHKx), 2018 WL 6265005 at *5 (C.D. Cal. Nov. 16, 2018).

### 7. Ease of Access to Evidence

In the modern age, "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Metz*, 674 F. Supp. 2d at 1149. "This factor is neutral [where] [m]uch of the

---

[7] *See* Federal Court Management Statistics, December 2019 Report, available at:
https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2019.

Page 17 – DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE

proof will be in the form of documents which can be produced electronically." *Ward*, 2009 WL 10692461, at *6. Nonetheless, to the extent "nearly all of the evidence and non-party witnesses are located" in another forum, this factor may still weigh in favor of transfer. *Encore D.E.C.*, 2014 WL 12576650, at *7. The vast majority of relevant documents will be in Canaan's possession on computer servers in China. Some of the documents in the possession of the Underwriter Defendants and the Depositary are likely to be in New York.

### 8. Plaintiff's Choice of Forum

Finally, the Named Plaintiff's choice of forum in this case merits no weight in the transfer analysis. Indeed, the existence of Lemieux's name on the Complaint is seemingly not even indicative of *his* choice, but of Rosen's desire to avoid the SDNY.

First, "a plaintiff's choice of forum is given less deference, and can even support transfer, where it appears to be motivated by forum shopping." *Ward*, 2009 WL 10692461, at *4 (finding that this factor weighed "strongly in favor of transfer" where there was evidence of forum shopping); *see also Gupta v. Perez*, No. 5:14-cv-01102 HRL, 2014 WL 2879743, at *3 (N.D. Cal. June 24, 2014). Based on the sequence of events, it appears that *Rosen* deliberately chose to file this action in Oregon under the guise of the Named Plaintiff's residence and then quickly substituted the Moving Plaintiffs—a ruse to avoid the SDNY, where this case has significant contacts but where Rosen has recently faced significant defeats.[8] This Court should not reward such gamesmanship by according deference to the now-absent Named Plaintiff's choice of forum.

Even if the Named Plaintiff were still a significant part of this case, this is a putative class

---

[8] Rosen has lost at least five motions to dismiss in securities class actions in the SDNY in 2019-2020 alone. *See Ramzan v. GDS Holdings Ltd.*, 2020 WL 1689772 (S.D.N.Y. Apr. 7, 2020); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019); *In re Omega Healthcare Investors Secs. Litig.*, 375 F. Supp. 3d 496 (S.D.N.Y. 2019); *Green v. Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019); *Finger v. Pearson PLC*, 2019 U.S. Dist. LEXIS 164585 (S.D.N.Y. 2019).

action, where a plaintiff's choice of forum is entitled to less deference.  "[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Ward*, 2009 WL 10692461, at \*4 (In a class action, plaintiff's choice of forum "should receive little deference.").  Here, the Complaint was filed on behalf of a putative class of purchasers of Canaan's ADS who are neither concentrated in Oregon nor New York but scattered around the world.  (Compl. ¶ 45.)

Finally, there is no factual connection to the District of Oregon.  And "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration."  *Lou*, 834 F.2d at 739; *see also Sussman*, 2018 WL 6265005, at \*3.  Again, this case has substantial connections to New York, including the fact that Canaan's IPO occurred on the New York-based Nasdaq Global Market.  While the Named Plaintiff is a resident of Oregon, he no longer has a significant role in this case.  And the Named Plaintiff's choice of forum merits even less weight because Oregon has no local interest in adjudicating this dispute.

<u>**CONCLUSION**</u>

This case landed on the District of Oregon's docket, 3,000 miles from where it belongs, because plaintiffs' counsel manufactured a connection.  Rosen went out of its way to find a plaintiff with a minimal investment in Canaan just to take advantage of its own preference in federal venues. Now that the original plaintiff has vanished, the illusion has been shattered—and with it, any justification for keeping this case in Oregon.  Under 28 U.S.C. § 1404(a), Canaan respectfully requests that the Court transfer the action where it most naturally belongs: the SDNY.

Dated: June 1, 2020

CABLE HUSTON LLP

/s/ Jon W. Monson

Jon W. Monson, OSB No. 102650
1455 SW Broadway, Suite 1500
Portland, OR 97201-3412
503-224-3092
jmonson@cablehuston.com

Of Counsel:
O'MELVENY & MYERS LLP
William K. Pao (*pro hac vice*)
Meg K. Lippincott (*pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA  90071-2899
(213) 430-6000
wpao@omm.com
mlippincott@omm.com

Daniel L. Cantor (*pro hac vice*)
7 Times Square
New York, NY  10036
(212) 326-2000
dcantor@omm.com

*Attorneys for Defendant Canaan Inc.*