# EXHIBIT 4

Case 1:20-cv-07139-JPO    Document 19-4    Filed 06/01/20    Page 2 of 22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| SALMAAN ABDULLAHI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CANAAN INC., NANGENG ZHANG, QUANFU HONG, JIAXUAN LI, JIANPING KONG, and QIFENG SUN, <br><br> Defendants. | Index No. <br><br> <u>CLASS ACTION</u> <br><br> SUMMONS |

To the below named Defendants:

**Canaan Inc.**
Registered Agent:
Cogency Global Inc.
122 E. 42nd Street, 18th Floor
New York, NY 10168

**Nangeng Zhang**
Registered Agent:
Cogency Global Inc.
122 E. 42nd Street, 18th Floor
New York, NY 10168

**Quanfu Hong**
Registered Agent:
Cogency Global Inc.
122 E. 42nd Street, 18th Floor
New York, NY 10168

**Jiaxuan Li**
Registered Agent:
Cogency Global Inc.
122 E. 42nd Street, 18th Floor
New York, NY 10168

{00365190;1 }

Case 1:20-cv-07139-JPO    Document 19-4    Filed 06/01/20    Page 3 of 22

**Jianping Kong**
Registered Agent:
Cogency Global Inc.
122 E. 42nd Street, 18th Floor
New York, NY 10168

**Qifeng Sun**
Registered Agent:
Cogency Global Inc.
122 E. 42nd Street, 18th Floor
New York, NY 10168

{00365190;1 }

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis for venue is that certain of the parties reside in this County, the parties transact business in this County, and/or transactions underlying the Complaint took place in part in this County.

DATED: March 6, 2020

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Email: pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

{00365190;1 }

3

Case 1:20-cv-07139-JPO    Document 19-4    Filed 06/01/20    Page 5 of 22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| SALMAAN ABDULLAHI, Individually and On Behalf of All Others Similarly Situated, | Index No. |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 |
| CANAAN INC., NANGENG ZHANG, QUANFU HONG, JIAXUAN LI, JIANPING KONG, and QIFENG SUN, |  |
| Defendants. | DEMAND FOR JURY TRIAL |

{00365190;1 }

Plaintiff Salmaan Abdullahi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Canaan Inc. ("Canaan" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants (defined herein) that purchased or otherwise acquired Canaan American depositary shares ("ADSs") pursuant and/or traceable to the Company's initial public offering conducted on or about November 20, 2019 (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "1933 Act" or "Securities Act"). The claims in this action arise from Canaan's materially misleading Offering Documents (defined herein) issued in connection with the IPO.

2.      Canaan is incorporated in the Cayman Islands and headquartered in the People's Republic of China ("PRC"). The Company's securities trade on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "CAN."

{00365190;1 }

3.     Canaan purports to provide supercomputing solutions through proprietary high-performance computing application-specific integrated circuits ("ASICs"), primarily for the Bitcoin mining and internet of things ("IoT") industries.  The Company researches and develops ASIC applications for Bitcoin mining and IoT, and designs, manufactures, and sells Bitcoin mining machines globally.

4.     On October 28, 2019, Canaan filed a registration statement on Form F-1with the SEC in connection with the IPO (Registration No. 333-234356), which, after several amendments, was declared effective on November 20, 2019 (the "Registration Statement").

5.     On November 21, 2019, Defendants priced the IPO at $9.00 per ADS and filed a prospectus for the IPO on Form 424B4 with the SEC, which incorporated and formed part of the Registration Statement (collectively, the "Offering Documents").  Pursuant to the Offering Documents, the Company offered 10 million ADSs to the public, with each ADS representing fifteen Class A ordinary shares, par value $0.00000005 per share, at $9.00 per ADS for approximate proceeds of $90 million.

6.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents were false or misleading or failed to disclose that: (i) Canaan was engaged in undisclosed related party transactions; (ii) the Company's financial health was worse than actually reported; (iii) the Company had recently removed numerous distributors from its website just prior to the IPO, many of which were small or defunct businesses; (iv) several of the Company's largest Chinese clients in prior years were not in the Bitcoin mining and IoT industries and, thus, were unlikely repeat customers; and (v) as a result,

{00365190;1 }

2

the Offering Documents were materially false or misleading and failed to state information required to be stated therein.

7.      On February 20, 2020, an investment analyst publishing under the pseudonym Marcus Aurelius published a short report entitled "Canaan Fodder" (the "Aurelius Report").  The Aurelius Report questioned Canaan's financial health and the stability of its customer base, citing a prior lawsuit and Chinese listing documents.  It also alleged, among other things, that Canaan was engaged in several undisclosed related-party transactions that lacked economic substance, including the sale of $150 million worth of equipment to a small Hong Kong company with an undisclosed relationship with a significant Canaan shareholder.  Additionally, the Aurelius Report noted that the Company had deleted several distributors from its website shortly before the IPO that were either small, defunct, or otherwise incapable of buying material amounts of product from Canaan.

8.      On this news, Canaan's ADS price fell $0.39 per share, or 6.83%, to close at $5.32 per share on February 20, 2020.

9.      Since the IPO, Canaan's ADS price has closed as low as $4.40 per share, representing a decline of more than 51% from the Offering price.

10.      As of the time this Complaint was filed, Canaan ADSs continue to trade below the IPO price of $9.00 per share.

11.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Canaan's securities, Plaintiff and other Class members have suffered significant losses and damages.

{00365190;1 }

3

**JURISDICTION AND VENUE**

12.     The claims alleged herein arise under Sections 11 and 15 of the 1933 Act, 15 U.S.C. §§77k and 77o, and this Court has original subject matter jurisdiction of those claims.

13.     This Court also has jurisdiction over the subject matter of this action pursuant to Section 22 of the 1933 Act.  Section 22 of the 1933 Act expressly prohibits removal of this action to federal court.

14.     The Court has personal jurisdiction over each of the Defendants under N.Y. C.P.L.R. Sections 301 and 302, and venue is proper in this County pursuant to Section 22 of the 1933 Act and N.Y. C.P.L.R. Section 503.  The Defendants conducted the IPO in this County, disseminated the statements alleged to be false and misleading herein into this County, and solicited purchasers of Canaan's ADSs in this County.  The Defendants each have substantial operations in this County.  The Defendants delivered the shares in the IPO against payment in this County, and the shares trade in this County on the NASDAQ.  In sum, the situs of this action lies within this County, Defendants' tortious acts occurred in this County and caused injury to the purchasers of the shares traded in this County, and each of the Defendants and members of the Class (defined herein) would foreseeably expect any case or controversy stemming from the IPO to be adjudicated in this County.

**PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired Canaan ADSs pursuant and/or traceable to the IPO and suffered damages as a result of the federal securities law violations and false or misleading statements or material omissions alleged herein.

16.     Defendant Canaan is incorporated under the laws of the Cayman Islands, with principal executive offices located at 30/F, Dicara Silver Tower, 29 Jiefang East Road, Jianggan

{00365190;1 }

4

Case 1:20-cv-07139-JPO    Document 19-4    Filed 06/01/20    Page 10 of 22

District, Hangzhou, PRC. Canaan securities trade in an efficient market on the NASDAQ under the ticker symbol "CAN."

17.    Defendant Nangeng Zhang ("Zhang") served as Canaan's Chairman and Chief Executive Officer at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

18.    Defendant Quanfu Hong ("Hong") served as Canaan's Vice President of Finance at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

19.    Defendant Jiaxuan Li ("Li") served as a Director of Canaan at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

20.    Defendant Jianping Kong ("Kong") served as a Director of Canaan at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

21.    Defendant Qifeng Sun ("Sun") served as a Director of Canaan at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

22.    Defendants Zhang, Hong, Li, Kong, and Sun are sometimes referred to herein collectively as the "Individual Defendants."

23.    As directors, executive officers and/or major shareholders of the Company, the Individual Defendants participated in the solicitation and sale of Canaan ADSs in the IPO for their own benefit and the benefit of Canaan. The Individual Defendants were key members of the IPO working group and executives of Canaan who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

24.    Canaan and the Individual Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

{00365190;1 }

5

## SUBSTANTIVE ALLEGATIONS

### Background

25. Canaan purports to provide supercomputing solutions through proprietary high-performance computing ASICs, primarily for the Bitcoin mining and IoT industries. The Company researches and develops ASIC applications for Bitcoin mining and IoT, and designs, manufactures, and sells Bitcoin mining machines globally.

26. On October 28, 2019, Canaan filed a registration statement on Form F-1with the SEC in connection with the IPO (Registration No. 333-234356), which, after several amendments, was declared effective on November 20, 2019.

27. On November 21, 2019, Defendants priced the IPO at $9.00 per ADS and filed a prospectus for the IPO on Form 424B4 with the SEC, which incorporated and formed part of the Registration Statement.

### Materially False and Misleading Statements Issued in the Offering Documents

28. In the Offering Documents, Canaan reported a net loss of RMB 236.3 million ($33.1 million) on total net revenues of RMB 959.4 million ($134.2 million) for the nine months ended September 30, 2019, compared to a net income of RMB 149.9 million on total net revenues of RMB 2.43 billion for the nine months ended September 30, 2018. Canaan also reported a net income of RMB 122.4 million ($17.1 million) on total net revenues of RMB 2.71 billion ($378.5 million) for the fiscal year ended December 31, 2018, compared to a net income of RMB 375.8 million on total net revenues of RMB 1.31 billion for the fiscal year ended December 31, 2017.

29. With specific respect to products revenue, the Offering Documents reported RMB 944.6 million ($132.2 million) for the nine months ended September 30, 2019, compared to RMB 2.42 billion for the nine months ended September 30, 2018, and products revenue of RMB 2.7

{00365190;1 }

billion ($377.5 million) for the fiscal year ended December 31, 2018, compared to products revenue of RMB 1.3 billion for the fiscal year ended December 31, 2017.

30.    With respect to cash and cash equivalents, the Offering Documents reported RMB 332.7 million ($46.5 million) as of September 30, 2019, compared to RMB 258.9 million ($36.2 million) as of December 31, 2018, and RMB 176.5 million as of December 31, 2017.

31.    With respect to Canaan's customer base, the Offering Documents stated that Canaan "primarily sell[s] [its] Bitcoin mining machines to customers in the PRC," and that, "[i]n 2017, 2018 and the nine months ended September 30, 2019, revenue from customers in the PRC accounted for 91.5%, 76.1% and 79.8%, respectively, of [the Company's] total revenue," thereby indicating to investors that the Company had an established and stable customer base in the PRC.

32.    In further support of Canaan's established customer base for its Bitcoin mining machines, the Offering Documents touted that, "[i]n 2017 and 2018, [the Company] sold RMB1,303.1 million and RMB2,698.3 million (US$377.5 million) of Bitcoin mining products, respectively, out of which RMB110.7 million and RMB647.7 million (US$90.6 million), respectively, were sold to our overseas customers in over 55 countries, representing 8.5% and 23.9%, respectively, of our total revenue for Bitcoin mining products," and that, "[f]or the nine months ended September 30, 2018 and 2019, [the Company] sold RMB2,421.6 million and RMB943.2 million (US$132.0 million) of Bitcoin mining products, respectively, out of which RMB551.6 million and RMB193.6 million (US$27.1 million), respectively, were sold to our overseas customers in about 30 countries, representing 22.8% and 20.5%, respectively, of our total revenue for Bitcoin mining products."

33.    With respect to Canaan's customer base for AI applications, the Offering Documents touted that the Company's "target customers are companies that are in the IoT industry,

{00365190;1 }

including, among others, those engaged in intelligent security solutions, smart appliances and instruments, intelligent medical solutions, logistic solutions, AI-powered educational solutions, robotics and authentication," and that the Company "plan[s] to increase [its] sales and marketing efforts to cover major customer groups in the IoT field" and "currently focus[es] on customers operating in large to mid-sized cities."

34.     With respect to related party transactions, aside from employment and indemnification agreements, private placements, and share award schemes, the Offering Documents disclosed only that "[i]n October 2017, Hangzhou Canaan entered into a share transfer agreement to dispose its 100% equity interest in its wholly owned subsidiaries Canaan Creative Hong Kong Co., Ltd. and Canaan Creative AB to BUMHUS OÜ, a company controlled by Mr. Xiangfu Liu, one of our principal shareholders, at a cash consideration of US$760,000 (equivalent to approximately RMB5.0 million)," and that, "[o]n the disposal date, the amounts due from these subsidiaries of RMB10.5 million to us were accounted for as our receivables," with Canaan "receiv[ing] the receivables of RMB15.5 million in the year ended December 31, 2018."

35.     With respect distribution, the Offering Documents represented that Canaan's "current distribution method is to sell [its] AI ASICs directly to AI product developers," and that the Company "plan[s] to also sell [its] products through distributors in the future" and is "already in talks with a number of local and overseas distributors."

36.     The statements referenced in ¶¶ 28-35 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false or misleading statements or failed

{00365190;1 }

Case 1:20-cv-07139-JPO    Document 19-4    Filed 06/01/20    Page 14 of 22

to disclose that: (i) Canaan was engaged in undisclosed related party transactions; (ii) the Company's financial health was worse than actually reported; (iii) the Company had recently removed numerous distributors from its website just prior to the IPO, many of which were small or defunct businesses; (iv) several of the Company's largest Chinese clients in prior years were not in the Bitcoin mining and IoT industries and, thus, were unlikely repeat customers; and (v) as a result, the Offering Documents were materially false or misleading and failed to state information required to be stated therein.

37.    Pursuant to the Offering Documents, the Company offered 10 million ADSs to the public, with each ADS representing fifteen Class A ordinary shares, par value $0.00000005 per share, at $9.00 per ADS for approximate proceeds of $90 million.

## The Truth Begins to Emerge

38.    On February 20, 2020, an investment analyst publishing under the pseudonym Marcus Aurelius published a short report entitled "Canaan Fodder." The Aurelius Report questioned Canaan's financial health and the stability of its customer base, citing a prior lawsuit and Chinese listing documents. It also alleged, among other things, that Canaan was engaged in several undisclosed related-party transactions that lacked economic substance, including the sale of $150 million worth of equipment to a small Hong Kong company with an undisclosed relationship with a significant Canaan shareholder. Additionally, the Aurelius Report noted that the Company had deleted several distributors from its website shortly before the IPO that were either small, defunct, or otherwise incapable of buying material amounts of product from Canaan.

39.    Specifically, with respect to undisclosed related party transactions, the Aurelius Report stated, in relevant part:

> [W]e were troubled to discover that just one month before [Canaan]'s NASDAQ IPO, a tiny Hong Kong stock named Grandshores (HK 1647) announced a

{00365190;1 }

9

purported "strategic partnership" with [Canaan] and agreed to purchase up to **$150 Million USD worth of equipment in 2020**, an amount that <u>nearly equals [Canaan]'s entire trailing twelve month revenues of approximately $177 million USD</u>. We find the transaction farcical on its face because Grandshore's [*sic*] market cap is a mere $50 Million USD and it reports having only $16 Million USD in cash on hand, nowhere near the financial wherewithal to buy this much equipment.  Even Hong Kong analysts referenced in this Chinese media article (here) expressed doubt the deal would ever be consummated. Documents show that Grandshores is a clear related party because its Chairman, Yao Yongjie, is an "Angel investor" of [Canaan] and owns 9.7% of [Canaan]'s shares outstanding through entities he controls.  Yet this transaction is not mentioned anywhere in [Canaan]'s SEC filings.

(Emphases in original.)

40.    The Aurelius Report also alleged, citing an investigation of Canaan's financial representations, that the Company was sued in 2019 by a vendor for allegedly failing to pay an invoice of approximately $1.7 million, despite the Company's financial statements reporting $36.2 million in cash.  According to the Aurelius Report, the vendor stated that Canaan "couldn't pay [$ 1.7 million] because of sales problems and market circumstances" (internal quotations omitted).

41.    Additionally, the Aurelius Report alleged the following regarding the distributors that Canaan had removed from its website shortly before the IPO, which also implicated further undisclosed related party transactions:

**[Canaan] abruptly deleted 8 of the 11 unique distributors that were featured on its website shortly before the company's NASDAQ IPO** . . . .

\* \* \*

One of these deleted distributors, Nova Bit Mining Solutions, is apparently controlled by one of [Canaan]'s sales representatives, Andres Romero. Romero's own LinkedIn profile lists himself as both "Global Sales" for [Canaan] and the CEO of Nova Bit. In a 2018 Youtube Video, Romero identified himself as a [Canaan] VP of Marketing and invited viewers to an event in Dubai. [Canaan] suddenly deleted Romero from its website sometime in the last few weeks (we archived it here) but used to feature him as a company "agent". Nova Bit's website continues to state it is "official distributors" of [Canaan] although multiple calls to the phone number listed on Nova Bit's website went unanswered with a message "the Google Voice subscriber is not available".

{00365190;1 }

10

Case 1:20-cv-07139-JPO    Document 19-4    Filed 06/01/20    Page 16 of 22

\* \* \*

Our review of the other seven deleted distributors reveals that most appear to be *small, defunct, or otherwise incapable of buying material amounts of product from [Canaan.]*

(Emphases in original.)

42.     The Aurelius Report also alleged that some of Canaan's largest Chinese customers in prior years were likely not returning customers, while simultaneously raising questions about the sustainability of Canaan's customer base, stating, in relevant part:

[Canaan] reports that more than 87% of its sales are to customers in China, which stands in sharp contrast to Bitmain which attributes only 33% of its sales to China. The quality and durability of [Canaan]'s Chinese customer base is therefore of paramount importance for investors.  This is exactly why we were disturbed to find that, in addition to related parties, other major customers identified in the Chinese listing documents filed by [Canaan] include businesses that appear to be in *entirely different industries.*

\* \* \*

An article published by *The Beijing News* in 2016 flagged CAN's dealings with HW and Tianjin Garments and also questioned why several of the company's other large customers were listed as being Chinese individuals[.]

(Emphases in original.)

43.     On this news, Canaan's ADS price fell $0.39 per share, or 6.83%, to close at $5.32 per share on February 20, 2020.

44.     Since the IPO, Canaan's ADS price has closed as low as $4.40 per share, representing a decline of more than 51% from the Offering price.

45.     As of the time this Complaint was filed, Canaan ADSs continue to trade below the IPO price of $9.00 per share.

{00365190;1 }

11

46.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Canaan' securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action as a class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Canaan ADSs in the IPO, or purchased Canaan ADSs thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO, and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which the officers and directors of the Company have or had a controlling interest.

48.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Canaan or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

49.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

{00365190;1 }

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)      whether Defendants violated the 1933 Act;

b)      whether statements made by Defendants to the investing public in the Offering Documents misrepresented material facts about the business and operations of Canaan; and

c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violation of Section 11 of the Securities Act
### Against All Defendants

53.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

54.     This Cause of Action is brought pursuant to Section 11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

55.     This Cause of Action does not sound in fraud.  Plaintiff does not allege that the Defendants had scienter or fraudulent intent, which are not elements of a Section 11 claim.

{00365190;1 }

13

56.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

57.     The Defendants named in this Cause of Action are strictly liable to Plaintiff and the Class for the misstatements and omissions.

58.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

59.     By reason of the conduct herein alleged, each Defendant named herein violated, and/or controlled a person who violated, Section 11 of the 1933 Act.

60.     Plaintiff acquired Canaan ADSs pursuant and/or traceable to the Offering Documents for the Company's IPO.

61.     Plaintiff and the Class have sustained damages.  The value of Canaan ADSs has declined substantially subsequent to and because of Defendants' violations.

62.     At the time of their purchases of Canaan ADSs, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff commenced this action.  Less than three years elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

**SECOND CAUSE OF ACTION**

{00365190;1 }

14

**For Violation of Section 15 of the Securities Act**
**Against the Individual Defendants**

63. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

64. This Cause of Action is brought pursuant to Section 15 of the 1933 Act, 15 U.S.C. §77o, on behalf of the Class, against the Individual Defendants.

65. The Individual Defendants each were control persons of Canaan by virtue of their positions as directors and/or senior officers of Canaan's predecessor entities immediately prior to the IPO. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Canaan.

66. The Individual Defendants have a financial interest in conducting the IPO, and the Individual Defendants were each critical to effecting the IPO, based on their signing and/or their authorization of the signing of the Offering Documents, by participating to execute the IPO, and by having otherwise directed through their authority the processes leading to execution of the IPO, including obtaining underwriters, registration, qualification, authorization, pricing, offering to the public, and issuance and sale of the shares in the IPO.

67. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to Section 15 of the Securities Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying Plaintiff as class representative under N.Y. C.P.L.R. art. 9, et seq., and certifying Plaintiff's counsel as Class Counsel;

{00365190;1 }

15

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the other members of the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED:  March 6, 2020

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein

{00365190;1 }

16

Case 1:20-cv-07139-JPO   Document 19-4   Filed 06/01/20   Page 22 of 22

60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

{00365190;1 }

17