**RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP**
Jeffrey S. Ratliff
8401 NE Halsey Street Suite 208
Portland, OR 97220
T: 503-226-3664

*Liaison Counsel for Plaintiffs*
*and the Putative Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| PHILIPPE LEMIEUX, Individually and on behalf of all others similarly situated, | CASE No.: 3:20-cv-00356-MO |
| Plaintiff, | CLASS ACTION |
| v. | |
| CANAAN INC., NANGENG ZHANG, JIAXUAN LI, JIANPING KONG, QIFENG SUN, QUANFU HONG, CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, GALAXY DIGITAL ADVISORS LLC, HUATAI FINANCIAL HOLDINGS (HONG KONG) LIMITED, TIGER BROKERS (NZ) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, AND VIEWTRADE SECURITIES, INC., | **PLAINTIFFS' OPPOSITION TO DEFENDANT CANAAN INC.'S MOTION TO TRANSFER VENUE** |
| Defendants. | |

Lead Plaintiffs Boluka Garment Co., Limited and Hongkuo Tang ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Canaan Inc. ("Canaan")'s motion to transfer venue (Dkt. No. 18).

## INTRODUCTION

China-based Canaan had no qualms traversing the globe when it benefitted Canaan: it went halfway around the world to incorporate itself in the Cayman Islands; it then held its initial public offering ("IPO") in the United States to raise nearly $100 million dollars. For the IPO, Canaan didn't just retain Asia-based underwriters, it also did business with underwriters based in New Zealand and Florida.

Now, as the globe-trotting Canaan finds itself facing a lawsuit in this Court for misleading IPO investors, Canaan suddenly whines that Oregon is too inconvenient. Canaan asks that the case be transferred to the Southern District of New York ("SDNY") because, among other things, it takes marginally less time to fly from China to New York than to Oregon. But just as Canaan chose to incorporate in the Cayman Islands because of the Cayman's favorable tax laws, and chose to list in the United States because of the nation's fertile capital markets, Canaan's preference for the SDNY is nothing more than forum shopping for what it perceives to be a more favorable jurisdiction.

The federal securities laws are written to allow defendants to be sued in any federal district court, and for good reason: just like New York residents, residents of Oregon too have their savings and their pensions invested in the stock market. Residents of this district have as much interest in protecting the integrity of the stock market as residents of New York.

Plaintiffs' choice of forum is entitled to deference. Canaan's various excuses for preferring the SDNY are insufficient to overturn Plaintiffs' choice of forum.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Headquartered in Hangzhou, China, Canaan is a computer hardware manufacturer that makes

hardware used for bitcoin mining. ¶7.[1] On November 21, 2019, Canaan completed its IPO in the U.S., raising approximately $90 million. ¶30.

On February 20, 2020, the analyst firm Marcus Aurelius Value published a report (the "Report") revealing that Canaan's IPO offering documents were misleading. ¶38. According to the Report, Canaan concealed a significant related party transaction, and failed to disclose its worsening business prospects. ¶¶39-42. As a result of the adverse disclosures in the Report, the value of Canaan shares fell nearly 7%, damaging investors. ¶43.

Phillipe Lemieux initiated this action on March 4, 2020. Dkt. No. 1.[2] On May 4, 2020, Plaintiffs moved to be appointed lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Dkt. No. 13. On June 2, 2020, the court appointed Plaintiffs as lead plaintiffs. Dkt No. 20. Pursuant to the parties' stipulation, Plaintiffs will file an amended complaint on August 3, 2020. Dkt. No. 12.

## ARGUMENT

### I. Applicable Law

Courts have wide discretion in determining whether a transfer of venue is proper under 28 U.S.C. § 1404(a). Here, transfer is appropriate only if: (1) venue is proper in this district; (2) the case could have been brought in the SDNY; and (3) transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). While the parties don't dispute that venue is proper in this district, or that the action could have been brought in SDNY, Canaan has failed to meet is burden as to the third prong of the test.

---

[1] All citations to "¶" refer to paragraphs in the Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 1).
[2] Mr. Lemieux resides in Canada. The Civil Cover Sheet erroneously marked Mr. Lemieux as a resident of Oregon.

In evaluating the third prong, courts may consider: (i) "local interest in the controversy"; (ii) "the location where relevant agreements were negotiated and executed"; (iii) "convenience of the witnesses"; (iv)"convenience of the parties"; (v) "the state that is most familiar with the governing law"; (vi) "the relative court congestion and time of trial in each forum"; (vii) "the ease of access to sources of proof"; and (viii) "the plaintiff's choice of forum." *Jones,* 211 F.3d at 498-99.

The moving party bears the burden of showing that a transfer is warranted. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting plaintiff's choice of forum."). The burden is especially great in claims under the federal securities laws, as Congress has intended for defendants to be sued in any district court in the United States. *Sec. Inv'r Prot. Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir. 1985) ("Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum.")

## II. Canaan's Motion to Transfer Should be Denied

Canaan has not made the necessary "strong showing" to warrant a transfer of this action to SDNY. Indeed, the only interest Canaan's motion supports is its *preference* that this action proceed in SDNY. This is insufficient.

### 1. Local interest in the controversy

This factor does not favor transfer. Canaan is wrong that Oregon has no local interest in this action. This action is about Canaan issuing misleading statements to raise money from the *U.S.* capital markets; the NASDAQ, on which Canaan's shares trade, is a *national* exchange. Just like New York residents, residents of Oregon have their savings invested in the stock market.

3

Oregon residents have as much interest in protecting the integrity of the stock market as residents of New York.

It is well-established that the enforcement of the U.S. securities laws is a national interest. *See SEC v. RPM Int'l, Inc.*, No. 16–1803 (ABJ), 2016 WL 7388284, at *5 (D.D.C. Dec. 20, 2016) (finding this factor did not support transfer because "the alleged violation of federal securities laws "is not a local dispute affecting only the local residents") (internal quotation omitted); *Cox ex rel. ING Global Real Estate Fund v. ING Invs. LLC*, 47 F. Supp. 3d 209, 213 (D. Del. 2014) ("securities litigation does not constitute a local controversy in most cases"). The SDNY agrees. "Although Plaintiffs correctly point out that [defendant's] stock is traded on the New York Stock Exchange ("NYSE"), which is located in the SDNY, and many of the analysts who follow [defendant's] stock are located in New York City, these contacts don't do it. If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street." *Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.*, No. 06 CIV. 1942 (HB), 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006).[3]

### 2. Location where relevant agreements were negotiated

This factor is not applicable. This case is a putative class action regarding violations of federal securities laws. No dispute as to any contracts or agreements are alleged.

Canaan contends that the Underwriting Agreement and the Deposit Agreement were negotiated in New York, and that New York State law governs both. But neither agreement is the subject of this lawsuit. Plaintiffs do not allege that the Underwriting Agreement or the Deposit

---

[3] This is particularly true for companies listed on NASDAQ. Although NASDAQ is headquartered in New York, its operations are world-wide, and the actual trading of stocks on NASDAQ does not take place in New York. Trading on NASDAQ is facilitated by market makers (*i.e.* financial intermediaries) and done electronically. Thus, unlike the NYSE, the NASDAQ marketplace has no physical location. As such, the NASDAQ is not meaningfully a New York exchange.

Agreement contains false statements. Nor does this lawsuit, brought under the federal securities laws, concern New York State law in any way. The document at issue is the Registration Statement, which Canaan filed with the Securities Exchange Commission in Washington, D.C., and disseminated to investors throughout the United States.

### 3.  Convenience of witnesses

The rule in this circuit is that "if the transfer is for the convenience of witnesses, defendant must name the witnesses it wishes to call, the anticipated areas of their testimony and its relevance, and the reasons why the present forum would present a hardship to them." *Bohara v. Backus Hosp. Med. Benefit Plan*, 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005). Canaan has presented no detailed information pertaining to the identity of witnesses, their area of testimony, or why Oregon would present a hardship to them. "Affidavits or declarations are required to identify key witnesses and a generalized statement of their anticipated testimony." *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466–67 (E.D. Cal. 1994). Canaan has not provided any.

Canaan speculates that the marginally more time it might take for third-party witnesses in Asia to travel to Oregon than New York means that such witnesses would be willing to testify in New York, but unwilling to do so in Oregon. Canaan presents no support for this theory. *Raynes v. Davis*, No. CV 05-6740 ABC (CTx), 2007 WL 4145102, at *4 (C.D. Cal. Nov. 19, 2007) (finding this factor weighs against transfer where defendants have made "no showing that important non-party witnesses would be unwilling to testify at trial wherever it is held").

Indeed, it is common knowledge that New York City has been particularly hard-hit by the COVID-19 pandemic and leads the United States in COVID-19 infections and fatalities. Thus, it reasonable to infer that witnesses might be *more* willing to testify in Oregon than in New York City.

### 4. Convenience of the parties

Canaan does not assert that there are no flights between Shanghai and Portland; rather, Canaan whines that it would have to take connecting flights to get from Shanghai to Portland, while there are direct flights between Shanghai and New York City. But this is the same Canaan that chose to go halfway around the world to incorporate in the Cayman Islands, and to launch an IPO in the United States. As such, Canaan's complaint that traveling to Portland is too difficult rings hollow. *Kazenercom TOO v. Turan Petroleum, Inc.,* 590 F.Supp.2d 153 ("a flight from [Kazakhstan] to anywhere in the United States will be very time-consuming, and the additional flying time beyond D.C. to California is hardly of any real significance.")

Of the eight underwriter defendants, four are based in Asia (China Renaissance, CMB, Huatai, and Haitong), two are headquartered in New York City (Citigroup and Galaxy), one is based in New Zealand (Tiger), and one is based in Florida (ViewTrade). While SDNY may be more convenient for Citigroup and Galaxy, this by itself is insufficient to upset Plaintiffs' choice of forum when no other factors strongly weigh in favor of transfer. *Am. Auto. Ass'n, Inc. v. Darba Enterprises Inc.,* No. C 09-00510 SI, 2009 WL 1542704, at *2 (N.D. Cal. June 2, 2009) ("The only factor strongly weighing in favor of transfer to Nevada is that the alternate venue would be more convenient for defendants. Under the circumstances of this case, defendants' convenience alone is not sufficient").

Indeed, courts have generally placed minimal weight on the convenience of defendants when deciding whether to transfer a case. *Lax v. Toyota Motor Corp.,* 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) (the convenience "of the defendants bears some, but little, weight in favor of transfer"). This is especially true when the two defendants – Citigroup and Galaxy - who might

possibly be inconvenienced are well-financed financial institutions, and are both registered to do business in Oregon.[4]

### 5. Familiarity of each forum with the applicable law

Notwithstanding its clear preference to litigate there, Canaan cites to no authority that federal judges in SDNY are any more capable of overseeing complex class action litigation or that they are any more familiar with the federal securities laws. Canaan concedes, as it must, that this Court is well-equipped to apply federal securities law and has ample experience handling complex cases.

Nevertheless, Canaan contends that courts in the Ninth Circuit are less experienced than New York courts in handling securities class actions, because in 2019 there were more securities cases filed in the Second Circuit than in the Ninth Circuit. This hardly suggests that the Ninth Circuit lacks experience in such lawsuits. According to Stanford Law School's Securities Class Action Clearinghouse, since the passage of the PSLRA in 1995, the two circuits with the most securities class action filings are the Second Circuit and Ninth Circuit. While the Second Circuit leads the pack with 1,639 securities class action filings, the Ninth Circuit was a close second with 1,289.[5] This does not indicate a meaningful difference in experience, and hardly warrants a transfer.

Canaan posits that because New York law governs the Underwriting Agreement and the Deposit Agreement, this case should be transferred to SDNY. This is a red herring. Plaintiffs are not parties to the Underwriting Agreement, which is an agreement between Canaan and its

---

[4] *See, FINRA Broker Check*
https://brokercheck.finra.org/firm/summary/7059 (Citigroup)
https://brokercheck.finra.org/firm/summary/289605 (Galaxy)
(last accessed: June 10, 2020)
[5] Source: http://securities.stanford.edu/circuits.html (last accessed: June 10, 2020)

underwriters. Plaintiffs' claims do not pertain to any inaccurate statements in the Deposit Agreement. The choice of law in the Underwriting Agreement and the Deposit Agreement is irrelevant because this action is brought exclusively under the federal securities laws. This action does not concern or implicate New York State law.

### 6. Relative court congestion

Courts in this circuit have held that the relevant statistic for analyzing this factor is the speed with which cases proceed to trial. *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWx), 2006 WL 4749756, at *16 (C.D. Cal. Sep. 25, 2006) (analyzing time to trial, citing *Gates*, 743 F.2d at 1337); *Viva Healthcare Packaging, Ltd. v. CTL Packaging USA, Inc.*, No. LA CV13–03372 JAK (MRWx), 2013 WL 12142564, at *5 (C.D. Cal. Oct. 8, 2013) (same); *Industry Access, Inc. v. Ellie Mae, Inc.*, No. LA CV13-02769 JAK (AJWx), 2013 WL 12133653, at *8 (C.D. Cal. 2013) ("Court congestion is best measured by the time that elapses between the filing and trial of an action").

This factor also cuts against transfer. In 2019, the median time to trial for civil cases was 31.1 months in SDNY, and 34.9 months in the District of Oregon.[6] But in 2018, the median time to trial was 33.0 months in SDNY, and 25.0 months in the District of Oregon. *Id.* Accordingly, both courts are similarly busy and this factor does not weigh in favor of transfer.

### 7. Ease of access to evidence

As courts have noted, "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Szegedy v. Keystone Food Products, Inc.*, 2009 WL 2767683, at *6 (C.D. Cal.

---

[6] *See* Federal Court Management Statistics, December 2019 Report, available at: https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2019 (last accessed: June 10, 2020).

Aug. 26, 2009). "Defendants do not offer evidence indicating that discovery will implicate unique types of information or documents that cannot easily be digitized and electronically transmitted to this district." *SEC v. Feng*, No. CV 15-9420-CBM-SSx, 2016 WL 7443220, at *4 (C.D. Cal. Apr. 7, 2016) (finding "that the ease of access to sources of proof factor does not weigh in favor of transfer"). Plaintiffs are not aware of where Defendants' documents are stored because discovery has not commenced, but given that such documents will be produced in electronic form, their location is irrelevant. Defendants will undergo no burden producing documents whether this action proceeds in this District or in New York.

### 8. Plaintiff's choice of forum

In general, where relevant factors do not strongly favor transfer, "the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Canaan makes the conclusory assertion that Plaintiffs' counsel engaged in forum shopping. This attack is baseless. Courts have found evidence of forum shopping "based on plaintiffs' repeat filing," *c.f. Italian Colors Rest. v. Am. Express Co.*, No. C 03–3719 SI, 2003 WL 22682482, at *4 (N.D. Cal. Nov. 10, 2003), which Canaan does not – and indeed cannot - allege has occurred here. *See also Alexander v. Franklin Res., Inc.*, No. C 06-7121 SI, 2007 WL 518859, at *4 (N.D. Cal. 2007) (One could reasonably infer forum shopping here, where the same plaintiff represented by the same law firm filed a similar lawsuit in New Jersey, and after receiving unfavorable rulings from that court, filed the instant case"). Typically, a plaintiff engaged in forum shopping files a federal action to "avoid adverse rulings made in the state court or to gain a tactical advantage from the application of federal court rules." *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (9th Cir. 1990). Canaan has not identified any "adverse state court rulings at issue here," or "any tactical advantage that [Plaintiffs] would gain" from filing this action in the District of Oregon. *Cardoza v. T-Mobile USA Inc.*, No. 08–5120 SC, 2009 WL 723843, at *3 (N.D. Cal. Mar. 18,

9

2009) (finding no evidence of forum shopping).

Canaan posits, without any evidence, that Plaintiffs' counsel engaged in a "ruse" to "avoid the SDNY...where Rosen has recently faced significant defeats." Sure, The Rosen Law Firm has had cases dismissed in the SDNY (and in other courts, including courts in the Ninth Circuit), but Rosen has also experienced significant success in the SDNY, including a $250 million settlement in 2019 against Alibaba Group Holdings – the largest ever settlement against a Chinese issuer.[7] Of course, Canaan does not mention this.

Accordingly, "Plaintiff's choice of forum is entitled to substantial weight, *despite the fact that this is a securities class action." Rafton v. Rydex Series Funds*, No. C 10–1171 CRB, 2010 WL 2629579, at *4 (N.D. Cal. June 29, 2010).

## CONCLUSION

Canaan makes no secret that it prefers SDNY. But Canaan's preference does not bear its heavy burden of showing that a transfer to SDNY is warranted under §1404(a). As the court in *Rafton* held: "by choosing to market and sell shares of the Fund nationwide ... Defendants exposed themselves to the risk of being sued in the districts in which the Fund's shares were sold. The interests of justice do not favor allowing Defendants, the alleged malfeasors, to evade the consequences of their decision and, in so doing, to receive the benefit of their preferred forum." 2010 WL 2629579 at *3. Canaan's motion to transfer should be denied.

Dated: June 11, 2020                    Respectfully submitted,

                                        **RANSOM, GILBERTSON, MARTIN &
                                        RATLIFF, LLP**
                                        By: /s/ Jeffrey S. Ratliff
                                        Jeffrey S. Ratliff
                                        8401 NE Halsey Street Suite 208
                                        Portland, OR 97220

---

[7] *See* https://www.reuters.com/article/us-alibaba-settlement/alibaba-pays-250-million-to-settle-lawsuit-over-pre-ipo-counterfeiting-warning-idUSKCN1S51DO (last accessed: June 10, 2020).

T: 503-226-3664

*Liaison Counsel for Plaintiffs and Class*

**THE ROSEN LAW FIRM, P.A.**
Jing Chen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and Class*

**THE SCHALL LAW FIRM**
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Plaintiffs and Class*

11