**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BOLUKA GARMENT CO., LIMITED and HONGKUO TANG, Individually and on behalf of all others similarly situated,
Plaintiff,

v.

CANAAN, INC., NANGENG ZHANG, JIAXUAN LI, JIANPING KONG, QIFENG SUN, QUANFU HONG, CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, GALAXY DIGITAL ADVISORS LLC, HUATAI FINANCIAL HOLDINGS (HONG KONG) LIMITED, TIGER BROKERS (NZ) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, and VIEWTRADE SECURITIES, INC.

Defendants.

Civil Action No. 1:20-cv-07139-JPO

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated: December 7, 2020

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
*Attorneys for Defendants Citigroup Global Markets Inc., China Renaissance Securities (Hong Kong) Limited, Galaxy Digital Partners LLC, Huatai Financing Holdings (Hong Kong) Limited, Tiger Brokers (NZ) Limited, and ViewTrade Securities, Inc.*

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
*Attorneys for Defendant Canaan, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ALLEGATIONS OF THE AC ................................................................................................. 2

    A.    Canaan: A Leading Bitcoin Mining Company. ....................................................... 2

    B.    The IPO and Short-Seller Attack. ............................................................................ 3

    C.    This Action.................................................................................................................. 4

    D.    The Alleged Related-Party Transactions. ................................................................ 5

        1.    The 2017 Zhejiang Suanli Purchase. ........................................................... 5

        2.    Yao Yongjie's Position at Canaan. ............................................................... 6

        3.    The Grandshores Cooperation Agreement.................................................... 6

LEGAL STANDARD............................................................................................................... 7

ARGUMENT ............................................................................................................................ 8

I.     PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM BECAUSE THE
     REGISTRATION STATEMENT CONTAINED NO MATERIAL
     MISREPRESENTATIONS OR OMISSIONS. ........................................................... 8

    A.    Zhejiang Suanli's Purchase of Products from a Canaan Subsidiary Was Not
        Required to Be Disclosed......................................................................................... 9

        1.    The Zhejiang Suanli Purchase Did Not Render Canaan's Registration
            Statement Misleading.................................................................................... 9

        2.    The Zhejiang Suanli Purchase Was Not a Related-Party Transaction...... 11

    B.    Plaintiffs Fail to Allege How Yao Yongjie's Supposedly Undisclosed Position
        Was a Related-Party Transaction............................................................................ 14

        1.    Plaintiffs Have Not Adequately Pleaded that Yao Yongjie Was a Board
            Member or an Executive of Canaan............................................................ 14

        2.    Plaintiffs Fail to Plead that Mr. Yao's Position Needed to Be Disclosed. 16

    C.    Plaintiffs Have Not Adequately Alleged that Canaan Was Obligated to Disclose
        the Grandshores Cooperation Agreement............................................................... 18

    D.    The Section 11 Claim Should Be Dismissed Based on the Negative Causation
        Defense. ................................................................................................................... 20

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B)......................... 22

    A.    Plaintiffs' Boilerplate Allegations Do Not Give Rise to a Strong Inference of
        Scienter. .................................................................................................................. 23

    B.    Plaintiffs Fail to Allege Loss Causation. ............................................................... 24

CONCLUSION....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972)..................................................................................................... 22

*Amorosa v. AOL Time Warner Inc.*,
    409 F. App'x 412 (2d Cir. 2011) ................................................................................. 22

*Anschutz Corp. v. Merrill Lynch & Co.*,
    690 F.3d 98 (2d Cir. 2012) .......................................................................................... 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................... 7

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................................... 19

*Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x
    353 (2d Cir. 2012)........................................................................................................ 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................... 7

*Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*,
    2010 WL 148617 (S.D.N.Y. 2010).............................................................................. 22

*Bond Opportunity Fund II, LLC v. Heffernan*,
    340 F. Supp. 2d 146 (D.R.I. 2004) .............................................................................. 11

*Bryant v. N.Y. State Educ. Dep't*,
    692 F.3d 202 (2d Cir. 2012) .......................................................................................... 2

*DeMaria v. Andersen*,
    318 F.3d 170 (2d Cir. 2003) ........................................................................................ 10

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................................ 23, 24

*ECA and Local 134 IBEW Joint Pension Tr. of Chicago, et al. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) .............................................................................. 10, 16, 24

*Garber v. Legg Mason, Inc.*,
    347 F. App'x 665 (2d Cir. 2009) ................................................................................... 2

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009)....................... 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ............................................................................ 2, 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ............................................................................................................ 22

*Hutchison v. Deutsche Bank Sec. Inc.*,
  647 F.3d 479 (2d Cir. 2011) ................................................................................................ 8

*In re Authentidate Holding Corp. Sec. Litig.*,
  2009 WL 755360 (S.D.N.Y. Mar. 23, 2009), *aff'd in part, vacated in part, remanded sub nom.*
  *Illinois State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260 (2d Cir. 2010) ..... 18

*In re BOFI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ............................................................................................ 25

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
  665 F. Supp. 2d 404 (S.D.N.Y. 2009) ......................................................................... 21, 22

*In re China Valves Tech. Sec. Litig.*,
  2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012) .................................................................. 11

*In re Express Scripts Holding Co. Sec. Litig.*,
  2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ..................................................................... 2

*In re Francesca's Holdings Corp. Sec. Litig.*,
  2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ............................................................. 10, 11

*In re IAC/InterActiveCorp Sec. Litig.*,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010) ............................................................................... 8

*In re IAC/InterActiveCorp*,
  478 F.Supp.2d 574 (S.D.N.Y. 2007) ................................................................................ 2

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................................... 8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  289 F. Supp. 2d 429 (S.D.N.Y. 2003) ............................................................................... 22

*In re PetroChina Co. Ltd. Sec. Litig.*,
  120 F. Supp. 3d 340 (S.D.N.Y. 2015), *aff'd* (Mar. 21, 2016) ....................................... 25

*In re Tenaris S.A. Sec. Litig.*,
  2020 WL 6018919 (E.D.N.Y. Oct. 9, 2020) ............................................................... 18, 19

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ........................................................................................ 2

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ................................................................................ 24, 25

*Lewy v. SkyPeople Fruit Juice, Inc.*,
2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012)........................................... 17, 20, 23, 24

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020) ......................................................................... 9

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)..................................................................................................... 10

*Philippe Lemieux v. Canaan Inc., et al.*,
Case No. 3:20-cv-00356-MO, ECF No. 1 (D. Or. Mar. 4, 2020)................................ 4

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago on behalf of Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
333 F. Supp. 3d 338, 350 (S.D.N.Y. 2018), *aff'd*, 767 F. App'x 139 (2d Cir. 2019)............... 23

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .................................................................................. 7, 16

*S.E.C. v. Escala Grp., Inc.*,
2009 WL 2365548 (S.D.N.Y. July 31, 2009) ........................................................... 13

*S.E.C. v. Saltsman*,
2016 WL 4136829 (E.D.N.Y. Aug. 2, 2016).......................................................... 12, 16

*Shetty v. Trivago N.V.*,
796 F. App'x 31 (2d Cir. 2019) ........................................................................... 10, 22

*Stadnick v. Vivint Solar, Inc.*,
861 F.3d 31 (2d Cir. 2017) ............................................................................... 8, 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................... 23

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976)................................................................................................... 10

*Unite Here v. Cintas Corp*,
2006 WL 2859279 (S.D.N.Y. Oct. 6, 2006) ............................................................. 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*White v. H & R Block, Inc.*,
  2004 WL 1698628 (S.D.N.Y. July 28, 2004) .......................................................................... 20

**Statutes**

15 U.S.C. § 78u–4(b) ...................................................................................................................... 23

**Other Authorities**

SEC Staff Accounting Bulletin No. 99, 64 Fed.Reg. 45150 (1999) ...................................... 12, 13

SEC, "Item 404 of Regulation S-K - Transactions with Related Persons, Promoters and Certain
  Control Persons," available at http://www.sec.gov/divisions/corpfin/guidance/execcomp404
  interp.htm (Aug. 8, 2007) ......................................................................................................... 17

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................. passim

**Regulations**

17 C.F.R. § 229.404(a), inst. 1 ...................................................................................................... 12

17 C.F.R. § 229.404(a), inst. 6 ...................................................................................................... 12

17 C.F.R. § 230.405 ....................................................................................................................... 12

Item 7 of Regulation S-K ............................................................................................................... 16

**PRELIMINARY STATEMENT**[1]

From its beginning, this case has been the product of a single plaintiffs' firm seeking to piggyback on a "report" from a pseudonymous short-seller who attacked Canaan in hopes of sabotaging its stock price. Inexplicably, Plaintiffs' counsel initially filed this complaint in the District of Oregon, even though no party—including the named plaintiff—had any connection to the state. When it came time to move to serve as lead plaintiffs, no plaintiffs' attorneys showed interest except for the same plaintiffs' firm, which came forward with two new plaintiffs. And after Canaan successfully moved to transfer the case to this Court, the new plaintiffs filed the AC, abandoning most of their original allegations but still coming no closer to stating a claim.

All that remains are wafer-thin allegations—some of which make no sense—pinned solely on purportedly undisclosed related-party transactions. Plaintiffs' effort to transform these allegations into Securities Act Section 11 and Exchange Act Section 10(b) claims fails as a matter of law because the three supposed related-party transactions are all clearly immaterial on their face: (i) a years-old sale by a Canaan subsidiary (less than 10% of which was indirectly owned by two Canaan directors) of products that accounted for just 0.07% of Canaan's annual consolidated products revenue; (ii) the supposed role of a Canaan shareholder on a nonexistent board and in an executive position he did not hold (which allegedly put him in charge of Canaan's *de minimis* international sales); and (iii) the public announcement of a "cooperation agreement," between a Canaan subsidiary and a subsidiary of a company controlled by a Canaan shareholder, that explicitly disclaimed any legally binding effect and resulted in no sales.

---

[1] This brief refers to Canaan, Inc. as "Canaan" or the "Company"; Boluka Garment Co., Limited and Hongkuo Tang as "Plaintiffs" or "Lead Plaintiffs"; Plaintiffs' First Amended Class Action Complaint as "AC" (cited as "AC ¶ _"); and the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4, as the "PSLRA." All references to exhibits are to those attached to the December 7, 2020 Declaration of Daniel L. Cantor ("Cantor Decl."). Unless otherwise specified, all quotations and citations are omitted and all emphasis is added.

Plaintiffs fail to identify any omission that had a material effect on Canaan's finances or altered the total mix of information available to investors in Canaan's IPO. Indeed, even under the highly technical SEC and GAAP rules that Plaintiffs claim create a disclosure duty, the alleged omissions are not reporting violations. Moreover, none of the alleged related-party transactions bear any resemblance to the kinds of conflicted deals that laws governing related-party transactions are designed to ferret out.

Despite having cleared out the messy underbrush of their original complaint, Plaintiffs' pared-down pleading still fails to state a Section 11 or Section 10(b) claim. Accordingly, the Court should dismiss the AC with prejudice.

<h2 style="text-align:center">ALLEGATIONS OF THE AC[2]</h2>

**A.  Canaan: A Leading Bitcoin Mining Company.**

Canaan was founded in 2013 to provide supercomputing solutions incorporating its proprietary high-performance application-specific integrated circuit technology for cryptocurrency mining. Cantor Decl. ¶ 3, Ex. 2 ("Registration Statement") (cited as "Reg. Stmnt.") at 1. It has since grown into the second-largest designer and manufacturer of Bitcoin mining machines. *Id*. By 2017, Canaan had RMB 1,303,100,000 in annual consolidated products revenue. Reg. Stmnt. at 12.

---

[2]  This discussion is based on (i) the AC's allegations, which are accepted as true solely for purposes of this motion, (ii) documents incorporated by reference or integral to the AC, and (iii) publicly available materials, such as SEC filings and media reports. *See, e.g.*, *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012) (holding that court may consider on motion to dismiss "documents incorporated by reference in the complaint, and public records"); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of SEC filings on motion to dismiss); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (taking judicial notice of relevant newspaper articles on motion to dismiss); *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *1 n.1 (S.D.N.Y. Aug. 1, 2017) (courts may judicially notice publicly available information, such as earnings-call transcripts, on motion to dismiss); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 585 (S.D.N.Y. 2011) (citing *In re IAC/InterActiveCorp*, 478 F.Supp.2d 574, 585 (S.D.N.Y. 2007)) (holding that on a motion to dismiss, the court may properly consider documents referenced in or integral to the complaint, as well as public filings with the SEC).

Although incorporated in the Cayman Islands, Canaan conducts operations in China through its subsidiaries and has its principal executive offices in Hangzhou.  *Id.* at 3-4.  As a result, Canaan derives a "substantial majority" of its revenue from Chinese customers.  Reg. Stmnt. at 19.  At the time of its IPO, Canaan had nine material subsidiaries, four of which engaged in research and development, including Canaan Creative Co., Ltd. ("Canaan Creative") and Hangzhou Canaan Creative Information Technology Co., Limited ("Hangzhou Canaan").[3] Reg. Stmnt. at F-9.

## B.  The IPO and Short-Seller Attack.

On November 21, 2019, Canaan conducted an IPO of 10 million American Depositary Shares ("ADS") on the Nasdaq Global Market.  Like many startups in the tech world, Canaan dreamed of expanding its role in an emerging industry and accessing the robust U.S. capital market.  Canaan engaged in the rigorous process of issuing ADS, the securities that allow foreign companies to connect with investors on a U.S. exchange, with assistance from multiple underwriters.  Cantor Decl. ¶ 3, Ex. 3 ("Underwriting Agreement") at 42.  Canaan's IPO ultimately raised $90 million to support the continued development of its innovative technology.

On February 20, 2020, a short-seller using the pseudonym "Marcus Aurelius Value" posted an online report attacking Canaan.  AC ¶ 92; Cantor Decl. ¶ 3, Ex. 4 ("MAV Report").  Like many opportunistic investors that profit by blindsiding companies from behind a veil of

---

[3] Plaintiffs repeatedly conflate Canaan and its subsidiaries.  For instance, it was Hangzhou Canaan that sought to be listed on the Shenzhen Stock Exchange, not Canaan.  *Compare* AC ¶ 39 *with*  http://www.szse.cn/disclosure/listed/ bulletinDetail/index.html?bc5fca76-6d92-4cf8-817f-2065ca9c71e8  (cited at AC ¶ 39 fn. 7); certified translation available at Cantor Decl. ¶ 3, Ex. 5.  And as Plaintiffs' own exhibit makes clear, the reason that Hangzhou Canaan did not list shares on the Shenzhen Stock Exchange was not because of inquiries into related-party transactions, as Plaintiffs suggest.  Rather, as a result of "recent changes in the domestic securities market environment and regulatory policies, especially the introduction of the revised 'Management Measures for the Major Asset Restructuring of Listed Companies' and related supporting policies, the listed company will face major uncertainties in continuing to advance the reorganization.  After careful research, in order to effectively protect the interests of investors and all parties, the listed company decided to terminate this major asset reorganization."  *Compare* AC ¶ 39 *with* http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?bc5fca76-6d92-4cf8-817f-2065ca9c71e8  (cited at AC ¶ 39 fn. 13); certified translation available at Cantor Decl. ¶ 3, Ex. 5.

anonymity, the MAV Report acknowledged that its author and his affiliates held a short position in Canaan stock, meaning "[t]hey therefore stand to realize significant gains" if the MAV Report's accusations caused Canaan's stock price to drop. *Id.* The MAV Report made inflammatory allegations about Canaan's financial prospects and customer base. *Id.* It also faulted Canaan for not disclosing certain alleged related-party transactions in its Registration Statement. *Id.* The day the MAV Report appeared, Canaan's stock price dropped 6.8%. *Id.* ¶ 8.

### C. This Action.

On March 4, 2020, lifting heavily from the MAV Report, Plaintiffs' counsel filed a putative class action in the United States District Court for the District of Oregon on behalf of Philippe Lemieux. (*Philippe Lemieux v. Canaan Inc., et al.*, Case No. 3:20-cv-00356-MO, ECF No. 1 (D. Or. Mar. 4, 2020)). Plaintiffs' counsel copied wholesale the MAV Report's allegations that Canaan had not disclosed related-party transactions, that Canaan's financial prospects were worse than disclosed, that Canaan deleted distributors from its website before the IPO, and that certain Canaan clients were unlikely to be repeat customers. By the time lead-plaintiff motions were due, Lemieux—a Canadian resident with no apparent connection to Oregon—had vanished, and no other plaintiffs had even bothered to apply. On a motion from Lemieux's counsel, the Oregon court appointed Boluka Garment Co., Limited and Hongkuo Tang as Lead Plaintiffs.

On June 1, 2020, pointing to the conspicuous absence of any connection to Oregon, Canaan moved to transfer the action to this Court. Plaintiffs' counsel gave no justification for filing in Oregon, a forum they conceded would be less convenient for the parties and almost every potential witness. Canaan's motion to transfer was granted on August 31, 2020, and on October 7, 2020, Plaintiffs filed the AC, seeking to recover under (i) Securities Act Section 11 against Canaan, the underwriters for the IPO, and certain of Canaan's officers and directors, (ii)

Exchange Act Section 10(b) against Canaan and the Individual Defendants, and (iii) Exchange Act Section 20(a) against the Individual Defendants.[4]  AC ¶¶ 1, 102, 113, 117, 138.

The AC abandons the claims in the original complaint that the Registration Statement misrepresented Canaan's financial prospects, omitted information about Canaan's distributors, and omitted that prior clients were not likely to be repeat customers.  The AC now focuses on allegations that the Registration Statement omitted information about three events that Plaintiffs broadly paint as "related-party" transactions.  *Id.* ¶ 4.  According to Plaintiffs, the MAV Report revealed that the Registration Statement failed to disclose these transactions.  *Id.* ¶ 8.

### D. The Alleged Related-Party Transactions.

#### 1. The 2017 Zhejiang Suanli Purchase.

Raised for the first time in the AC, Plaintiffs allege a related-party transaction between Canaan and Zhejiang Suanli Network Science and Technology Company Ltd. ("Zhejiang Suanli").  AC ¶ 7.  Plaintiffs allege that Zhejiang Suanli is related to Canaan through the indirect ownership interests of two Canaan directors, Jianping Kong and Qifeng Sun.  The AC states that Messrs. Kong and Sun own 35% and 25%, respectively, of Zhejiang Shubei Investment Management Co., Ltd. ("Zhejiang Shubei").  AC ¶ 89.  Plaintiffs contend that Zhejiang Shubei, in turn, owned 10% of Zhejiang Suanli.  AC ¶ 90.  Plaintiffs allege that Zhejiang Suanli purchased RMB 973,333.33 in products from Canaan in 2017, and that Canaan failed to disclose this as a related-party transaction in the Registration Statement.  AC ¶ 90.  This transaction

---

[4]  The AC defendants are: (i) Canaan; (ii) Nangeng Zhang (Canaan's Chairman and CEO), Quanfu Hong (Canaan's Vice President of Finance and Principal Financial and Accounting Officer), and Jiaxuan Li, Jianping Kong, and Qifeng Sun (directors of Canaan) (collectively, the "Individual Defendants"); and (iii) Citigroup Global Markets Inc., China Renaissance Securities (Hong Kong) Limited, CMB International Capital Limited, Galaxy Digital Partners LLC (f/k/a Galaxy Digital Advisors LLC), Huatai Financing Holdings (Hong Kong) Limited, Tiger Brokers (NZ) Limited, Haitong International Securities Company Limited, and ViewTrade Securities, Inc. (collectively, the "Underwriter Defendants").  To the best of Canaan and the Underwriter Defendants' knowledge, the Individual Defendants, CMB International Capital Limited, and Haitong International Securities Company Limited have not been served in this action.

accounted for just 0.07% of Canaan's RMB 1,303,100,000 in consolidated products revenue for 2017.  Reg. Stmnt. at 12.

### 2. Yao Yongjie's Position at Canaan.

Plaintiffs claim that Canaan engaged in a related-party transaction with investor Yao Yongjie, but never identify a *transaction* of any kind, alleging only that the Registration Statement failed to disclose that Mr. Yao allegedly held various positions at Canaan.  AC ¶ 5. Plaintiffs correctly note that Mr. Yao "indirectly controlled" HK Jiaji Science and Technology Limited, which allegedly owned 8.8% of Canaan's shares.  Reg. Stmnt. at 143–44; AC ¶ 5.  But as Plaintiffs' own exhibit shows, Plaintiffs mistakenly assert that Mr. Yao was also the Chairman of the Board of Supervisors of Canaan (AC ¶ 54); rather, Mr. Yao was the Chairman of the Board of Supervisors of a subsidiary, Hangzhou Canaan, and left that position in May 2018.[5]  As a Cayman Islands company, Canaan does not have a Board of Supervisors, a Chinese company construct.

Plaintiffs allege, on the purported word of two confidential witnesses, that Mr. Yao was an international sales executive of Canaan.  AC ¶¶ 57-58.  But Plaintiffs do not explain the significance of this unsubstantiated claim.  After all, most of Canaan's business is in China: "[i]n 2017, 2018 and the nine months ended September 30, 2019, revenue from customers in the PRC accounted for 91.5%, 76.1% and 79.8%, respectively, of [Canaan's] total revenue."  Reg. Stmnt. at 19.

### 3. The Grandshores Cooperation Agreement.

Plaintiffs allege that Canaan failed to disclose a related-party transaction with Grandshores Technology Group Limited ("Grandshores"), a company indirectly controlled by

---

[5] http://www.neeq.com.cn/disclosure/2017/2017-08-30/1504079249_162780.pdf (AC ¶ 54 fn. 28), certified translation available at Cantor Decl. ¶ 3, Ex. 6; Cantor Decl. ¶ 3, Ex. 7.

Mr. Yao.  AC ¶ 6.  On October 27, 2019, almost a month before Canaan's IPO, Grandshores

publicly announced a non-binding cooperation agreement (the "Cooperation Agreement")

between Hangzhou Grandshores Weicheng Technology Co., Ltd. ("GS Weicheng") and Canaan

Creative; Canaan itself was not a party to the agreement.  AC ¶ 6.  The Cooperation Agreement

provided a framework for future business ventures, but as the Grandshores press release (AC ¶ 6

n. 3) expressly states: "[t]he Agreement only provides a strategic cooperation framework

between GS Weicheng and Canaan, and *does not constitute a legally binding contract or*

*otherwise give rise to legally enforceable rights and obligations*.  All transactions contemplated

under the Agreement are subject to the signing of a definitive agreement by GS Weicheng and

Canaan."  Cantor Decl. ¶ 3, Ex. 8 ("Grandshores Press Release").  Plaintiffs have not alleged—as

they cannot—that any sales materialized from the Cooperation Agreement.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege more than "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  If the

"well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct," the complaint should be dismissed.  *Id.* at 679.  Rule 9(b) requires that "in alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake."  Fed. R. Civ. P. 9(b).  "To meet the pleading standard of Rule 9(b), this Court has

repeatedly required, among other things, that the pleading explain why the statements were

fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004).  Rule 9(b) applies to both

Section 10(b) and Section 11 claims, where the Section 11 claims sound in fraud.  *Rombach*, 355

F.3d at 171 ("We hold that the heightened pleading standard of Rule 9(b) applies to Section

11 . . . claims insofar as the claims are premised on allegations of fraud.").  While Plaintiffs

7

purport to "disclaim any allegation of fraud, recklessness or intentional misconduct" in their

Section 11 claim (AC ¶33), a complaint "cannot evade the Rule 9(b) strictures by summarily

disclaiming any reliance on a theory of fraud or recklessness." *In re JP Morgan Chase Sec.*

*Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).  Since the same facts form the basis for

Plaintiffs' Section 11 claim (*see* AC ¶¶ 101), and Section 10(b) claim (*see* AC ¶ 117) (both citing

AC ¶¶ 1-100 as the factual basis for the claims), Plaintiffs' Section 11 claim sounds in fraud and

is subject to Rule 9(b).  *See In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 116

(S.D.N.Y. 2010) ("What is foreclosed is pleading fraud and non-fraud claims in the alternative so

poorly that the court is unable to figure out which allegations are intended to support which

claims.").

## ARGUMENT

### I.  PLAINTIFFS FAIL TO STATE A SECTION 11 CLAIM BECAUSE THE REGISTRATION STATEMENT CONTAINED NO MATERIAL MISREPRESENTATIONS OR OMISSIONS.

Plaintiffs cannot recover under Section 11.  To adequately plead a Section 11 claim, a

plaintiff must establish one of three bases for liability: "(1) a material misrepresentation; (2) a

material omission in contravention of an affirmative legal disclosure obligation; or (3) a material

omission of information that is necessary to prevent existing disclosures from being misleading."

*Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 (2d Cir. 2011); *see also Stadnick v.*

*Vivint Solar, Inc.*, 861 F.3d 31, 36 (2d Cir. 2017).

Here, Plaintiffs do not claim that the Registration Statement contains any material

misrepresentation.  While Plaintiffs purport to identify material omissions in the Registration

Statement, they do not adequately plead *any* basis for omissions liability for any of the three

transactions at issue, *i.e.*, that Defendants had a duty to disclose them as related-party

transactions or that the Registration Statement was misleading because of a failure to do so.

First, the Zhejiang Suanli purchase was too negligible to require disclosure and, in any event, was not a related-party transaction.  Second, Plaintiffs' gratuitous claims about Yao Yongjie are irredeemably flawed.  The AC does not plausibly allege that Mr. Yao was even a board member or executive of Canaan, let alone that he engaged in a related-party transaction with Canaan that needed to be disclosed.  Third, because the Grandshores Cooperation Agreement was not legally binding and resulted in no sales, its omission did not render Canaan's financials misleading.  More generally, because Plaintiffs do not allege that anyone "improperly brought influence to bear over [Canaan] or its board in arriving at the transaction terms," there is no question that none of these alleged "related-party transactions" are actionable as a matter of law.  *Cf. Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 796 (S.D.N.Y. 2020) (dismissing Section 10(b) claim where plaintiff asserted only a "conclusory claim" of impropriety involving an alleged related-party transaction).

### A.  Zhejiang Suanli's Purchase of Products from a Canaan Subsidiary Was Not Required to Be Disclosed.

Plaintiffs' allegations about Zhejiang Suanli do not support either of Section 11's bases for omissions liability.  First, the transaction was not required to be disclosed because it was too small, just 0.07% of Canaan's revenues, to have had any material impact on Canaan's disclosures.  Second, Plaintiffs are simply wrong that the law required Canaan to disclose the minuscule, indirect ownership of Zhejiang Suanli by two Canaan directors.  AC ¶ 90.

### 1.  The Zhejiang Suanli Purchase Did Not Render Canaan's Registration Statement Misleading.

The Zhejiang Suanli transaction was not a material omission under Section 11 because disclosure of a purchase constituting just 0.07% of Canaan's consolidated products revenue would not have "been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Stadnick*, 861 F.3d at 37 (citing *DeMaria v. Andersen*, 318

9

F.3d 170, 180 (2d Cir. 2003) (alteration in original) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38, 44 (2011)). Where "the Complaint does not permit a court to plausibly and reasonably infer that [the alleged misconduct] had any negative financial impact at all, let alone a material impact on [defendant's] overall revenue," disclosure is not required. *Shetty v. Trivago N.V.*, 796 F. App'x 31, 33 (2d Cir. 2019) (affirming dismissal of Section 11 claim). While materiality is a "mixed question of law and fact," dismissal at the pleading stage is warranted when the alleged misstatements or omissions "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *ECA and Local 134 IBEW Joint Pension Tr. of Chicago, et al. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (affirming dismissal of Section 11 claim where plaintiffs failed to allege any material misstatements or omissions).

In 2017, Canaan generated RMB 1,303,100,000 in consolidated products revenue (almost $200 million). Reg. Stmnt. at 12. The alleged RMB 973,333.33 (less than $150,000) in sales to Zhejiang Suanli (AC ¶ 90) accounts for only 0.07% of 2017 products revenue—an immaterial percentage that need not have been disclosed. *See Stadnick*, 861 F.3d at 39 (affirming dismissal of Section 11 claim where plaintiff did not allege omission was material to revenue or operations). Even at the pleading stage, there is no question that investors would not have viewed the Zhejiang Suanli transaction as significant. This Court's decision in *In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015), is instructive. There, the Court granted a motion to dismiss Section 11 and 10(b) claims based on an alleged related-party transaction, holding that "[i]n the face of $79 million in reported revenue . . . the mere relatedness of a party supplying $250,000 worth of inventory could hardly be considered a material fact significant in relation to investment decisions." *Id.*, 2015 WL 1600464, at *16.

10

Both the absolute ($250,000) and percentage-of-revenue (0.3%) amounts of the transaction in that case were far greater than the Zhejiang Suanli transaction here.  *See also In re China Valves Tech. Sec. Litig.*, 2012 WL 4039852, at *7 (S.D.N.Y. Sept. 12, 2012) (granting motion to dismiss Section 11 and 10(b) claims where alleged related-party transaction was "quantitatively small relative to the size of [defendants'] operations" and thus immaterial)*; Unite Here v. Cintas Corp*, 2006 WL 2859279, at *8 (S.D.N.Y. Oct. 6, 2006) (denying motion for preliminary injunction because plaintiff failed to show a likelihood of proving that defendant had a duty to disclose payments given their immaterial size).

### 2.   The Zhejiang Suanli Purchase Was Not a Related-Party Transaction.

Contrary to Plaintiffs' contention, Canaan also had no independent duty to disclose the Zhejiang Suanli purchase as a related-party transaction.  In their effort to inflate a minor transaction with a Canaan subsidiary into a Section 11 violation, Plaintiffs allege that Canaan was required to disclose the Zhejiang Suanli purchase under three regulations: (1) Item 404 of SEC Regulation S-K; (2) FASB Accounting Standards Codification Topic 850-10-50-1 ("ASC 850")[6]; and (3) Item 7.B.1 of SEC Form 20-F.  Compl. ¶ 91.  Plaintiffs are wrong on each count.

**Item 404.**  Nothing in Item 404 requires disclosure of the Zhejiang Suanli purchase in Canaan's Registration Statement.  First, "Item 404(a) requires that a transaction involving a director or officer be reported only if the director or officer of the registrant has a material interest in the transaction *and* the registrant is a party to the transaction."  *Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp. 2d 146, 158 (D.R.I. 2004) (emphasis in original).  Regulation S-K defines "registrant" as "the issuer of the securities for which the registration

---

[6]  Prior to 2009, the U.S. GAAP guidance on related-party transactions was codified in Financial Account Standards Board ("FASB") Statement No. 57 ("FAS 57"), and ASC 850 is still referred to as FAS 57 in relevant case law.

statement is filed." 17 C.F.R. § 230.405. Here, it was not Canaan, the registrant and issuer of ADS, that was a party to the Zhejiang Suanli purchase, but its subsidiary Hangzhou Canaan.[7]

Further, Item 404 requires disclosure only of related-party transactions "in which any related person had or will have a direct or indirect *material* interest." *S.E.C. v. Saltsman*, 2016 WL 4136829, at *12 (E.D.N.Y. Aug. 2, 2016). As Instruction 1 to Item 404(a) explains: "the materiality of interest is to be determined on the basis of the significance of the information to investors in light of all the circumstances of a particular case." 17 C.F.R. § 229.404(a), inst. 1. Instruction 6 to Item 404 quantifies the materiality of interest by expressly excluding from the disclosure interested persons whose "interest arises only . . . [f]rom the direct or indirect ownership . . . of *less than a ten percent equity interest* in another person (other than a partnership) which is a party to the transaction." 17 C.F.R. § 229.404(a), inst. 6.

Based on Plaintiffs' own allegations, the Instruction 6 exemption plainly applies here. Mr. Kong owns 35% and Mr. Sun owns 25% of Zhejiang Shubei, which in turn owns 10% of Zhejiang Suanli. AC ¶¶ 89-90. In other words, they have notional 3.5% and 2.5% interests, respectively, in Zhejiang Suanli. Both of these interests are well within the Instruction 6 exemption: individually and collectively, they constitute less than a 10% equity interest in Zhejiang Suanli.

In addition, the Second Circuit has used SEC Staff Accounting Bulletin No. 99, 64 Fed.Reg. 45150, 45150–52 (1999) ("SAB 99"), as "persuasive guidance" for evaluating the materiality of a misstatement. SAB 99's factors include: "whether the misstatement masks a change in earnings or other trends, whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise, whether the misstatement changes a loss into income

---

[7] http://www.neeq.com.cn/disclosure/2017/2017-08-30/1504079249_162780.pdf (AC ¶ 40 fn. 17), certified translation available at Cantor Decl. ¶ 3, Ex. 6.

12

or vice versa, and whether the misstatement involves concealment of an unlawful transaction."

*S.E.C. v. Escala Grp., Inc.*, 2009 WL 2365548, at *9 (S.D.N.Y. July 31, 2009) (citing SAB 99,

64 Fed.Reg. at 45,152).  SAB 99 also notes that "[t]he use of a percentage as a numerical

threshold, such as 5%, may provide the basis for a preliminary assumption that . . . a deviation of

less than the specified percentage with respect to a particular item on the registrant's financial

statements is unlikely to be material."  SAB 99, 64 Fed.Reg. at 45,151.  The alleged omission of

the Zhejiang Suanli purchase did not mask a change in earnings, hide a failure to meet

expectations, change a loss into income, or conceal an unlawful transaction.  And it represented

just 0.07% of Canaan's revenue, far below the 5% threshold.

**ASC 850.**  Similarly, under ASC 850-10-50-1, only "material related party transactions"

need to be disclosed—*i.e.*, transactions that "would make a difference in decision making."  ASC

850-10-10-1.  As with Plaintiffs' meritless claim that Item 404 required disclosure of the

Zhejiang Suanli purchase, ASC 850 did not require disclosure because of the immaterial

purchase amount and interest held by Messrs. Kong and Sun for a one-time transaction with a

Canaan subsidiary that took place two years before the IPO.

**Item 7.B.**  Item 7.B did not require disclosure because Messrs. Kong and Sun did not

own interests that gave them "significant influence" over Zhejiang Suanli.  AC ¶ 91.  Item 7.B.

requires disclosure only of transactions between the company and (i) "enterprises in which a

substantial interest in the voting power is owned, directly or indirectly, by any person" whose

voting power gives them "significant influence" over the enterprise, and close members of any

such individual's family or (ii) key management personnel, including directors and senior

management of companies and close members of such individuals' families, "or over which such

a person is able to exercise significant influence."  Because Plaintiffs offer nothing more than the

13

conclusory allegation that Messrs. Kong and Sun had significant influence over Zhejiang Suanli, there is no basis to assert that disclosure of this transaction was required under Item 7.B.[8]

### B. Plaintiffs Fail to Allege How Yao Yongjie's Supposedly Undisclosed Position Was a Related-Party Transaction.

Plaintiffs' allegations about Mr. Yao's position at Canaan simply make no sense.  As a threshold matter, Plaintiffs fail to plausibly allege that Mr. Yao was even a board member or executive of Canaan, let alone explain in what way any alleged position constituted a related-party transaction that needed to be disclosed.  Plaintiffs' allegations fall far short of Rule 9(b)'s heightened pleading standard.  And contrary to Plaintiffs' assertions, SEC and GAAP regulations did not require disclosure of any of these alleged facts.

### 1. Plaintiffs Have Not Adequately Pleaded that Yao Yongjie Was a Board Member or an Executive of Canaan.

Because Plaintiffs' allegations about Mr. Yao are demonstrably false, the Court need not wade through Plaintiffs' convoluted theory to dismiss Plaintiffs' claim.  Indeed, Plaintiffs' contention that Mr. Yao was the Chairman of the Board of Supervisors of Canaan is contradicted by their own exhibits.  AC ¶ 54.  Mr. Yao was the Chairman of the Board of Supervisors of *Hangzhou Canaan*, a position he left in May 2018—more than a year before Canaan's IPO.[9] Moreover, Mr. Yao could not have been on Canaan's Board of Supervisors because Canaan does not have one; there is no such thing as a Board of Supervisors under the law of the Cayman Islands, where Canaan is incorporated.

Plaintiffs also offer no credible support for their allegation that Mr. Yao was a "senior executive at Canaan in charge of international sales."  AC ¶ 54.  That claim is based solely on

---

[8] Item 7.B. notes that "significant influence" is presumed at a "10% interest in the voting power of the company," a threshold neither Mr. Kong nor Mr. Sun approached.

[9] http://www.neeq.com.cn/disclosure/2017/2017-08-30/1504079249_162780.pdf (AC ¶ 54 fn. 28), certified translation available at Cantor Decl. ¶ 3, Ex. 6; Cantor Decl. ¶ 3, Ex. 7.

vague statements—made by confidential witnesses in response to leading questions from Plaintiffs' counsel—that Mr. Yao "was a salesperson" and purportedly engaged in sales overseas. AC ¶¶ 57-58. As an initial matter, Plaintiffs fail to demonstrate that either witness is a reliable source for the allegations about Mr. Yao. "For a court to credit such information, confidential sources must be described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 589 (S.D.N.Y. 2011). But Plaintiffs do not allege that either witness ever had any direct contact with Mr. Yao; one allegedly worked at Hangzhou Canaan for only two months. AC ¶¶ 57-58. Nor do they allege any other basis for the witnesses' supposed knowledge. The allegations here "fall[] far short of the particularity needed to substantiate the confidential witness's knowledge." *Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 880 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012); *see also In re Coty Inc. Sec. Litig.,* 2016 WL 1271065, at *10 (S.D.N.Y. Mar. 29, 2016) (finding statement of confidential witness "insufficient" to state a Section 11 claim).

But even ignoring this dispositive foundational deficiency, the witnesses' statements do not support Plaintiffs' allegations. Neither witness actually states that Mr. Yao is a "senior executive." And given that international sales were but a small fraction of Canaan's total consolidated revenue, the witnesses' statements that Mr. Yao was responsible for sales targets all over the world (AC ¶ 57) fall far short of establishing that he was a senior executive. Reg. Stmnt. at 19 (noting as a *risk factor* that "[a] substantial majority of [Canaan's] revenues are generated from sales to customers in the PRC," and "[i]n 2017, 2018 and the nine months ended

15

September 30, 2019, revenue from customers in the PRC accounted for 91.5%, 76.1% and 79.8%, respectively, of [Canaan's] total revenue.").

### 2.  Plaintiffs Fail to Plead that Mr. Yao's Position Needed to Be Disclosed.

Plaintiffs have failed to plead even the most elementary facts supporting their claim that the Registration Statement should have disclosed Mr. Yao's alleged role at Canaan.  The AC does not satisfy the basic notice-pleading standard, let alone Rule 9(b)'s heightened standard. Critically, the AC does not identify any *transaction* with Mr. Yao.  Nor are there any allegations explaining why the failure to disclose some unidentified transaction was purportedly fraudulent. *Rombach*, 355 F.3d at 175 ("To meet the pleading requirement of Rule 9(b), plaintiffs cannot rest on their say-so that these statements are fraudulent; they must explain why.  Having neglected to do so, they fail to plead with the requisite particularity.")

Assuming that Plaintiffs' claims are based on Mr. Yao's allegedly receiving a salary and commissions (*see* AC ¶ 5), Plaintiffs do not quantify those payments, leaving the Court unable to conclude that they cross some materiality threshold.  Nor do Plaintiffs allege that the terms of Mr. Yao's alleged employment with Canaan were unfair.  *Cf.* Item 7 of Regulation S-K (The purpose of related-party transaction disclosures is to "provide[] information regarding transactions the company has entered into with persons affiliated with the company and whether the terms of such transactions are fair to the company.")  To the extent that Plaintiffs claim that the Registration Statement simply needed to disclose Mr. Yao's alleged positions, Plaintiffs have not identified, nor could they, any reason why Mr. Yao's purported status as a Canaan executive would be material to investors in Canaan's IPO.  *ECA*, 553 F.3d at 197 (dismissing Section 11 claim where the alleged omission was "so obviously unimportant to a reasonable investor").  "Without an assertion of concrete and personal benefit to Defendant, [Plaintiffs have] failed adequately to allege . . . [a] related-party transaction[]." *Saltsman*, 2016 WL 4136829, at *13.

Further, even assuming there was some pertinent transaction involving Mr. Yao, disclosure of his supposed senior role was not required by Item 404 (AC ¶ 59), ASC 850 (AC ¶ 70), or Item 7.B. (AC ¶ 62).

**Item 404.**  Mr. Yao is not a related party within the meaning of Item 404.  Instruction 1 of Item 404 defines a "related person" as "any director or executive officer of the registrant," "any nominee for director," or "any immediate family member."  As explained above, Mr. Yao was not a director or executive officer of the registrant, Canaan, Inc., so Item 404 does not apply. In an analogous example, the SEC provided interpretive guidance that a transaction with an officer and director of a wholly owned subsidiary—who is not an officer or director of the parent and holds only a nominal amount of the parent's shares—does not need to be disclosed under Item 404.  SEC, "Item 404 of Regulation S-K - Transactions with Related Persons, Promoters and Certain Control Persons," available at http://www.sec.gov/divisions/corpfin/guidance/execcomp404interp.htm (Aug. 8, 2007).  Here, Mr. Yao is not an officer or director of Canaan and holds only a nominal 8.8% indirect interest in Canaan.

**ASC 850.**  ASC 850-10-50-1 requires disclosure only of "material related party transactions, other than compensation arrangements," and Plaintiffs allege no transactions with Mr. Yao aside from his alleged compensation as a Canaan employee, AC ¶ 5.  Mr. Yao is also not a "related party" under ASC 850-10-20, because he was not a "principal owner" or part of "management" of Canaan.  *See Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *18 (S.D.N.Y. Sept. 10, 2012) (finding plaintiffs did not adequately allege disclosure was required under FAS No. 57).  Mr. Yao is the beneficial owner of less than 10% of Canaan through another "indirectly controlled" company.  ASC 850-10-20 (defining "principal owners" as "owners of record or known beneficial owners of more than 10 percent of the voting interests of the entity").

17

And, as explained above, Mr. Yao was not a manager of Canaan—at most, Plaintiffs have alleged that Mr. Yao was an employee of its subsidiary, Hangzhou Canaan.

**Item 7.B.**  Again, Item 7.B. requires disclosure of related-party transactions only between the company and individuals with "significant influence over the company" or "key management personnel, that is, those persons having authority and responsibility for planning, directing and controlling the activities of the company."  AC ¶ 62.  Mr. Yao was neither.  There is no allegation that he was a shareholder with "significant influence" over Canaan, AC ¶ 54; Reg. Stmnt. at 144, or that he was part of Canaan's "key management."  At most, Plaintiffs claim (incorrectly) that he was on the Board of Supervisors more than a year before Canaan's IPO and an employee of Hangzhou Canaan responsible for international sales.

## C.  Plaintiffs Have Not Adequately Alleged that Canaan Was Obligated to Disclose the Grandshores Cooperation Agreement.

Plaintiffs cannot state a claim based on an alleged failure to disclose the provisional and non-binding Grandshores Cooperation Agreement.  Defendants had no duty to disclose this non-binding framework because "Plaintiffs fail [] to put forth any particularized factual allegations making it plausible that these omissions caused any piece of existing 'reported financial information' to misleadingly indicate a specific future result or financial condition."  *In re Authentidate Holding Corp. Sec. Litig.*, 2009 WL 755360, at *3 (S.D.N.Y. Mar. 23, 2009), *aff'd in part, vacated in part, remanded sub nom. Illinois State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260 (2d Cir. 2010) (Item 303 case dismissing Section 10(b) claims).[10]  The agreement was entirely non-binding, meaning that the probability of any specific impact on

---

[10]  Item 303 case law applies since Plaintiff asserts disclosure was required by Item 5(D) and "[w]hen adjudicating a disclosure duty arising under Item 5(D), courts may look for guidance to the disclosure duty under Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303, as Item 5(D) requires the same disclosures as Item 303 of Regulation S-K."  *In re Tenaris S.A. Sec. Litig.*, 2020 WL 6018919, at *9 (E.D.N.Y. Oct. 9, 2020).

Canaan's financials at the time of the Registration Statement's filing was so low or uncertain that it rendered the transaction immaterial.  Thus, there is no question that this preliminary agreement to consider certain future mutually beneficial business opportunities did not have a material effect on Canaan's financials under the traditional *Basic* analysis.  *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) (citation omitted) ("materiality will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity").  This immateriality is confirmed by Plaintiffs' failure to allege—as they cannot—that any sales ever materialized from the Cooperation Agreement.

Indeed, had the Registration Statement disclosed the Cooperation Agreement, as Plaintiffs now insist it should have, it may have painted a misleadingly rosy picture of Canaan's future financial performance by giving the false impression that Canaan expected to receive substantial revenue from Grandshores even though the agreement was provisional and non-binding. *See In re Tenaris S.A. Sec. Litig.*, 2020 WL 6018919, at *9 (E.D.N.Y. Oct. 9, 2020) ("The most the Court can infer from these pleadings is that [the alleged undisclosed event] *could* have had *some* effect on [defendant's] financial condition. But these allegations are too general to allow the Court to infer that [the alleged undisclosed event] was 'reasonably likely' to have a 'material effect' on [defendant's] financial condition.").  Had Canaan made public statements about the Cooperation Agreement notwithstanding the lack of sales, Plaintiffs no doubt would have complained that Canaan had conveyed undue optimism about the agreement's financial impact.  Certainly omission of the Cooperation Agreement from Canaan's Registration Statement did not overstate Canaan's reported financial information or cause shareholders to

19

purchase Canaan's ADS at an inflated price—if anything, it likely tempered potential investors'

expectations for Canaan's future prospects.

In any event, the investing public was well aware of the nature of the Cooperation

Agreement.  Grandshores publicly announced the Cooperation Agreement, including Mr. Yao's

role, on October 27, 2019—almost a month before the IPO—and Canaan disclosed Mr. Yao's

stock holdings in HK Jiaji Science and Technology Limited in the Registration Statement.  Reg.

Stmnt. at 144.  Thus, investors had access to this information at the time of the IPO, and there

was no obligation to make any further disclosure.  *See White v. H & R Block, Inc.*, 2004 WL

1698628, at *5–*6, *14 (S.D.N.Y. July 28, 2004) (concluding that public court filings, press

releases, and articles about litigation were sufficient public disclosure); *see also Garber v. Legg

Mason, Inc.*, 537 F. Supp. 2d 597, 612 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009).

For the same reasons, Plaintiffs are incorrect that either Item 5(D) (requiring disclosure of

"known trends, uncertainties, demands, [and] commitments of events that are reasonably likely

to have a material effect on the company's net sales or revenues") or Item 7.B.1 (requiring

disclosure of "any transactions or presently proposed transactions which are material to the

company or the related party") required disclosures of the Cooperation Agreement.  *See* AC

¶¶ 78, 86.  As Grandshores' announcement made clear, any potential future transactions would

be "subject to the signing of a definitive agreement" and, thus, the Cooperation Agreement was

neither a "known commitment" nor a "presently proposed transaction."  *See Lewy*, 2012 WL

3957916, at *20 (suggesting defendant need not disclose a "commitment to purchase . . . when it

became legally and financially feasible" as a proposed related-party transaction).

## D.  The Section 11 Claim Should Be Dismissed Based on the Negative Causation Defense.

Plaintiffs' Section 11 claim should be dismissed for the independent reason that Plaintiffs

fail to tie their alleged losses to the alleged omissions.  Section 11(e) of the Securities Act of

1933, 15 U.S.C. § 77k(e) provides a "negative causation" affirmative defense to claims that a Registration Statement was materially misleading. A plaintiff cannot recover for losses that the defendant proves are not attributable to the alleged omission in the registration statement.[11] Here, Plaintiffs' theory is that the failure to disclose the alleged related-party transactions artificially inflated Canaan's stock price. AC ¶ 129. Thus, to show loss causation, Plaintiffs must allege that, after purchasing their shares and before selling them, some revelation to the market or "corrective disclosure" caused a fraud-induced inflation in the stock's price to be reduced or eliminated. *See In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 420 (S.D.N.Y. 2009) (dismissing Section 11 claim where "as a matter of law, [p]laintiff's losses were not the result of any corrective disclosure concerning the alleged misstatements or omissions").

Plaintiffs, however, do not identify any corrective disclosure that revealed the "truth" to the market and resulted in a decline of Canaan's stock price. Although Plaintiffs assert that the MAV Report's publication "reveal[ed] the truth, causing Plaintiff's losses" (*see* AC § V), it is indisputable that the MAV report did not mention (i) the Zhejiang Suanli transaction, (ii) Mr. Yao's alleged position on Hangzhou Canaan's Board of Supervisors or as an international sales executive, or (iii) any facts about the Cooperation Agreement that were not already public. Cantor Decl. ¶ 3, Ex. 4. Thus, Plaintiffs have no basis to attribute Canaan's drop in stock price to the omission of these facts from the Registration Statement, and the Section 11 claim must be dismissed. *See, e.g., Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416–17 (2d Cir.

---

[11] Specifically, 15 U.S.C. § 77k(e) states: "if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable."

2011) (affirming dismissal of Section 11 claim where the lack of loss causation was "apparent from the face of the complaint"); *Britannia*, 665 F. Supp. 2d at 418–19 (S.D.N.Y. 2009) (dismissing Section 11 claims where defendants showed negative causation "based solely on the Complaint and the Company's SEC filings"); *Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, 2010 WL 148617, at *11 (S.D.N.Y. 2010) (Section 11 claim dismissed based on negative causation affirmative defense); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003) (same).

## II.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B).

Plaintiffs' Section 10(b) claim relies on the same deficient factual allegations underlying their Section 11 claim and fails for the same reason: Plaintiffs have not pleaded any material omissions.  AC ¶¶ 101, 117.  And because Plaintiffs do not allege any material omissions, they also cannot allege reliance under the *Affiliated Ute* presumption for their Section 10(b) claim.  In cases primarily involving a failure to disclose, "positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."  *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  Since, as demonstrated above (*supra* at Sections I.A.1., I.B.2., and I.C.), none of the alleged omissions were material, Plaintiffs are not entitled to a presumption of reliance.

Plaintiffs' Section 10(b) claim also fails because, in addition to the elements identical to a Section 11 claim, Section 10(b) requires Plaintiffs to plead scienter and loss causation—a burden they cannot meet.  *See Trivago*, 796 F. App'x at 34 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).  A heightened pleading standard also applies to Section 10(b) claims, which are subject to both Rule 9(b) and the PSLRA.  *See Trivago*, 796 F. App'x at 34 (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012)); *Dura*

22

*Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (citing 15 U.S.C. §§ 78u–4(b)(1), (2)). Thus, all the arguments above demonstrating that Plaintiffs have failed to properly plead a plausible Section 11 claim apply with even greater force under the heightened pleading standard of the PSLRA. *See supra* Sections I.A-C; *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 265 (S.D.N.Y. 2019) (dismissing Section 10(b) claims "as non-actionable and/or immaterial for the reasons explained above in connection with Plaintiffs' corresponding Securities Act cause of action").

**A. Plaintiffs' Boilerplate Allegations Do Not Give Rise to a Strong Inference of Scienter.**

Plaintiffs fail to satisfy the PSLRA's requirement that they "state with particularity facts giving rise to a strong inference" that Defendants intended to deceive, manipulate, or defraud. *See* 15 U.S.C. § 78u-4(b)(2). "Allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of corresponding fraudulent intent, might they be sufficient." *Lewy*, 2012 WL 3957916, at *18; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (The "inference of scienter" must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.")

Plaintiffs have not alleged either potential basis for establishing scienter in the Second Circuit—motive and opportunity, or circumstantial evidence of conscious misbehavior or recklessness. *See Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago on behalf of Policemen's Annuity & Benefit Fund of Chicago v. FXCM Inc.*, 333 F. Supp. 3d 338, 350 (S.D.N.Y. 2018), *aff'd*, 767 F. App'x 139 (2d Cir. 2019). The AC contains nothing more than boilerplate assertions that "Canaan and Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein" or "acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts."

23

AC ¶ 126. These conclusory assertions altogether fail to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharm., Inc.*, 544 U.S. at 345 (2005). Plaintiffs' bare speculation that Canaan deliberately omitted the alleged related-party transactions from its Registration Statement "does not approach the cogency of the alternative explanation, to wit, that the defendants tried to comply with the law on related party transactions as they reasonably understood it." *Lewy*, 2012 WL 3957916, at *21; *see also In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*, 2016 WL 922711, at *8 (S.D.N.Y. Mar. 7, 2016) ("Plaintiffs' allegations that [defendants] were actively concealing the related-party transactions . . . fail because they are too speculative to give rise to a strong inference of scienter."). And the immateriality of the alleged related-party transactions makes it further implausible that Canaan deliberately omitted them from its disclosures. *See ECA*, 553 F.3d at 202 (2d Cir. 2009) (affirming dismissal of Section 10(b) claim for failure to allege scienter and noting that "[b]ecause Plaintiffs have not adequately pleaded that the related-party transactions with [defendant] were material, they did not adequately plead that [defendant] knowingly or recklessly failed to comply with SFAS 57. Given that they failed to plead the materiality of the [alleged related-party] transactions, Plaintiffs certainly did not plead that defendants had knowledge of the transactions' materiality.").

## B. Plaintiffs Fail to Allege Loss Causation.

Unlike Section 11 claims, Section 10(b) claims also require an affirmative pleading of loss causation. Plaintiffs fail to plead this element. "[A] misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173-75 (2d Cir. 2005) (citation omitted). But Plaintiffs have not alleged that the Zhejiang Suanli purchase, Mr. Yao's alleged undisclosed

24

position at Canaan, or the Cooperation Agreement were "the cause of the actual loss suffered, *i.e.,* that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Id.* (affirming dismissal of Section 10(b) claim where plaintiff did not allege that the subject of the alleged misrepresentations, "or any corrective disclosure regarding the falsity of those [representations], [wa]s the cause of the *decline* in stock value that plaintiffs claim as their loss"). As with the Section 11 negative causation affirmative defense, Plaintiffs plead no facts supporting their theory that these alleged related-party transactions artificially inflated Canaan's stock price, or that any corrective disclosure of these alleged "facts" caused a decline of Canaan's stock price. *See In re BOFI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 797 (9th Cir. 2020) (finding no loss causation based on alleged corrective disclosure in reports by an anonymous short-seller with a financial incentive when a reasonable investor "would likely have taken their contents with a healthy grain of salt"). Thus, Plaintiffs cannot establish loss causation. *See supra* Section I.D.; *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 367 (S.D.N.Y. 2015), *aff'd* (Mar. 21, 2016) (dismissing 10(b) claim where the "so-called corrective disclosures did not disclose the information that the [complaint] describes").

## CONCLUSION

For all the foregoing reasons, the Court should grant Canaan's Motion and dismiss Plaintiffs' AC in its entirety with prejudice.

Dated: December 7, 2020
      New York, New York

Respectfully submitted,

/s/ *Daniel L. Cantor*
_____

Daniel L. Cantor
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

William K. Pao (*pro hac vice* pending)
Meg K. Lippincott
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Attorneys for Defendant Canaan, Inc.*

/s/ _____

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Susanna M. Buergel
Audra J. Soloway, Esq.
Yahonnes Cleary, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
sbuergel@paulweiss.com
asoloway@paulweiss.com
ycleary@paulweiss.com

*Attorneys for Defendants Citigroup Global Markets Inc., China Renaissance Securities (Hong Kong) Limited, Galaxy Digital Partners LLC, Huatai Financing Holdings (Hong Kong) Limited, Tiger Brokers (NZ) Limited, and ViewTrade Securities, Inc.*

26