# EXHIBIT 1

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Jing Chen
275 Madison Ave, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        jchen@rosenlegal.com

*Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIPPE LEMIEUX, Individually and on behalf of all others similarly situated, | Case No: 1:20-cv-07139-AT |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| CANAAN INC., NANGENG ZHANG, JIAXUAN LI, JIANPING KONG, QIFENG SUN, QUANFU HONG, CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, GALAXY DIGITAL ADVISORS LLC, HUATAI FINANCIAL HOLDINGS (HONG KONG) LIMITED, TIGER BROKERS (NZ) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, and VIEWTRADE SECURITIES, INC. | CLASS ACTION<br><br>JURY TRIAL DEMANDED |
| Defendants. | |

1

Lead Plaintiffs Boluka Garment Co., Limited and Hongkuo Tang ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation it conducted by and through their attorneys, which included, among other things, a review and analysis of: (i) Defendants' public filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) Defendants' public filings with Chinese regulatory agencies and its local provincial offices; (iii) public reports and news articles; (iv) transcripts of Defendants' conference calls; (v) interviews with witnesses with relevant information; and (vi) other publicly-available material and data identified herein. Plaintiffs' investigation is continuing, and many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control or custody. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of Canaan Inc. ("Canaan" or the "Company") American Depositary Shares ("ADSs")[1] from November 20, 2019 through February 20, 2020, inclusive (the "Class", and the period from November 20, 2019 through February 20, 2020 is the "Class Period").[2]  Plaintiffs bring the following claims on behalf of the

---

[1] American Depositary Shares, also known as ADSs, are U.S. dollar-denominated shares of stock of a foreign-based company available for purchase on an American stock exchange. ADSs are issued by depository banks in the U.S. under agreement with the issuing foreign company.
[2] Excluded from the Class are: (a) persons who sold their shares prior to April 15, 2020; and (b) Defendants; the present and former officers and directors of Canaan at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns,

Class: (1) Section 11 and Section 15 claims under the Securities Act of 1933 (the "Securities Act") for all purchasers of Canaan ADSs pursuant or traceable to the Registration Statement and Prospectus in connection with Canaan's initial public offering (collectively the "Registration Statement") completed on or about November 20, 2019 (the "IPO" or "Offering"); and (2) Section 10(b) and Section 20(a) claims under the Securities Exchange Act of 1934 (the "Exchange Act") for all purchasers of Canaan ADSs during the Class Period.

2. Defendant Canaan, a company headquartered in China, purportedly is the second largest designer and manufacturer of Bitcoin mining machines globally in terms of computing power in the first half of 2019. It went public on Nasdaq in November 2019.

3. Before Canaan went public on the U.S. stock market, the Company failed repeatedly in its attempts to complete an IPO and list its shares on several Asian stock exchanges. Canaan failed because those Asian exchanges did not approve of the Company's questionable business practices such as undisclosed related party transactions, inflated performance, suitability and dubious reserve-merger plan.

4. When Canaan successfully sold US$90 million ADSs to U.S investors in its IPO on Nasdaq, U.S. investors did not know that Canaan's Registration Statement contained omissions of a similar nature that the various Asian stock exchanges previously disapproved of regarding related party transactions and inflating its performance.

5. Particularly, the Registration Statement failed to disclose that at the time of IPO, Mr. Yongjie Yao ("Yao"), a principal shareholder of Canaan who held 8.8% of Canaan's total ordinary shares, also served as one of Canaan's senior executives in charge of the Company's

---

and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

international sales and marketing. He received salary and commissions for his performance as head of international sales at Canaan.

6.  Also, on October 27, 2019, merely one day before Canaan announced its plan to do an IPO on the U.S. stock market and filed its first draft of the Registration Statement, Grandshores Technology Group Limited, a company controlled by Yao, announced a strategic cooperation framework agreement to purchase from, or distribute on behalf of, Canaan blockchain equipment worth up to US$150 million by December 31, 2020 ("Cooperation Agreement").[3] The value of this Cooperation Agreement was equal to 38% and 73% of Canaan's total net revenues for 2018 and 2019 respectively and materially impacted investors' evaluation of the Company and its stock price. However, the Registration Statement failed to disclose this agreement as a related party transaction and a known trend, event or uncertainty pursuant to SEC rules. Yao's contemporaneously holding senior positions at both Canaan and Grandshores also violated Canaan's Code of Business Conduct and Ethics, and further created a risk of self-dealing.

7.  Furthermore, the Registration Statement failed to disclose that Zhejiang Suanli Network Science and Technology Company Ltd. ("Zhejiang Suanli"), a company that Defendants Kong and Sun exercised significant control over, had purchased RMB 973,333.33 (approximately US$149,697[4]) worth of products from Canaan in January through April 2017.

8.  On February 20, 2020, a public company researcher Marcus Aurelius published a report entitled "Canaan Fodder" (the "Marcus Aurelius Report") exposing related party transactions between Canaan and Yao, and Canaan and Defendant Kong. Immediately following

---

[3] https://www1.hkexnews.hk/listedco/listconews/sehk/2019/1027/2019102700015.pdf, last viewed September 22, 2020.
[4] Estimation is based on the Chinese Yuan Renminbi ("RMB") to US Dollars exchange rate for December 29, 2017 of 1 RMB equaling US$0.15380.

publication of the Marcus Aurelius Report, Canaan's ADSs fell $0.39 per ADS, or over 6.8%, to close at $5.32 per ADSs on February 20, 2020, damaging investors. By the time this action was filed, Canaan's stock price lost 48% of its value from the IPO price – devastating investors.

## II. JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) because certain of the acts and conduct complained of herein, such as the trading of Canaan ADSs on the Nasdaq, occurred in this District.

12. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III. PARTIES

13. Lead plaintiff Boluka Garment Co., Limited purchased Canaan ADS pursuant and/or traceable to the Registration Statement at artificially inflated prices during the Class Period

5

and suffered damages. Its PSLRA certification has been previously filed with the Court and is incorporated by reference herein.

14. Lead Plaintiff Hongkuo Tang purchased Canaan ADS pursuant and/or traceable to the Registration Statement at artificially inflated prices during the Class Period and suffered damages. His PSLRA certification has been previously filed with the Court and is incorporated by reference herein.

15. Defendant Canaan is incorporated in the Cayman Islands and its head office is located at 29 Jiefang East Road, Jianggan District, Hangzhou, 310016, People's Republic of China ("China"). Canaan's securities trade on Nasdaq under the ticker symbol "CAN."

16. Defendant Nangeng Zhang ("Zhang") has served as the Company's Chairman and Chief Executive Officer ("CEO") at all relevant times. Defendant Zhang signed or authorized the signing of the Registration Statement.

17. Defendant Jiaxuan Li ("Li") has served as a director of the Company at all relevant times. Defendant Li signed or authorized the signing of the Registration Statement.

18. Defendant Jianping Kong ("Kong") has served as a director of the Company at all relevant times. Defendant Kong signed or authorized the signing of the Registration Statement.

19. Defendant Qifeng Sun ("Sun") has served as a director of the Company at all relevant times. Defendant Sun signed or authorized the signing of the Registration Statement.

20. Defendant Quanfu Hong ("Hong") has served as the Company's Vice President of Finance and Principal Financial and Accounting Officer at all relevant times. Defendant Hong signed or authorized the signing of the Registration Statement.

21. Defendants Zhang, Li, Kong, Sun, and Hong are collectively referred to herein as the "Individual Defendants."

22.     Each of the Individual Defendants:

   a.   signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Canaan investors, all motivated by their own and the Company's financial interests;

   b.   directly participated in the management of the Company;

   c.   was directly involved in the day-to-day operations of the Company at the highest levels;

   d.   was privy to confidential proprietary information concerning the Company and its business and operations;

   e.   was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   f.   was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   g.   was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

   h.   approved or ratified these statements in violation of the federal securities laws.

23.     Canaan is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

24.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Canaan under *respondeat superior* and agency principles.

25.     Defendant Citigroup Global Markets Inc. ("Citigroup") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. The address of Citigroup listed in the Registration Statement is 388 Greenwich Street, New York, New York 10013. Citigroup is registered with the SEC as a broker-dealer and is a member of the Financial Industry Regulatory Authority ("FINRA").

26.     Defendant China Renaissance Securities (Hong Kong) Limited ("China Renaissance") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. The address of China Renaissance Securities (Hong Kong) Limited is Units 8107-08, Level 81, International Commerce Centre, 1 Austin Road West, Kowloon, Hong Kong. Pursuant to the Registration Statement, China Renaissance offered to sell the Canaan ADSs in the United States through its SEC-registered broker-dealer affiliate in the United States, China Renaissance Securities (US) Inc.

27.     Defendant CMB International Capital Limited ("CMB") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. The address of CMB is 45F, Champion Tower, 3 Garden Road, Central, Hong Kong.

28.     Defendant Galaxy Digital Advisors LLC ("Galaxy") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto.

The address of Galaxy Digital Advisors LLC is 107 Grand Street, New York, New York 10013. Galaxy is registered with the SEC as a broker-dealer and is a FINRA member.

29. Defendant Huatai Financial Holdings (Hong Kong) Limited ("Huatai") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. The address of Huatai Financial Holdings (Hong Kong) Limited is 62/F, The Center, 99 Queens Road Central, Hong Kong.

30. Defendant Tiger Brokers (NZ) Limited ("Tiger Brokers"), formerly known as Top Capital Partners Limited, is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. At the time of Canaan's IPO, Tiger Brokers had offices at Level 4, 142 Broadway, Newmarket, Auckland, 1023, New Zealand. Since January 7, 2020, Tiger Brokers' address has been updated to be Level 16, 191 Queen Street, Auckland Central, Auckland, 1010, New Zealand.

31. Defendant Haitong International Securities Company Limited ("Haitong") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. Pursuant to the Registration Statement, Haitong offered to the ADSs in the U.S. through its SEC-registered broker-dealer affiliate in the U.S., Haitong International Securities (USA) Inc. The address of Haitong is 22/F, Li Po Chun Chambers, 189 Des Voeux Road Central, Hong Kong.

32. Defendant ViewTrade Securities, Inc. ("ViewTrade") is a financial services company that acted as an underwriter for Canaan's IPO, helping to draft and disseminate the

9

Registration Statement and solicit investors to purchase Canaan securities issued pursuant thereto. The address of ViewTrade Securities, Inc. is 7280 W Palmetto Park Rd., #310, Boca Raton, FL 33433, United States. ViewTrade is registered with the SEC as a broker-dealer and is a FINRA member.

33.  Defendants Citigroup, China Renaissance, CMB, Galaxy, Huatai, Tiger Brokers, Haitong, and ViewTrade are collectively referred to hereinafter as the "Underwriter Defendants."

34.  Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement because:

    a.  The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively.

    b.  The Underwriters participated in drafting the Registration Statement, caused the Registration Statement to be filed with the SEC and to be declared effective in connection with the IPO, and participated in the dissemination of the Registration Statement.

    c.  In addition, the Underwriter Defendants arranged roadshows prior to the IPO, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

    d.  Met with potential investors and presented highly favorable but incorrect and/or misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

10

e. Representatives of the Underwriters also assisted the Company and the Individual Defendants in planning the IPO. They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning Canaan's most up-to-date operational and financial results and prospects. However, the Underwriter Defendants failed to perform adequate due diligence in connection with their role as underwriters for the IPO and were negligent in failing to ensure that the Registration Statement was prepared properly and accurately, free of misstatements or omissions.

f. In addition to availing themselves of virtually unlimited access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to the Company's lawyers, management, directors, and top executives to determine: (i) the strategy to best accomplish the IPO; (ii) the structure and terms of the IPO, including the price at which Canaan ADSs would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Canaan would be made in the Registration Statement; (v) what responses would be made to the SEC in connection with its review of the Registration Statement; and (vi) the establishment and maintenance of the underwriting and distributing networks. The Underwriter Defendants affected

11

Canaan's IPO structure and terms, including the ADSs price, and the information about the IPO disclosed to the public. As a result of those constant contacts and communications between the Underwriter Defendants and Canaan's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable case should have known of, Canaan's existing problems as detailed herein.

g. The Underwriter Defendants also demanded and obtained an agreement from Canaan and the Individual Defendants that Canaan would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Canaan had purchased directors' and officers' liability insurance.

h. The Underwriters' negligence and failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein and, pursuant to the Securities Act, they are liable for the materially false and misleading statements in the Registration Statement.

35. Defendants Canaan, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## IV. MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

### IV. 1. BITCOIN MINING AND CANAAN'S PREVIOUS UNSUCCESSFUL IPO ATTEMPTS

36. According to Bitcoin.org, a website originally registered and owned by Bitcoin's first two developers, Bitcoin is a consensus network that enables a new payment system and a completely digital money. It is the first decentralized peer-to-peer payment network that is

12

powered by its users with no central authority or middlemen.[5] Bitcoin's value has risen from about $300 per coin in 2014 to a peak of about $20,000 per coin in December 2017. At the time of Canaan's IPO on Nasdaq in November 2019, Bitcoin's price had dropped to about $7,000 per coin.[6]

37. In sync with Bitcoin's rise in value, Defendants Zhang, Li, and Mr. Xiangfu Liu co-founded Canaan in 2013 and it grew quickly. According to the Registration Statement, Canaan was the second largest designer and manufacturer of Bitcoin mining machines globally in terms of computing power sold in the six months ended June 30, 2019. During the same period, sales of its Bitcoin mining machines accounted for 21.9% of the combined computing power of all Bitcoin mining machines sold globally. The sales of Bitcoin mining machines, parts and accessories constituted 99.6%, 99.7% and 98.3% of the Company's revenues in 2017, 2018 and the first nine months of 2019.

38. Before Canaan went IPO on Nasdaq in 2019, from 2016 to 2018, the Company had tried, unsuccessfully, three times to go public on various Asian stock exchanges.

39. In 2016, it first attempted to get listed on the Shenzhen Stock Exchange in China via reverse merger. The Shenzhen Stock Exchange issued three inquiry letters[7], questioning, among other things, related party transactions and the legality of the deal.[8] Particularly, the Shenzhen Stock Exchange questioned the related party transactions between Canaan and

---

[5] https://bitcoin.org/en/faq#general

[6] https://finance.yahoo.com/quote/BTC-USD?p=BTC-USD&.tsrc=fin-srch

[7] http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?bc5fca76-6d92-4cf8-817f-2065ca9c71e8

[8] China prohibited a non-public company from going public via reverse merger with a public company under the disguise of the public company seeking financing for merger, acquisition and reorganization. See http://www.csrc.gov.cn/pub/newsite/ssgsjgb/ssbssgsjgfgzc/ywzx/201411/t20141102_262813.html

Hangzhou Weitui Information and Technology Company Ltd ("Weitui"), a company of which Defendant Kong owned 90%[9]. In 2015, Weitui purchased 95% of the computing equipment chip modules made by Canaan[10] and contributed approximately 87% of Canaan's operating revenues for 2015. These transactions involved the risk of self-dealing and inflation of Canaan's operating and financial performance. Weitui confirmed to the Shenzhen Stock Exchange that Weitui would continue its business in the Bitcoin blockchain industry. At the request of Shenzhen Stock Exchange, Defendants Zhang, Li and Kong each had to promise that they would try to avoid related party translations and would make proper disclosures regarding related party transactions if the deal was approved by the exchange.[11] With this cloud of suspicion cast on the deal by the Shenzhen Stock Exchange Canaan abandoned its IPO plan.[12][13] Notably, in 2016, Weitui continued to purchase RMB 19,346,900 (approximately US$2.85 million) in blockchain products from Canaan, which constituted over 6% of Canaan's operating revenues in 2016.[14]

40. The following year, Canaan sought to get listed on the National Equities Exchange and Quotations in China ("NEEQ").[15] This time, it had to abandon its plan again after four rounds

---

[9] Defendant Kong sold all his shares in Weitui to Defendant Sun in 2017.

[10] Based on the 3,895 blockchain computing equipment chip modules Weitui directly purchased from Canaan and 5,715 blockchain computing equipment chip modules Weitui purchased from GCI Science & Technology Co., Ltd. see
http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?28bcebf8-86c8-4042-8420-969acd3e6f61; see also
http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?a00b8bcd-5632-4539-b3ba-289c69893f6e

[11] http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?28bcebf8-86c8-4042-8420-969acd3e6f61

[12] https://36kr.com/p/1723125776385, last viewed September 22, 2020.

[13] http://www.szse.cn/disclosure/listed/bulletinDetail/index.html?bc5fca76-6d92-4cf8-817f-2065ca9c71e8

[14] http://www.neeq.com.cn/disclosure/2017/2017-11-02/1509607893_727149.pdf, at p. 88.

[15] NEEQ, known as the New Third Board, is the third national equity trading venue after Shanghai Stock Exchange and Shenzhen Stock Exchange in China.
http://www.neeq.com.cn/en/about_neeq/introduction.html

of questioning by NEEQ.[16] Notably, Canaan disclosed that Zhejiang Suanli Network Science and Technology Company Ltd. ("Zhejiang Suanli"), a company that Defendant Kong owned 10% of, and exercised significant control over, had purchased RMB 973,333.33 (approximately US\$149,697) worth of products from Canaan in January through April 2017.[17] NEEQ's inquiries show that NEEQ was particularly concerned about the necessity or business purpose, and fairness of such related party transitions.[18]

41.     After the Chinese domestic stock market's repeated disapproval of Canaan's IPO attempts, Canaan tested its luck on the Hong Kong Stock Exchange ("HKSE") in 2018. Canaan let its application lapse because the Company failed to meet the HKSE's listing standards. HKSE CEO Charles Li later explained that HKSE had doubts about Canaan' profit sustainability because of PRC regulatory uncertainties regarding the blockchain business.[19]

42.     Upon Canaan's failure to go public on the HKSE, Mr. Feng Chen, Sales Director of Canaan explicitly confirmed to the media that Canaan was still trying to complete an IPO because "going public is our primary goal".[20]

43.     After many failed attempts in the Asian market, Canaan set its eyes on the U.S. capital market.

---

[16] http://www.neeq.com.cn/disclosure/2017/2017-11-02/1509607893_727149.pdf;
http://www.neeq.com.cn/disclosure/2017/2017-11-22/1511340005_423724.pdf;
http://www.neeq.com.cn/disclosure/2018/2018-03-01/1519889833_580997.pdf;
http://www.neeq.com.cn/disclosure/2019/2019-04-22/1555930926_930369.pdf.

[17] http://www.neeq.com.cn/disclosure/2017/2017-08-30/1504079249_162780.pdf

[18] http://www.neeq.com.cn/disclosure/2017/2017-11-02/1509607893_727149.pdf, at pp. 88, 89, 128

[19] https://www.yicaiglobal.com/news/crypto-mining-rig-makers-lack-uitability-to-ipo-in-hong-kong-exchange-ceo-says, last viewed September 22, 2020.

[20] https://www.chaindd.com/3162720.html

15

44.     On October 28, 2019, Canaan filed a registration statement on Form F-1 with the SEC for the sale of its ADSs in connection with its planned IPO on Nasdaq.

45.     As shown in the "Timeline and Responsibility Chart" for a foreign private issuer's IPO (attached hereto as Exhibit 1[21]), throughout the entire IPO process, all participants in the IPO, including the issuer and its local and U.S. counsels, the underwriters and non-U.S. managers and their local and U.S. counsels, and auditors conduct extensive and intensive due diligence on the issuer's legal, financial, business and accounting aspects to ensure that the registration statement contains no material omissions or misstatements. During the due diligence investigation, the issuer's counsel will request and review an extensive reservoir of corporate documents.[22] The issuer, underwriters', and auditors will interview officers, directors, other relevant employees, customers and suppliers, among others, to ensure that all relevant and potentially material information is evaluated and considered for disclosure in the Registration Statement.

46.     Canaan's IPO was a "firm-commitment" underwriting, meaning that the Underwriter Defendants purchased Canaan ADSs from Canaan and then the Underwriter Defendants sold the ADSs to the public. In a firm-commitment underwriting, the underwriters take legal title to the shares and therefore take on substantial risk if they are unable to resell the shares to investors in the IPO.

47.     Pursuant to the Underwriting Agreement, which was part of the Registration Statement, Defendant Citigroup acted as the lead underwriter for all Underwriter Defendants in connection with the transactions contemplated by the Underwriting Agreement, and any action

---

[21] Also available at
https://www.pillsburylaw.com/images/content/1/0/v2/104475/securitiespocketbook.pdf, at p. 83
[22] See a sample due diligence request list sent to the company.
http://www2.law.columbia.edu/course_00S_L9436_001/2005/DDIPO.pdf

under the Underwriting Agreement taken by Citigroup was binding upon all the Underwriter Defendants. Defendants Citigroup, China Renaissance and CMB led the listing of Canaan.[23]

48. The Underwriter Defendants had severally and not jointly agreed to purchase from Canaan the number of ADSs indicated below.

| Underwriter | Number of ADSs |
|---|---|
| Citigroup Global Markets Inc. | 5,434,784 |
| China Renaissance Securities (Hong Kong) Limited | 2,536,232 |
| CMB International Capital Limited | 1,026,570 |
| Galaxy Digital Advisors LLC | 60,386 |
| Huatai Financial Holdings (Hong Kong) Limited | 60,386 |
| Tiger Brokers (NZ) Limited | 785,024 |
| Haitong International Securities Company Limited | 12,077 |
| ViewTrade Securities, Inc. | 84,541 |
| Total | 10,000,000 |

49. Canaan commenced its road show activities on or about November 13, 2019.[24] Roadshows are marketing campaigns conducted for an issuer's IPO. In a road show,

---

[23] "Bitcoin Firm Canaan Loses Credit Suisse as Lead in Smaller IPO", dated November 14, 2019, https://www.bloomberg.com/news/articles/2019-11-14/bitcoin-firm-canaan-loses-credit-suisse-as-lead-in-smaller-ipo

[24] https://sec.report/Document/0001193125-19-291130/

representatives of the underwriters, together with senior managers of the issuer, present the issuer to prospective investors and analysts, and receive informal bids for securities offered in the IPO. This method, common around the world and necessary to complete the IPO, uses two-way information flow. On one hand, it provides information about the issuer for prospective investors and on the other, it provides pricing information for the underwriters through testing investor appetite for the securities to be offered in the IPO.

50. A road show presentation in English distributed to investors in November 2019[25] shows that Citigroup, China Renaissance, Galaxy, Huatai, CMB, Tiger Brokers and Haitong participated in investor roadshows promoting Canaan's IPO. In mid-November 2019, a roadshow was conducted at NASDAQ.[26] The promotion was so successful that the total number of shares that investors subscribed for was three times greater than the actual number of the Canaan ADSs that the Underwriter Defendants offered for sale within just one day after the Underwriter Defendants began accepting subscriptions.[27]

51. On November 18, 2019, Canaan and the Underwriter Defendants separately filed requests with the SEC for acceleration of the effective date of the Registration Statement. SEC declared the Registration Statement effective on November 20, 2019.

52. On November 20, 2019, Canaan filed its final amendment to the Registration Statement, which registered 10 million Canaan ADSs for public sale. Each ADS represented fifteen Class A ordinary shares. The ADSs were issued pursuant to the Deposit Agreement among Canaan, The Bank of New York Mellon, as the depositary, and the owners and holders from time to time of the ADSs issued under the Deposit Agreement. The Bank of New York Mellon

---

[25] https://www.leinews.com/n10029/detail.html
[26] https://hb.dzwww.com/p/4026679.html
[27] *Id.*

administered its depositary receipts business from its offices located at 240 Greenwich Street, New York, New York 10286.

53. On November 21, 2019, Defendants priced the IPO at $9 per ADS and filed the final Prospectus for the IPO on Form 424B4, which forms part of the Registration Statement.

### IV.2. FAILURE TO DISCLOSE YONGJIE YAO'S SENIOR EXECUTIVE ROLE AND WORK AT CANAAN

54. The Registration Statement disclosed that Yao was a principal shareholder of Canaan, holding 8.8% of Canaan's total ordinary shares at the time of the IPO and 8.2% of Canaan's total ordinary shares and 2.6% voting power immediately after the IPO. However, the Registration Statement failed to disclose that Yao was the Chairman of the Board of Supervisors of Canaan, and also a senior executive at Canaan in charge of international sales of Canaan products and receiving salaries and commissions for his performance at Canaan. According to a registration statement that Canaan filed with the NEEQ in China in August 2017, Yao was elected to be Chairman of the Board of Supervisors of Canaan in July 2017.[28] Under Chinese corporate law, a supervisor[29] is a top-level executive, that closely oversees and directs a company's business. Supervisors serve on a board of supervisors with rights similar to directors. According to the Company Law of the People's Republic of China (2018 Amendment), supervisors' powers include, *inter alia*,

- o Overseeing the financial affairs of the company,

---

[28] http://www.neeq.com.cn/disclosure/2017/2017-08-30/1504079249_162780.pdf, at 195, 223.
[29] According to Article 51 of the Company Law of China, a limited liability company shall have a board of supervisors of no fewer than three members. A limited liability company with a small number of shareholders or a small scale may have one to two supervisors instead of a board of supervisors.

- o Supervising the conduct of directors and senior managers while discharging their corporate responsibilities,

- o Putting forward proposals on the removal of any director or senior manager who violates any law, administrative regulation, bylaw or any resolution of the shareholders; and demanding any director or senior manager to make corrections if his act has injured the interests of the company;

- o proposing to call interim shareholders' meetings,

- o calling and presiding over shareholders' meetings when the board of directors does not exercise the function of calling and presiding over shareholders' meetings as prescribed in this Law;

- o putting forward proposals at shareholders' meetings;

- o at the request of shareholders, sue a director or senior manager if he violated the law or regulations and damaged the company.

55. A fuller description of the rights and obligations of supervisors is attached as Exhibit 2.

56. Article 21 of the Company Law of China provides that the controlling shareholder, de facto controller, directors, supervisors and senior officers of a company may not use their positions to harm the interests of the company. This shows that the high level and importance of the role of Supervisor is similar to that of directors, senior officers and control persons.

57. Plaintiffs' witness 1 ("Witness 1") was a senior quality manager at the quality management department of Beijing Canaan Creative Information Technology Co., Ltd. ("Beijing Canaan") from December 2015 through December 2017. He told Plaintiffs' investigator that "Yongjie Yao was based in Hangzhou, not in Beijing." "In fact, it is the same department whether

you are in Beijing or Hangzhou. It is the Sales Department." "I know that he worked at the Sales Department". "Yao was a salesperson. The primary portion of his salary was from commissions, unlike us conducting quality. We relied on fixed salaries." "Yao was an employee." When Plaintiffs' investigator asked Witness 1 if Yao was responsible for international sales, primarily Europe and America, Witness 1 said "Yes". When asked for examples of Yao's sales targets, Witness 1 stated that "primarily the U.S., Germany, U.K.", "and some other European and American countries too".

58.     Plaintiffs' witness 2 ("Witness 2") was a business associate at the Business Department of Hangzhou Canaan Creative Information Technology Co., Ltd., Canaan's main business operation in China ("Hangzhou Canaan"), from June 2019 through July 2019. His job responsibilities included establishing contracting procedures, keeping books of account, organizing clients' information and maintenance. When Plaintiffs' investigator asked Witness 2 whether he knew Yao, Witness 2 stated that "Yongjie Yao is an executive." When asked if Yao went into the office on a daily basis, Witness 2 stated "Yao was responsible for the outside". When asked to clarify the meaning of "outside", Witness 2 stated that "sales to the overseas". When Plaintiffs' investigator asked to clarify if Yao's sales responsibilities related to sales of Canaan bitcoin mining machines in overseas markets, Witness 2 stated "you can say that."

59.     Item 404 of SEC Regulation S-K (27 CFR § 229.404) "Transactions with Related Persons, Promoters and Certain Control Persons" requires a public company to "describe any transaction, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest."

21

60.     A "related person" is defined by Reg. S-K as including any director or executive officer of the Company, any immediate family member of a director or executive officer of the Company, any immediate family member of any 5% or greater shareholder of the Company.

61.     SEC Regulation S-K defines a transaction, for purposes of related party transactions, to include, but is not limited to, any financial transaction, arrangement or relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships.

62.     Under Item 7.B. "related party transactions" of SEC Form 20-F, a requirement applicable to Canaan's IPO, requires disclosure of "the information required below for the period since the beginning of the company's preceding three financial years[30] up to the date of the document, with respect to transactions or loans between the company and (a) enterprises that directly, or indirectly through one or more intermediaries, control, or are controlled by, or are under common control with, the company; (b) associates; (c) individuals owning, directly or indirectly, an interest in the voting power of the company that gives them significant influence over the company, and close members of any such individual's family; (d) key management personnel, that is, those persons having authority and responsibility for planning, directing and controlling the activities of the company, including directors and senior management of companies and close members of such individuals' families; and (e) enterprises in which a substantial interest in the voting power is owned, directly or indirectly, by any person described in (c) or (d) or over which such a person is able to exercise significant influence. This includes enterprises owned by directors or major shareholders of the company and enterprises that have a member of key

---

[30] An emerging growth company may conduct its initial public equity offering using two years, rather than three years, of audited financial statements and as few as two years, rather than five years, of selected financial data.

22

management in common with the company. Close members of an individual's family are those that may be expected to influence, or be influenced by, that person in their dealings with the company. An associate is an unconsolidated enterprise in which the company has a significant influence or which has significant influence over the company. Significant influence over an enterprise is the power to participate in the financial and operating policy decisions of the enterprise but is less than control over those policies. Shareholders beneficially owning a 10% interest in the voting power of the company are presumed to have a significant influence on the company."

63.     Under SEC regulations, Canaan must disclose "[t]he nature and extent of any transactions or presently proposed transactions which are material to the company or the related party, or any transactions that are unusual in their nature or conditions, involving goods, services, or tangible or intangible assets, to which the company or any of its parent or subsidiaries was a party." Form 20-F, Item 7.B 1.

64.     "[I]in some cases[,] the significance of an item may be independent of the amount involved. For example, amounts due to and from officers and directors, because of their special nature and origin, ought generally to be set forth separately even though the dollar amounts involved are relatively small." Financial Statements and Regulation S–X, 50 Fed.Reg. 49,529–02, at 49,530 n. 3 (Dec. 3, 1985) (SEC explanation of rules)

65.     The consolidated financial statements contained in Canaan's Registration Statement were required to be prepared and presented in accordance with the U.S. Generally Accepted Accounting Principles ("GAAP").

66.     The SEC has the statutory authority for the promulgation of GAAP for public companies and has delegated that authority to the U.S. Financial Accounting Standards Board

("FASB"). See Release Nos. 33-8221; 34-47743; IC-26028; FR-70. The SEC Rules and interpretive releases and the FASB Accounting Standards Codification ("ASC") represent sources of authoritative GAAP for SEC registrants. ASC 105-10-05-1.

67. SEC and NASDAQ rules and regulations require that publicly traded companies such as Canaan include financial statements that comply with GAAP in their annual and quarterly reports, and registration statements filed with the SEC.

68. SEC Rule 4-01(a) of Regulation S-X states that "[f]inancial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1).

69. Management is responsible for preparing financial statements that conform to GAAP. The PCAOB Standards provide:

> The financial statements are management's responsibility…. Management is responsible for adopting sound accounting policies and for establishing and maintaining internal control that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements. The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management…. Thus, the fair presentation of financial statements in conformity with generally accepted accounting principles is an implicit and integral part of management's responsibility. AS 1001.03

70. GAAP requires disclosure of all material transactions between Canaan and related parties. ASC 850-10-50-1.

24

71.     ASC 850, Related Parties, establishes requirements for disclosure of material transactions between a company and related parties, such as officers and directors. A copy of ASC 850 is attached hereto as Exhibit 3 and is incorporated by reference herein.

72.     Under ASC 850, related parties include, *inter alia*:

d. Principal owners of the entity and members of their immediate families

e. Management of the entity and members of their immediate families

f. Other parties with which the entity may deal if one party controls or can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests

g. Other parties that can significantly influence the management or operating policies of the transacting parties or that have an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursuing its own separate interests. ASC 850-10-20.

73.     The disclosures shall include:

a. The nature of the relationship(s) involved

b. A description of the transactions, including transactions to which no amounts or nominal amounts were ascribed, for each of the periods for which income statements are presented, and such other information deemed necessary to an understanding of the effects of the transactions on the financial statements

c. The dollar amounts of transactions for each of the periods for which income statements are presented and the effects of any change in the method of establishing the terms from that used in the preceding period

25

d. Amounts due from or to related parties as of the date of each balance sheet presented and, if not otherwise apparent, the terms and manner of settlement. ASC 850-10-50-1.

74. FASB specifically points out that "[t]ransactions involving related parties cannot be presumed to be carried out on an arm's-length basis, as the requisite conditions of competitive, free-market dealings may not exist. Representations about transactions with related parties, if made, shall not imply that the related party transactions were consummated on terms equivalent to those that prevail in arm's-length transactions unless such representations can be substantiated." ASC 850-10-50-5.

75. Defendants violated the SEC regulations and GAAP for failing to disclose the related party transactions between Yao and Canaan, namely Yao working as an executive of Canaan and responsible for Canaan's international sales.

76. Had the Defendants properly conducted due diligence during the IPO such as interviewing the Company's directors, officers or relevant employees, they would undoubtedly have learned that Yao was the senior-most sales executive in charge of the Company's international sales, the fastest growing segment of Canaan's business, who contemporaneously held a senior position at Grandshores as discussed below.

IV.3. FAILURE TO DISCLOSE THE COOPERATION AGREEMENT BETWEEN CANAAN AND GRANDSHORES

77. SEC Regulation S-K (27 CFR 229.10) provides that registration statements such as the one filed by Canaan on Form F-1 comply with the other requirements of Regulation S-K "to the extent provided in the forms to be used for registration under the [Securities] Act." 17 C.F.R. 229.10. Form F-1 requires registrants to furnish the information required by Part I of Form 20-F.

78. Part I, Item 5(d) Form 20-F, in turn, requires registrants to:

26

[D]iscuss, for at least the current financial year, any known trends, uncertainties, demands, commitments or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition.

79. Item 5(d) of Form 20-F "call[s] for the same disclosure as Item 303 of Regulation S-K". *In Re Comm'n Guidance Regarding MD&A of Fin. Condition & Results of Operation*, Release No. 8350 (Dec. 19, 2003) (the "2003 Guidance") available at 2003 WL 22996757, *1 n.1.

80. Regulation S-K provides that the discussion of known trends, uncertainties, and events should appear in the section of an issuer's registration statement reporting "Management's Discussion and Analysis of Financial Condition and Results of Operations" ("MD&A"). In a1989 Interpretive Release, the SEC described the purposes of MD&A:

The Commission has long recognized the need for a narrative explanation of the financial statements, because a numerical presentation and brief accompanying footnotes alone may be insufficient for an investor to judge the quality of earnings and the likelihood that past performance is indicative of future performance. MD&A is intended to give investors an opportunity to look at the registrant through the eyes of management by providing a historical and prospective analysis of the registrant's financial condition and results of operations, with a particular emphasis on the registrant's prospects for the future.

*Management's Discussion & Analysis of Fin. Condition & Results of Operations; Certain Inv. Co. Disclosures*, Release No. 6835 (May 18, 1989) (the "1989 Interpretive Release") available at 1989 WL 1092885.[31]

---

[31] The 1989 Interpretive Guidance applies to Item 5(d) of Form 20-F. Form 20-F, Instruction 5 (stating that issuers should refer to the 1989 Interpretive Guidance); 2003 Guidance, at 2003 WL 22996757, *1 n.1 (same).

81. Issuers must disclose both (a) known trends and uncertainties and (b) any potential material impact of known trends and uncertainties on their own operations even if the trends are a matter of public knowledge. 1989 Interpretive Release, 1989 WL 1092885 at *6. *See also Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 721 (2d Cir. 2011).

82. On October 27, 2019, one day before Canaan's announcement of its planned IPO on Nasdaq and filing of the Registration Statement, Grandshores, a HKSE-listed company controlled by Yao, announced the Cooperation Agreement entered between one of its subsidiaries, Hangzhou Grandshores Weicheng Technology Co., Ltd. ("Grandshores Weicheng"), and Canaan.

83. The Cooperation Agreement stated that "GS Weicheng intend[ed] to purchase from Canaan or distribute on behalf of Canaan blockchain equipment with an aggregate amount of not more than USD150 million up to 31 December 2020. Canaan will provide GS Weicheng with preferential prices and technical guidance." The potential revenue that Corporation Agreement could bring to Canaan in the one year after the IPO nearly equaled Canaan's entire trailing twelve-month revenues of approximately US$177 million, and 38% and 73% of Canaan's total net revenues for 2018 and 2019.

84. Disclosure of the Cooperation Agreement caused Grandshores' stock price to rocket upwards 18.6% within one day of this announcement, showing this agreement's material impact on the value of a company involved in the transaction.

85. Therefore, Canaan violated Item 303 for its failure to disclose and discuss the Cooperation Agreement in the Registration Statement, which was reasonably likely to have a material effect on the company's net sales or revenues, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition.

86. Also, as stated above, under SEC regulations, Canaan must disclose "[t]he nature and extent of any *presently proposed transactions* which are material to the company or the related

28

party, or any transactions that are unusual in their nature or conditions, involving goods, services, or tangible or intangible assets, to which the company or any of its parent or subsidiaries was a party." Form 20-F, Item 7.B 1. Canaan violated such SEC regulation for failure to disclose the Cooperation Agreement given Yao's status as a related party of Canaan.

87. Furthermore, Canaan's Code of Business Conduct and Ethics ("Code of Ethics"), which Canaan filed as part of the Registration Statement, required that its employees avoid conflicts of interest arising from being concurrently employed by, serve as a director of, trustee for or provide any services not in his or her capacity as an employee to any entity, whether for-profit or non-profit, that is a material customer, financial institution, service provider, supplier or competitor of the Company or any entity whose interests would reasonably be expected to conflict with the Company. The Code of Ethics also provided that no employee should have a significant financial interest (ownership or otherwise) in any company that is a material customer, financial institution, service provider, supplier or competitor of the Company or any entity whose interests would reasonably be expected to conflict with the Company. The Company required that employees fully disclose any situations that could reasonably be expected to give rise to a conflict of interest.

88. Had Defendants properly conducted due diligence during the IPO, they would have easily discovered that Yao's cotemporaneous senior positions at Canaan and Grandshores violated Canaan's Code of Ethics, and further created a significant risk of self-dealing.

### IV.4. FAILURE TO DISCLOSE 2017 ZHEJIANG SUANLI PURCHASES

89.     The corporate record obtained from China's National Enterprise Credit Information Publicity System[32] (Exhibit 4) shows that Defendant Kong owns 35% of a Chinese company called Zhejiang Shubei Investment Management Co., Ltd. ("Zhejiang Shubei") and is the executive director of Zhejiang Shubei. Also, Defendant Sun owns 25% of Zhejiang Shubei and is the supervisor of Zhejiang Shubei. Together, they own 50% of Zhejiang Shubei and are the only two senior executives and officers of Zhejiang Shubei.

90.     The corporate record obtained from China's National Credit Information Disclosure System for Enterprises (Exhibit 5) shows that Zhejiang Shubei owned 10% of Zhejiang Suanli. As noted above, Zhejiang Suanli purchased RMB 973,333.33 (approximately US$149,697) of products from Canaan in January through April 2017. Canaan recognized such transactions with Zhejiang Suanli as related party transactions because Defendant Kong "owned shares of or exercised significant control over" Zhejiang Suanli. [33]

91.     Canaan failed to make the required disclosure of the ownership of this Canaan customer by Defendants Kong and Sun and such 2017 transactions in its Registration Statement, violating SEC regulations and GAAP. See Item 404 of SEC Regulation S-K; Form 20-F, Item 7.B 1; ASC 850.

---

[32] China's National Enterprise Credit Information Publicity System provides public access to official registration data for all legal entities in China. The registration data also contain names of key individuals such as legal representative, private shareholders and key staff defined as a board member, CEO, supervisor, general manager, and legal representative. State Administration for Market Regulation of China operates and maintains the system.

[33] http://www.neeq.com.cn/disclosure/2017/2017-08-30/1504079249_162780.pdf, at p89.

## V. ANALYST FIRM REVEALS THE TRUTH, CAUSING PLAINTIFF'S LOSSES

92. On February 20, 2020, the Marcus Aurelius published a report, exposing the problems arising from the related party transactions between Canaan, Yao and Grandshores, and their Cooperation Agreement.[34] The Marcus Aurelius Report noted that Canaan's strategic partnership with Grandshores was actually a transaction with a related party, and likely a fictional one. The Marcus Aurelius Report also exposed related party transactions between Canaan and Defendants Kong and Sun. Following the Marcus Aurelius Report, Canaan ADSs fell $0.39 per ADS, or over 6.8%, to close at $5.32 per ADSs on February 20, 2020, damaging investors.

93. Canaan ADSs now trade far below the IPO price. By the time this action was filed, Canaan's stock price lost 48% of its value from the IPO price. By the date this Amended Complaint is filed, Canaan's stock price lost 79% of its value from the IPO price. As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## VI. PLAINTIFF'S CLASS ACTION ALLEGATIONS

94. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Canaan ADSs in its IPO or purchased Canaan ADSs

---

[34] http://www.mavalue.org/research/canaan-fodder/?__cf_chl_jschl_tk__=a7729189434f25bd77db160bf3d09d771043d3fa-1601506593-0-AeDXbA9RI6Nnmzi3LCBR17ioyDtOavagefgpeZcg7j6CX1FHmurZuqaT8S5Q57QDdmQQu8ftOtVYMwrbYen1Gsb7EYoIdvfoxsRT1cUX6Y_fBSB2jLU39ICBQdcquOW61tnOMD_dX7e4q0_vx6jwpu2i6vvm5s-D6bfFa8QYP3gXw4VxznOdFVvwzc5Gk4kEllq93ej18v5Ck2bwiK02mtC-gfgxvIfJzARTeaMXVTyV0GV3AIPDYy3iJ1mJGsSt266ivzM4_6cJa2wOHuTDue6PYhXeVKpEbmDrtGzPlbn8

31

thereafter in the stock market pursuant and/or traceable to the Company's Registration Statement issued in connection with the IPO and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and the Individual Defendants' legal representatives, heirs, successors or assigns and any entity in which the officers and directors of the Company have or had a controlling interest.

95. The members of the Class are so numerous that joinder of all members is impracticable. Since the IPO, the Company's securities have actively traded on Nasdaq. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Canaan or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

96. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

97. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

98. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

99.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.  whether the Securities Act was violated by Defendants as alleged herein;

    b.  whether the Registration Statement were negligently prepared and contained materially misleading statements and/or omitted material information required to be stated therein; and

    c.  the extent to which members of the Class have sustained damages and the proper measure of damages.

100.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VII.    SECURITIES ACT CLAIMS

### COUNT I

### Violation of Section 11 of the Securities Act

### Against All Defendants

101.    Plaintiffs repeat and re-allege the allegations set forth in ¶¶ 1-100, as if fully set forth herein. Plaintiffs further disclaim any allegation of fraud, recklessness or intentional misconduct in connection with the Securities Act claims.

102. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

103. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

104. Canaan is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

105. Defendants are strictly liable to Plaintiffs and the Class for the misstatements and omissions.

106. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

107. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

108. Plaintiffs acquired Canaan's ADSs pursuant and/or traceable to the Registration Statement.

109. At the time of their purchases of Canaan securities, Plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

110. Plaintiffs and the Class have sustained damages. The value of Canaan ADSs has declined substantially subsequent to and due to Defendants' violations.

111. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Registration Statement that should have been made and/or corrected

through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement. It is therefore timely.

## COUNT II

### Violation of Section 15 of The Securities Act
### Against Individual Defendants

112.    Plaintiffs repeat and re-allege the allegations set forth in ¶¶ 1-111, as if fully set forth herein. Plaintiffs further disclaim any allegation of fraud, recklessness or intentional misconduct as to the Securities Act claims.

113.    This cause of action is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o against the Individual Defendants and is based upon Section 15 of the Securities Act.

114.    The Individual Defendants were each control persons of Canaan by virtue of their positions as directors, senior officers, major shareholders and/or authorized representatives of Canaan. Individual Defendants had the power and influence and exercised the same to cause Canaan to engage in the acts described herein. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Canaan.

115.    Canaan and the Individual Defendants were culpable participants in the violations of Sections 11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

116.    This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise

35

of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## VIII. <u>EXCHANGE ACT CLAIMS</u>
### COUNT III
### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against Canaan and Individual Defendants

117. Plaintiffs repeat and re-allege the allegations set forth in ¶¶ 1-100, as if fully set forth herein. This Count is asserted against Canaan and Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule l0b-5 promulgated thereunder by the SEC.

118. Canaan is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

119. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Canaan under *respondeat superior* and agency principles.

### Applicability of Presumption of Reliance:
### *Affiliated Ute*

120. The statements made by Canaan and the Individual Defendants during the Class Period were misleading for omitting to disclose information concerning the on-going investigation which rendered statements in the Registration Statement and 2018 20-F misleading.

121. Neither plaintiffs nor the Class need prove reliance – either individually or as a class – because under the circumstances of this case, which primarily are based on omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery,

36

pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972). All that is necessary is that the facts that Canaan withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## Application of Presumption of Reliance:
## Fraud on the Market

122. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things: (a) Canaan and the Individual Defendants made public statements that were rendered misleading because they failed to disclose material facts necessary to prevent such statement from being misleading during the Class Period; (b) the omissions were material; (c) Canaan securities were traded in efficient markets during the Class Period.

123. Canaan's securities traded in efficient markets during the Class Period for the following reasons: (i) the securities were traded on Nasdaq; (ii) on average shares representing more than 2.0% of the securities' float were traded weekly during the Class Period; (iii) During the Class Period, Canaan was followed by numerous securities analysts employed by major brokerage firms, who wrote reports that were widely distributed and publicly available; (iv) Canaan met the criteria for eligibility to file an S-3 Registration Statement during the Class Period; (v) Canaan timely filed all required annual, quarterly and material event reports with the SEC during the Class Period; (vi) Canaan regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; (vii) the price

of Canaan securities responded quickly to incorporate and reflect new public information concerning Canaan during the Class Period; (viii) more than ten market makers made a market in Canaan ADSs during the Class Period.

124. During the Class Period, Canaan and Individual Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Canaan securities; and (iii) cause Plaintiffs and other members of the Class to purchase Canaan securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Canaan and Individual Defendants, and each of them, took the actions set forth herein.

125. Pursuant to the above plan, scheme, conspiracy and course of conduct, Canaan and each of the Individual Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Canaan securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Canaan's finances and business prospects.

126. By virtue of their positions at Canaan, Canaan and Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Canaan and Individual Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Canaan and Individual Defendants. Said acts and omissions of Canaan and Individual Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

127. Information showing that Canaan and Individual Defendants acted knowingly or with reckless disregard or the truth is peculiarly within the knowledge and control of Canaan and Individual Defendants. As the senior managers and/or directors of Canaan, the Individual Defendants had knowledge of the details of Canaan internal affairs.

128. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Canaan. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Canaan's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market prices of Canaan securities were artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Canaan's business and financial condition which were concealed by Canaan and Individual Defendants, Plaintiffs and the other members of the Class purchased Canaan securities

39

at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Canaan and Individual Defendants, and were damaged thereby.

129. During the Class Period, Canaan ADSs were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased Canaan securities at prices artificially inflated by the wrongful conduct of Canaan and Individual Defendants. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiffs and the Class, the true value of Canaan securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Canaan securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

130. By reason of the conduct alleged herein, Canaan and Individual Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

131. As a direct and proximate result of the wrongful conduct of Canaan and Individual Defendants, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

132.     This action was timely filed within two years of discovery of the misleading statements and within five years of the dates of purchase of the subject securities.

## COUNT IV

### For Violations of §20(a) of the Exchange Act

### Against Individual Defendants

133.     Plaintiffs repeat and re-allege the allegations set forth in ¶¶ 1-100, 117-132, as if fully set forth herein.

134.     During the Class Period, the Individual Defendants participated in the operation and management of Canaan, and conducted and participated, directly and indirectly, in the conduct of Canaan's business affairs. Because of their senior and controlling positions, they knew the adverse non-public information about Canaan.

135.      As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Canaan's financial condition and results of operations, and to correct promptly any public statements issued by Canaan's which had become materially false or misleading.

136.     Because of their positions of control and authority as senior officers and/or controlling shareholders, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Canaan disseminated in the marketplace during the Class Period concerning Canaan's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Canaan to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Canaan within the meaning of Section 20(a) of the Exchange Act. In this capacity,

41

they participated in the unlawful conduct alleged which artificially inflated the market price of Canaan securities.

137.    Each of the Individual Defendants, therefore, acted as a controlling person of Canaan. By reason of their senior management positions, being directors, and/or controlling shareholders of Canaan, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Canaan to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Canaan and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

138.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Canaan.

139.    This action was timely filed within two years of discovery of the misleading statements and within five years of the dates of purchase of the subject securities.

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and other members of the Class such other and further relief as

the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 30, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
Jing Chen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        jchen@rosenlegal.com

*Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September 2020, a true and correct copy of the foregoing AMENDED CLASS ACTION COMPLAINT was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen

Laurence Rosen