**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Jing Chen
275 Madison Ave, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        jchen@rosenlegal.com

*Counsel for Lead Plaintiffs and the putative class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOLUKA GARMENT CO., LIMITED and HONGKUO TANG, Individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>CANAAN INC., NANGENG ZHANG, JIAXUAN LI, JIANPING KONG, QIFENG SUN, QUANFU HONG, CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, GALAXY DIGITAL ADVISORS LLC, HUATAI FINANCIAL HOLDINGS (HONG KONG) LIMITED, TIGER BROKERS (NZ) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, and VIEWTRADE SECURITIES, INC.<br><br>　　　　Defendants. | Case No: 1:20-cv-07139-JPO<br><br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ALL DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................1

ARGUMENT ..............................................................................................................................3

   I.   THE COMPLAINT ADEQUATELY STATES A CLAIM UNDER SECTION 11 OF THE
      SECURITIES ACT ...........................................................................................................3

      A.   LEGAL STANDARD .............................................................................................3

      B.   RULE 9(b) DOES NOT APPLY ...........................................................................4

      C.   THE COMPLAINT ADEQUATELY PLEADS FALSITY ...........................................4

         a.   Defendants Violated the Affirmative Duty to Disclose Principal Shareholder Yongjie
            Yao's Services to Canaan as Related Party Transactions .......................................4

            i.   Duty to disclose under Form 20-F, Item 7.B. and Item 404 ..................................5

            ii.   Duty to disclose under GAAP ASC 850 ................................................................5

           iii.   Materiality ...........................................................................................................10

         b.   Defendants Violated the Affirmative Duty to Disclose the Grandshores
            Agreement. ............................................................................................................13

            i.   Violation of duty to disclose under Form 20-F, Item 7.B. and Item 404 .............13

            ii.   Materiality ...........................................................................................................15

          c.   Defendants Violated the Affirmative Duty to Disclose the Zhejiang Suanli Purchases
            ...............................................................................................................................16

            i.   Violation of duty to disclose under Form 20-F, Item 7.B. and Item 404. ............16

            ii.   Materiality ...........................................................................................................18

        D.   Defendants' Negative Causation Affirmative Defense Fails .........................................19

   II.   THE COMPLAINT ADEQUATELY STATES A CLAIM UNDER SECTION 10(b) ......21

A.    The Complaint Adequately Pleads Scienter ....................................................................21

B.    The Complaint Adequately Alleges Loss Causation .......................................................23

CONCLUSION .............................................................................................................................24

ii

**TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ...................................................................................................24

*Akerman v. Oryx Commc'ns, Inc.*,
  810 F.2d 336 (2d Cir. 1987) ..............................................................................................19

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................3

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ......................................................................................................10, 11

*Bond Opportunity Fund II, LLC v. Heffernan*,
  340 F. Supp. 2d 146 (D.R.I. 2004) .....................................................................................17

*Brown v. China Integrated Energy, Inc.*,
  875 F. Supp. 2d 1096 (C.D. Cal. 2012) ..............................................................................23

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*,
  No. 20-CV-2031 (JSR), 2020 WL 4547217 (S.D.N.Y. Aug. 6, 2020) .......................................10

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .................................................................................................3

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006) .................................................................................................7

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000) .........................................................................................passim

*Glazer v. Formica Corp.*,
  964 F.2d 149 (2d Cir. 1992) ...............................................................................................15

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004) ..................................................................................9

*In re China Educ. All., Inc. Sec. Litig.*, No. CV 10-9239 CAS JCX,
  2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) .....................................................................23

*In re China Valves Tech. Sec. Litig.*, No. 11 CIV. 0796 LAK,
  2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012) .....................................................................8

*In re EVCI Colleges Holding Corp. Sec. Litig.*,
    469 F. Supp. 2d 88 (S.D.N.Y. 2006) ................................................................................9, 10

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013) ......................................................................................20

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009) ......................................................................................15

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ........................................................................................9

*In re Home Health Corp. of Am., Inc.*,
    No. CIV. A. 98-834, 1999 WL 79057 (E.D. Pa. Jan. 29, 1999)....................................................12

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
    236 F. Supp. 3d 824 (S.D.N.Y. 2017) ......................................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008) ......................................................................................24

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    No. 11 CIV. 3658, 2012 WL 2512280 (S.D.N.Y. June 29, 2012) ....................................................4

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................................................8

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
    135 F. Supp. 3d 145 (S.D.N.Y. 2015) ..............................................................................4, 11, 13

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001) ........................................................................................................4

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013) ......................................................................................................7

*In re Trump Hotels S'holder Derivative Litig.*,
    No. 96 CIV. 7820 DAB, 2000 WL 1371317 (S.D.N.Y. Sept. 21, 2000) ......................................14

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) ......................................................................................19

*In re WorldCom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004) ................................................................................15, 20

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016) ........................................................................................................6

*Kronfeld v. Trans World Airlines, Inc.*,
    832 F.2d 726 (2d Cir. 1987) ....................................................................................................15

*Lewy v. SkyPeople Fruit Juice, Inc.*,
No. 11 CIV. 2700 PKC, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012)........................................4

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011) ...............................................................................................3, 11, 12

*Miller v. Lazard, Ltd.*,
473 F. Supp. 2d 571 (S.D.N.Y. 2007) ...................................................................................10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) .................................................................................................3

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
709 F.3d 109 (2d Cir. 2013) .................................................................................................3

*Nguyen v. New Link Genetics Corp.*,
297 F. Supp. 3d 472 (S.D.N.Y. 2018) ...................................................................................9

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ...........................................................................................22, 23

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 2012) .................................................................................................3

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) .....................................................................................9

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009) .................................................................................................22

*S.E.C. v. Mayhew*,
121 F.3d 44 (2d Cir. 1997) .................................................................................................10

*Scott v. ZST Digital Networks, Inc.*,
No. CV 11-03531 GAF JCX, 2012 WL 538279 (C.D. Cal. Feb. 14, 2012) ................................23

*Slayton v. Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010) .................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......................................................................................................21, 22

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
No. 18-CV-02104-DME-NYW, 2019 WL 2521834 (D. Colo. June 18, 2019) ............................6

*U.S. Sec. & Exch. Comm'n v. Mintz*, No. CV H-07-1027,
2008 WL 11408489 (S.D. Tex. Feb. 5, 2008) ...........................................................................14

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
985 F.2d 1190 (2d Cir. 1993) ...........................................................................................15, 20

*United States v. Hatfield*,
  No. 06-CR-0550 JS AKT, 2014 WL 7271616 (E.D.N.Y. Dec. 18, 2014) ....................................24

*United States v. Space Hunters, Inc.*,
  429 F.3d 416 (2d Cir. 2005) ....................................................................................................20

*United States v. Vallery*,
  437 F.3d 626 (7th Cir. 2006) .....................................................................................................8

*Van Dongen v. CNinsure Inc.*,
  951 F. Supp. 2d 457 (S.D.N.Y. 2013) ....................................................................................21

*Zagami v. Nat. Health Trends Corp.*,
  540 F. Supp. 2d 705 (N.D. Tex. 2008) ...................................................................................13

## <u>Rules</u>

Fed. R. Civ. P. 8(a) ...................................................................................................................3

Fed. R. Civ. P. 9(b) ...................................................................................................................4

## <u>Regulations</u>

17 C.F.R. § 210.4-01(a)(1) ........................................................................................................6

17 CFR § 229.001 .....................................................................................................................5

17 CFR § 249.220f .....................................................................................................................5

## <u>Other Authorities</u>

*Financial Accounting Standards* No. 57  (1983) ...............................................................13

SEC Rel. No. 33-8732A; 34-54302A .......................................................................................8

SEC *Staff Accounting Bulletin* No. 99 .......................................................................12, 15, 18, 19

Regulation S–X, 50 Fed.Reg. 49,529-02 (Dec. 3, 1985) ..............................................12, 18

**PRELIMINARY STATEMENT**[1]

The Complaint alleges Defendants concealed three material related party transactions in violation of affirmative duties to disclose under SEC regulations and generally accepted accounting principles ("GAAP"). Significantly, Canaan disclosed all of the subject persons and entities as related parties, and one of the related party transactions at issue, in its previous registration statement when it unsuccessfully sought to go public on the Chinese stock market. Canaan, however, failed to disclose these material related party transactions when it went public in the U.S., thus violating Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Securities Exchange Act. The Court should deny Defendants' Motions in their entirety.

**STATEMENT OF FACTS**

Canaan is a Cayman Islands holding company with all of its operations based in China. (¶¶2, 15, 37.) Before its NASDAQ IPO, Canaan had three unsuccessful IPO attempts, two on Chinese domestic markets and one on the Hong Kong Stock Exchange. Canaan failed because of Canaan's questionable business practices including various related party transactions. (¶¶38-42.) So Canaan turned to the U.S. stock market and finally went public on NASDAQ on November 21, 2019, pocketing $90 million. (¶¶4, 42, 43, 53.) U.S. investors did not know, however, that Canaan's Registration Statement failed to disclose three types of material related party transactions in violation of GAAP and SEC regulations:

---

[1] "Plaintiffs" refers to Lead Plaintiffs Boluka Garment Co., Limited and Hongkuo Tang. "Defendants" refers to Canaan Inc. ("Canaan" or the "Company"), Nangeng Zhang ("Zhang"), Jiaxuan Li ("Li"), Jianping Kong ("Kong"), Qifeng Sun ("Sun"), Quanfu Hong ("Hong"), Citigroup Global Markets Inc. ("Citigroup"), China Renaissance Securities (Hong Kong) Limited ("China Renaissance"), CMB International Capital Limited ("CMB"), Galaxy Digital Advisors LLC ("Galaxy"), Huatai Financial Holdings (Hong Kong) Limited ("Huaitai"), Tiger Brokers (NZ) Limited ("Tiger Brokers"), Haitong International Securities Company Limited ("Haitong"), and Viewtrade Securities, Inc ("Viewtrade"). Defendants Zhang, Li, Kong, Sun, and Hong are collectively referred to herein as the "Individual Defendants." Defendants Citigroup, China Renaissance, CMB, Galaxy, Huatai, Tiger Brokers, Haitong, and ViewTrade are collectively referred to hereinafter as the "Underwriter Defendants". The Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint filed by Defendants (Dkt. 55) is referred to herein as "Mtn. Br.".All citations to the Corrected Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint", Dkt. 51) are cited as "¶_". All references to exhibits of Chen Decl. are to those attached to the Declaration of Jing Chen in Support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Chen Decl.").

1.      **Principal shareholder Yongjie Yao's was head of Canaan's international sales**: At the time of the IPO, Mr. Yao was a principal shareholder of Canaan. (¶54, RS at 143-44[2].) At least from 2015 up to the IPO in 2019, Canaan tasked Yao with leading its international sales department. (¶¶ 54, 57, 58.) Canaan paid Yao salary and commissions. (¶¶57,58). Canaan failed to disclose its payments to Yao's and his services, violating the affirmative duty to disclose material related party transactions under Item 7.B of Form F-20, Item 404 of SEC Reg. S-K and GAAP. (¶¶59-76.)

2.      **Grandshores Agreement**: Canaan also failed to disclose that immediately before its IPO, Canaan and Grandshores, a company controlled by Mr. Yao, entered into a framework agreement for Grandshores to purchase up to $150 million of products from Canaan in the following year. (¶82.) The Agreement promised to generate enormous revenues, amounting to nearly Canaan's entire trailing twelve-month revenues of approximately US$177 million, and 38% and 73% of Canaan's total net revenues for 2018 and 2019. (¶83.) Canaan's failure to disclose this Agreement violated Item 7.B and Item 404 which required disclosure of all currently proposed related party. (¶¶ 85, 86.)

3.      **Zhejiang Suanli purchases of products from Canaan**. During one of its previous unsuccessful attempts to go public in China in 2017, Canaan disclosed in the recurring related party transaction section of its 2017 Chinese registration statement, i.e. "Public Transfer Statement", that Zhejiang Suanli, a company over which Defendant Kong exercised significant influence, purchased RMB 973,333.33 of products from Canaan in January through April 2017. ((¶¶ 54, FN 28, 90.); Chen Decl. Ex. A, at 319-320. Canaan also simultaneously disclosed that Defendant Kong, Canaan's co-Chairman, "continues to engage in Bitcoin-related business through … Zhejiang Suanli". Chen Decl. Ex. B[3], at 89. In its NASDAQ Registration Statement, Canaan, however, failed to disclose Zhejiang Suanli's continuous purchases from Canaan, violating Item 7.B of Form F-20, Item 404 of SEC Reg.

---

[2] "RS" refers to Canaan's Registration Statement (Exhibit 2 to the Declaration of Daniel L. Cantor (Dkt. 56-2.))
[3] Reply to the First Round of Feedback on the Listing Application Documents of Hangzhou Canaan Creative Information Technology Inc. ("First Feedback Reply").

S-K and GAAP. (¶ 91.)  On February 20, 2020, an analyst firm issued a report exposing Canaan's undisclosed related party transactions, and Canaan's stock price immediately fell $0.39/ADS, or over 6.8%, and continued falling, until 48% of its value had evaporated by the date plaintiff filed this action. (¶8.)

## ARGUMENT

### I. THE COMPLAINT ADEQUATELY STATES A CLAIM UNDER SECTION 11 OF THE SECURITIES ACT

### A. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)). On a Rule 12(b)(6) motion, a court must "accept all factual allegations in the complaint as true and must consider the complaint in its entirety," *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010), and draw all reasonable inferences in the plaintiffs' favor. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000). A plaintiff sufficiently pleads a Section 11 claim by alleging "a material omission in contravention of an affirmative legal disclosure obligation" *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013).

FRCP 8(a) governs the pleading of claims under Sections 11 and 15 of the Securities Act, requiring only "a short plain statement of the claim showing that the pleader is entitled to relief", not a "detailed factual allegations" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Fed. R. Civ. P. 8(a)(2); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). This is so because Section 11 imposes strict liability on the issuer and subjects others to liability for their negligence, requiring no proof of a defendant's scienter or an investor's reliance. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012); *see also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 156-57 (2d Cir. 2012) (to plead a Section 11 claim, "the provisions

'place[ ] a relatively minimal burden on a plaintiff'"). Neither *Twombly* nor *Iqbal* "require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010). The Complaint satisfies these requirements.

## B.  RULE 9(b) DOES NOT APPLY

Defendants argue that despite Plaintiffs' explicit disclaimer of any allegation of fraud, recklessness or intentional misconduct (¶101), Plaintiffs' Section 11 claims sound in fraud and are subject to Rule 9(b) because Plaintiffs' Section 11 claim and Section 10(b) claim rely on the same facts. (Mtn. Br. at 7, 8.) Defendants are mistaken. A disclaimer of fraud is sufficient to preclude the applications of Rule 9(b). See *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 149 (S.D.N.Y. 2015) (Oetken, J.) ("Because Plaintiff expressly disclaims any claims of fraud, these claims are not subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).")

In any event, the Complaint complies with 9(b) because it (1) specifies the omissions of material fact, and the portions of the registration statement that are rendered misleading as a result, (2) identifies the speaker, (3) states where and when the material omission and misleading statements were made, and (4) explains why the statements were misleading. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69–70 (2d Cir. 2001).

## C.  THE COMPLAINT ADEQUATELY PLEADS FALSITY

### a.  Defendants Violated the Affirmative Duty to Disclose Principal Shareholder Yongjie Yao's Services to Canaan as Related Party Transactions

The failure of a registrant to disclose related parties as required by SEC regulations or GAAP renders the financial statements false and misleading and is a violation of the securities laws. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, No. 11 CIV. 3658, 2012 WL 2512280, at *10 (S.D.N.Y. June 29, 2012); *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 CIV. 2700 PKC, 2012 WL 3957916, at *11 (S.D.N.Y. Sept. 10, 2012).

### i. Duty to disclose under Form 20-F, Item 7.B. and Item 404

Pursuant to Form 20-F Item 7.B., Canaan must disclose "transactions between the company and … (c) individuals owning, directly or indirectly, an interest in the voting power of the company that gives them significant influence over the company" "… involving goods, **services**, or tangible or intangible assets, to which the company or any of its parent or **subsidiaries** was a party" from 2017 up to the time of the November 2019 IPO. (¶¶ 62, 63.) (emphasis added).

The Registration Statement lists Yao as a principal shareholder of Canaan exercising significant influence over the Company because he owned 8.8% of Canaan's total ordinary shares (¶54, RS at 143-144.) Form 20-F. Item 7 Major Shareholders and Related Party Transactions defines major shareholders (or principal shareholders as Canaan called them) as "shareholders that are the beneficial owners of 5% or more of each class of the company's voting securities". Item 7.A.1.

### ii. Duty to disclose under GAAP ASC 850

Under GAAP examples of related party transactions requiring disclosure include those between an entity and its principal owners, management, or members of their immediate families. ASC 850-05-3. Management includes vice-presidents in charge of principal business functions such as sales and other persons who perform similar policy making functions. Persons without formal titles also may be members of management. ASC 850 10-20. Related parties also include parties who "can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests." ASC 850-10-20. Failure to disclose these related party transactions is a violation of GAAP and SEC regulation S-X. (¶¶64-75; ASC 850-10-05-4.b. (Ex. 3 to the Complaint, Dkt. 51-3)."Financial statements ... which are not prepared in accordance with [GAAP are] presum[ptively] ... misleading or inaccurate," *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 93 (2d Cir. 2016) (*Quoting* 17 C.F.R. § 210.4-01(a)(1)).

The Registration Statement listed Mr. Yao as a "principal shareholder" of Canaan (¶54, RS 143-144) and stated that "[Canaan's] corporate actions are **significantly influenced by [its] principal shareholders** … **who have the ability to exert significant influence over important corporate matters** that require approval of shareholders while their interests may differ from those of the other shareholders". (RS at 31.) Canaan's admission that Mr. Yao can "significantly influence" Canaan renders him a related party. ASC 850-10-20.[4] Canaan was required to disclose the services Yao provided and the dollar amount of the sales he conducted while managing Canaan's international sales under ASC 850. See *Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, No. 18-CV-02104-DME-NYW, 2019 WL 2521834, at *2 (D. Colo. June 18, 2019) (one individual satisfied the "significant influence" test under ASC 850-10-20 because he worked as director of acquisitions and management; the other individual also satisfied the "significant influence" test because he provided key business strategy consulting services to the corporate defendant). Lastly, GAAP specifically provides, as an example of a common related party transaction, the management services Mr. Yao was providing Canaan as head of all international sales. ASC 850-10-05-4.b.

<u>Defendants' Attempts to Deny Yao is a Related Party or that Payments are Material Fall Flat</u>

The Complaint alleges that from 2015 to the time of Canaan's IPO, Yao was the top executive in charge of Canaan's international sales department and received salary and commission for such services from Canaan. (¶¶ 54, 57-58.)[5] That Canaan was paying fees and commissions to a major

---

[4] Ignoring Canaan's own disclosure of Mr. Yao's significant influence, Defendants incorrectly apply the wrong provision regarding management and principal owner to disclaim Mr. Yao as a related party. (Mtn. 17.)

[5] Relying on an improperly introduced Exhibit 7, Defendants attempt to disclaim their duty to disclose because Mr. Yao left the position in May 2018. Defendants attach Exhibit 7 to Cantor Decl., an English translation of so-called the "Enterprise Credit Information Publicity Report of Hangzhou Canaan", without even attaching the original Chinese version, making it impossible to verify its authenticity or accuracy. (Dkt. 56-7.) The Court should not consider Exhibit 7 because (i) the document is not "attached to the complaint as an exhibit", "incorporated in it by reference", or "[a] document upon which the complaint heavily relies" *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013); (ii) its authenticity and accuracy are questionable; *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) and (iii) it is offered to dispute a factual allegation in the Complaint. *Id.*

8.8% shareholder for 5 years to lead its international sales was a material fact that SEC regulations and GAAP required to be disclosed.

Defendants deny these are related party transactions on three grounds: (i) Mr. Yao did not have significant influence over Canaan (Mtn. Br. at 18.); (ii) the Complaint fails to identify any transaction with Mr. Yao (Mtn. Br. at 16.); (iii) Hangzhou Canaan, which Mr. Yao was a senior executive of and provided his services to, is not the registrant Canaan itself but merely the registrant's subsidiary and therefore, falls out of the scope of disclosure (Mtn. Br. at 16.) All Defendants' arguments contradict explicit SEC and GAAP requirements and ignore the facts alleged in the Complaint and disclosed in Canaan's Registration Statement.

First, Canaan RS specifically admitted that Mr. Yao, being a principal shareholder, exercised significant influence over Canaan. (RS at 31.) Notably, Hangzhou Canaan disclosed in its Public Transfer Statement that Mr. Yao was a "main related party" because he was a supervisor. (¶ 54.); Chen Decl. Ex. A, at 195, 316, 318. The Public Transfer Statement also listed four entities, which were all controlled by Mr. Yao, as "persons acting in concert" that held more than 5% of Hanghzou Canaan shares and were "main related parties". Chen Decl. Ex. A, at 316-17. Therefore, given Canaan's own disclosures, Mr. Yao is a related party. Form 20-F, Item 7.B.(c). Notably, the RS disclosed a related party transaction with Xiangfu Liu who held 10.2% of Canaan's shares, about the same percentage as Yao's holdings, Thus Canaan acknowledged its obligation to disclose transactions with major stockholders. (RS at 143.)

Second, the Complaint specifically identifies the transactions between Canaan and Mr. Yao. From 2015 to 2019, Yao was in charge of Canaan's international sales, leading Canaan's efforts to sell its  products in international markets. (¶¶ 54, 57-58.) Canaan paid salary and commission to Mr. Yao for his services. (¶¶57-58). Form 20-F, Item 7.B.1 specifically includes such "**services …** to which the company or any of its parent or subsidiaries was a party" within the scope of related party

transactions. see also *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 462, 488 (S.D.N.Y. 2006) (the corporate defendant's promoting a related party and steering clients to this related party were related party transactions. The corporate defendant received contingent commissions of its services.)

Third, Defendants ask the Court to narrowly interpret SEC regulations to include only transactions to which the registrant Canaan (but not its consolidated subsidiaries) is a direct party. But such interpretation contradicts to the explicit requirements. *See* Form 20-F, Item 7.B.1 ("… to which the company or any of its parent or **subsidiaries** was a party"). The SEC also specifically instructs that for the purpose of related party transactions, "companies must include subsidiaries in making materiality determinations in all circumstances".[6] Hangzhou Canaan is Canaan's primary operating subsidiary in China, wholly owned by Canaan. *See* (RS at 3-4.) Canaan is a Cayman Islands holding company. Canaan implemented this complex holding company structure for the sole purpose of going public outside China following its repeated yet unsuccessful attempts to go public in China. (¶¶38-40; RS at 3-4.) At the time of the IPO, Canaan, a holding company, conducted all its operations, including domestic and international sales, through its Chinese subsidiaries. *See* (RS at 47, 62.[7]). Courts will not credit Defendants' narrow interpretation where it frustrates the regulation's purpose or produces an absurd result. *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). Services rendered by Yao to Hangzhou Canaan were related party transactions and must be disclosed. Form 20-F, Item 7.B; *see* also *In re China Valves Tech. Sec. Litig.*, No. 11 CIV. 0796 LAK, 2012 WL 4039852, at *7 (S.D.N.Y. Sept. 12, 2012) (ruling the issuer defendant's purchase of assets from a related party via the issuer's wholly owned subsidiary was a related party transaction.) That Plaintiffs

---

[6] SEC Rel. No. 33-8732A; 34-54302A; IC-27444A (Aug. 29, 2006) (the "Adopting Release"), p.152. The Adopting Release is available at http://www.sec.gov/rules/final/2006/33-8732a.pdf. A copy of the relevant excerpts from the Adopting Release is attached hereto as Chen Decl. Ex. C.

[7] "We are a Cayman Islands holding company and conduct our operations in China[7] through our PRC subsidiaries." (RS at 62.); "All of our current operations are conducted in China." (RS at 47.)

do not know the precise dollar amount of the products Mr. Yao sold for Canaan, does not provide a shield for Defendants. It is precisely because Canaan and Yao refused to disclose the dollar amount of the payments that they have committed a violation of SEC rules and GAAP. ASC 850-10-50-1.

Defendants incorrectly argue that the Complaint does not sufficiently allege two confidential witnesses' credibility for failure to allege the witnesses had direct contact with Yao. (Mtn. 14-15.) First, Plaintiffs are not required to allege direct contact. *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 484 (S.D.N.Y. 2018); see also *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615-16 (S.D.N.Y. 2015) ("[T]here is no baseline requirement of such [direct] contact in order to allege sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.") Second, a plaintiff need only plead the "probability that [the confidential witness] know[s] what [he or she] is talking about." *In re EVCI Colleges Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 97 (S.D.N.Y. 2006) (highly probable that persons employed in the admissions office—both individually and, collectively, at every level in the office had knowledge of the admission fraud). *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 493 (S.D.N.Y. 2004) (confidential witness in charge of material coordination could speak to existence of warehouse)[8]. Here, the Complaint amply describe each of the witnesses' positions, including their title, responsibilities, and duration of employment. (¶¶57, 58.) Despite their different geographic locations, the two Witnesses, both former employees of Canaan, consistently identified Mr. Yao's executive position at Hangzhou Canaan, in charge of Canaan's international sales. *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 376 (E.D.N.Y. 2013) (allowing the statements of nine employees from geographically diverse areas with consistent stories). It is highly probably that Witness 2 whose job responsibilities involved contract and client

---

[8] See also *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 493 (S.D.N.Y. 2004)("Plaintiffs are not required to plead exact job titles, describe the sources' responsibilities and duties in detail or allege access to specific company documents.").

management, had actual knowledge of Yao's work at Canaan. Further, their statements are consistent with government records Canaan filed in China showing Yao was elected Chairman of the Board of Supervisors of Canaan's primary operating subsidiary - a role similar to a chairman of the board of directors in the U.S. (¶¶ 54-56, further bolster their reliability.) See *In re EVCI Colleges Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 97 (S.D.N.Y. 2006) (That confidential witnesses' evidence is consistent with the governmental agencies' findings bolsters their reliability as the source for plaintiffs' information and belief.) Third, even if the Complaint did not sufficiently allege the two witnesses' actual knowledge, plaintiffs may rely on former employees even "where those sources offer indirect knowledge, that is, information and belief that is hearsay but plausible." *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, No. 20-CV-2031 (JSR), 2020 WL 4547217, at *5 (S.D.N.Y. Aug. 6, 2020).

### iii.  Materiality

"At the pleading stage, a plaintiff satisfies the materiality requirement...by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino*, at 161–62 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). "The information need not be such that a reasonable investor would necessarily change his investment decision." *S.E.C. v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997). "A court may dismiss a claim on the ground that a misstatement or an omission in a registration statement or prospectus was not material, but the task presents a difficult challenge. Materiality is generally a question for the fact finder." *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 579 (S.D.N.Y. 2007).

First, Mr. Yao's management services meet the 5% preliminary presumption of materiality. Yao controlled and was responsible for all of Canaan's international sales amounting to 20% of Canaan's total revenue at the time of the IPO – a material amount by every standard. (RS at 19.) Second, "Materiality is an 'inherently fact-specific finding,' which defies 'formulaic

10

assessment." *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 150 (S.D.N.Y. 2015) (Oetken, J) (citing *Basic,* at 236 and *Ganino,* at 162). "A court must consider both quantitative and qualitative factors in assessing an item's materiality and that consideration should be undertaken in an integrative manner." *Litwin*, 634 F.3d at 717. Here, investors would certainly want to know that a 8.8% shareholder was receiving payments for serving as the Chairman of the Board of Supervisors of Canaan's primary operating subsidiary and in charge of all international sales that represented 20% of revenue. That Canaan concealed Yao's role highlights the risk of self-dealing that the SEC and GAAP regulations are designed to protect against. Investors are completely in the dark as to whether Canaan is paying fair market value to Yao for his services.

Moreover, the reporting rules require disclosure for the past three years, so even if the Court were to believe that Yao gave up his position as Supervisor in May 2018, Canaan was still obligated to disclose the related party transactions for 2017 and 2018. (¶62, FN 30.); see also Form 20-F, instructions 3 to Item 3.A and 4 to Item 8.A.2; SEC reporting Manual Topic 10220.1.a. and 10220.2. Under Item 7.b. related party transactions with management must be disclosed if they are material *either* to the issuer or to the manager. Item 7.b.1. Clearly, Yao's compensation in the form of salary and commission for leading Canaan's international sales department was material to Yao.

Second, Mr. Yao's services were also material to Canaan based on the qualitative factor analysis. See *Litwin*, at 717-18 (2d Cir. 2011) ("qualitative factors may cause misstatements of quantitatively small amounts to be material....").[9] As state above, international sales accounted for a growing portion of Canaan's total revenues and continued to become a larger portion of total revenue as Canaan expanded its international market. See (RS 116.)[10] Therefore, the services rendered by

---

[9] See also *Ganino*, at 162 (noting this Circuit "have consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation).

[10] The relevant part of the Registration Statement states
*"Continue to expand our overseas operations.*
    We plan to further diversify our business geographically as well as explore new markets globally. … We intend to increase our international sales team to meet the increased demand from overseas markets. We also intend to pursue

Mr. Yao, as the leader of Canaan's international sales, "concern[] a segment or other portion of [Canaan's] business that has been identified as playing a significant role in the [Canaan's] operations or profitability" and therefore were material to Canaan. SAB No. 99; see also *Litwin*, at 720 (material if significant to a particularly important segment "even where a misstatement or omission may be quantitatively small compared to a registrant's firm-wide financial results".); As a "segment that management represented to be important to the future profitability of [Canaan]" the omission to disclose Yao's leadership role is material. SAB No. 99 [11]; see also *Ganino*, at 163 (directing that courts must assess a broad range of factors), *citing In re Home Health Corp. of Am., Inc.*, No. CIV. A. 98-834, 1999 WL 79057, at *6–7 (E.D. Pa. Jan. 29, 1999) (court declined to rule as immaterial failure to report loss of a *de minimis* percentage of total revenue where the company emphasized this segment's importance to the company's future growth.)

Mechanically comparing the value of related party transactions to balance sheet or income statement items is not the proper analysis to determine if a related party transaction is material. "[I]n some cases[,] the significance of an item may be independent of the amount involved." (¶64, citing Reg. S–X, 50 Fed.Reg. 49,529–02, at 49,530 n. 3 (Dec. 3, 1985) (SEC explanation of rules).) GAAP requires disclosure of *all* related party transactions, "including transactions to which no amounts or nominal amounts were ascribed". (¶73; ASC850-10-50-1.) Under FAS No. 57, transactions between related parties should be disclosed even if services are rendered to the corporation by the related party without charge or no amounts or nominal amounts are ascribed. FAS No. 57, at 4-5. Disclosure of *all* related party transactions is important for investors to determine whether the corporation has subordinated its independent interests to the related party. FAS No. 57,

---

strategic overseas investment opportunities, such as identifying and acquiring suitable companies that would help us reach our expansion goals." (RS 116.)

[11] "A misstatement of the revenue and operating profit of a relatively small segment that is represented by management to be important to the future profitability of the entity" is more likely to be material to investors than a misstatement in a segment that management has not identified as especially important." SAB No. 99.

at 7. "This is because '[t]ransactions involving related parties cannot be presumed to be carried out on an arm's-length basis, as the requisite conditions of competitive, free-market dealings may not exist.'" *Zagami v. Nat. Health Trends Corp.*, 540 F. Supp. 2d 705, 710–11 (N.D. Tex. 2008) (*Quoting*, FAS No. 57 p. 3 (1983).

Disclosure of Defendants' related party transactions would have informed investors that Mr. Yao, who had the ability to significantly influence Canaan's operations, could o direct its business to himself in a manner that could be detrimental to Canaan and its shareholders. The Grandshores Agreement between Canaan and an entity controlled by Mr. Yao, a material related party transaction that Canaan also failed to disclose, is a perfect example of how a related party can use his influence to steer company business for his own advantage or to deceive investors. *See Ply Gem*, at 150 (at the pleading stage, the complaint may not be dismissed on grounds of immateriality "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."); *see also In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 831 (S.D.N.Y. 2017) (Oetken, J).

### b. Defendants Violated the Affirmative Duty to Disclose the Grandshores Agreement.

#### i. *Violation of duty to disclose under Form 20-F, Item 7.B. and Item 404*[12]

Under Form 20-F, Item 7.B.1, Canaan must disclose "**presently proposed transactions** which are material to the company or the related party … to which the company or any of its parent or subsidiaries was a party." (¶ 63.) Related parties include "enterprises in which a substantial interest in the voting power is owned, directly or indirectly, by any person described in [Item 7.B.](c)". Form 20-F, Item 7.B.(e). Therefore, Grandshores was a related party of Canaan given Mr. Yao's control.

---

[12] Plaintiffs conduct analysis of Item 7.B and Item 404 together because "a foreign private issuer [here Canaan] will be deemed to comply with Item 404 if it provides the information required by Item 7.B of Form 20–F". Instruction 3 to Item 404.

Form 20-F, Item 7.B.(c), (e). The transactions between Grandshores and Canaan, including the Grandshores Agreement[13], are subject to Form 20-F, Item 7.B disclosure.

Defendants do not dispute that Grandshores and Canaan are related parties. Defendants contend, though, that Canaan had no duty to disclose the Grandshores Agreement because it was non-binding. (Mtn. Br. at 18.) Such a narrow interpretation contradicts the explicit mandate in Form 20-F, Item 7.B.1 that "presently proposed transactions" with related parties must be disclosed. *See also In re Trump Hotels S'holder Derivative Litig.*, No. 96 CIV. 7820 DAB, 2000 WL 1371317, at \*12, 13 (S.D.N.Y. Sept. 21, 2000) (future activities or pending negotiations such as a "likely transaction" that had not been formally proposed at the time of the SEC filing was a "currently proposed transaction" subject to related party transaction disclosure under Item 404.); *U.S. Sec. & Exch. Comm'n v. Mintz*, No. CV H-07-1027, 2008 WL 11408489, at \*2 (S.D. Tex. Feb. 5, 2008) ("currently proposed" including unenforceable or contingent future transactions, subject to related party transaction disclosure under Item 404.) While the Agreement is referred to as a "framework agreement", it specifically says that GS Weicheng (owned by Yao) ***intends to purchase from Canaan*** or distribute on behalf of Canaan, blockchain equipment valued at $150 million and that "[a]ll transactions contemplated under the Agreement are subject to the signing of a definitive agreement …." This was clearly a presently proposed transaction that the parties intended to complete and only needed to be finalized with a more detailed documentation.

Defendants incorrectly assert that because the Agreement was filed with HKSE, this relieved Defendants of their affirmative duty to disclose it in the Registration Statement. (Mtn. Br. at 20.) The Agreement was not disclosed anywhere else. "[S]poradic press reports or reports published in other

---

[13] Grandshores Agreement can be accessed at the link provided at ¶ 6, FN3 or Ex. 8 to Cantor Decl. (Dkt. 56-8). The Chinese and English names for the party from the Canaan side to the Grandshores Agreement do not match. The Chinese name states "杭州嘉楠耘智信息科技有限公司" refers to Hangzhou Canaan Creative Information Technology Co. in the RS. Chen Decl. Ex. D.

14

contexts may 'not be considered to be part of the information that was reasonably available' to investors. *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 688 (S.D.N.Y. 2004) (quoting *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) (pre-IPO newspaper articles that were also written in Chinese don't relieve issuer of obligations to disclose in registration statement).[14]

### ii. Materiality

Materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred. *Ganino*, at 165.[15] Here, the Complaint sufficiently pleads materiality because the Complaint alleges that had the Grandshores Agreement been consummated, the revenue that the Agreement could bring to Canaan in the first year after the IPO would nearly equal Canaan's entire trailing twelve-month trailing revenues of approximately US$177 million, and 38% and 73% of Canaan's total net revenues for 2018 and 2019. (¶ 83.) This well exceeds the 5% threshold presumption for materiality. *Litwin,* 717. The Complaint also satisfies the qualitative analysis in *Litwin.* The Grandshores Agreement implicates a significant risk of self-dealing, and violates Canaan's Code of Ethics. (¶¶ 87, 88.) Such transaction is material because it presented "particularly egregious circumstances, such as self-dealing". SAB No. 99.

Defendants argue against materiality on the ground that the Agreement was "preliminary" and "for future mutually beneficial business opportunities". (Mtn. Br. 19.) But this Circuit specifically rejected the notion that negotiations for future activities were not material as a matter of law unless the discussions had ripened into an agreement-in-principle on price and structure. *Glazer v. Formica*

---

[14] See also, *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 736 (2d Cir. 1987) ("There are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from … prospectus on the basis that the information is public knowledge and otherwise available to them.")

[15] Defendants are wrong to judge in hindsight, arguing against materiality because no sales materialized from the Grandshores Agreement. (Mtn. Br. at 19.) *See Ganino*, at 163 (rejecting formulaic approach to assessing the materiality).

*Corp.*, 964 F.2d 149, 156 (2d Cir. 1992). Moreover, *Basic* addressed the specific obligations of when a board must disclose merger negotiations, a very different and highly specific issue.

Yao, as head of international sales for Canaan, was responsible for arranging the Grandshores transaction. This highlights the materiality of Yao's role as head of international sales, his serving as supervisor of Hangzhou Canaan and his control of Grandshores. In these positions, Yao was able to engineer this transaction that goosed Canaan's valuation on the eve of its IPO only to have the agreement fall flat and fail to generate any revenue after the IPO. (Mtn. Br. at 19.)

### c. Defendants Violated the Affirmative Duty to Disclose the Zhejiang Suanli Purchases

#### i. *Violation of duty to disclose under Form 20-F, Item 7.B. and Item 404.*

Defendant Kong as co-Chairman and Sun as a director were related parties of Canaan. (¶¶18, 19; RS at 137.) Defendants Kong and Sun together owned 50% of Zhejiang Shubei, which in turn owned 10% of Zhejiang Suanli. (¶89.); Chen Decl. Ex A, at 196. Zhejiang Suanli and Canaan are related parties under Form 20-F, Item 7.B.e. and under Item 404 of Reg. S-K ("related person had … a[n] … indirect material interest"). In addition to their equity control, Kong is the executive director and Sun is the Supervisor of Zhejiang Shubei, cementing their control over the company. (¶¶ 89, 90; *see also* Chen Decl. Exs. E and F (Dkts. 51-4,5).)

Item 7.B. requires disclosure of transactions between Canaan and "enterprises that directly or indirectly through one or more intermediaries, control or are controlled by, or are under common control with, the company ...." Thus, Defendants Kong and Sun's indirect control Zhejiang Suanli fits squarely into Item 7.B.'s definition of related party.

Under GAAP, Zhejiang Suanli was a related party because Defendants Kong and Sun's indirect control over Zhejiang Suanli (through Zhejiang Shubei) rendered Zhejiang an affiliate of Canaan because both Canaan and Zhejiang Suanli were under the common control of Kong and Sun. ASC 850 10-20 a. & g.

16

In fact, Canaan recognized Zhejiang Suanli as a related party because Defendant Kong "exercised significant influence over" Zhejiang Suanli**.** (¶90, Chen Decl. Ex A, at 196.) Canaan disclosed in the recurring related party transaction section of the Public Transfer Agreement that Zhejiang Suanli purchased RMB 973,333.33 (approximately US$149,697) of products from Hangzhou Canaan in January through April 2017 (¶¶ 40, FN 17 (Chen Decl. Ex A, 319-20), 89.) Canaan also disclosed that while being a director and investor of Canaan, "[m]eanwhile, [Kong] continues to engage in Bitcoin-related business through … Zhejiang Suanli". (¶40, FN 16 (Chen Decl. Ex. B, at 89).) Zhejiang Suanli recurring purchase of products from Canaan were undisclosed related party transactions. In asserting that Zhejiang Suanli is not a related party, Defendants completely ignore the fact that Kong and Sun are the Executive Director and Supervisor, respectively, of Zhejiang Hubei. Thus, Kong, individually and together with Kong, exercised significant control over Zhejiang Suanli.

Incorrectly relying on *Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp. 2d 146, 158 (D.R.I. 2004), Defendants argue against a related party relationship because a Canaan subsidiary, not the registrant Canaan itself was a direct party to the transactions. Defendants completely mischaracterize the facts and holding of *Heffernan*. First, in *Heffernan* the CEO of a Company had made an undisclosed loan to the major shareholder of another company. The CEO's company had also made a fully disclosed loan to the major shareholder's company. These facts are quite different because the undisclosed loan is from the CEO of the issuer to the shareholder of an unrelated party. Not a transaction between an issuer and one of its major shareholders and directors. In any event, the Court allowed the claim to go forward. *Heffernan*, 340 F. Supp. 2d at 160 ("the plaintiffs should be afforded an opportunity to present evidence to prove their case."). Second, *Heffernan*, a 2004 case, relied on the version of Item 404 effective until November 7, 2006, which specifically included transactions "to which **any of Registrant's subsidiaries** was or is to be a party".

17

Chen Decl. Ex G-1. Third, despite the significant modifications in 2006 including deletion of reference to "subsidiaries", the SEC specifically instructed that such deletion "does not change the scope of disclosure" and "companies must include subsidiaries in making materiality determinations in all circumstances". Chen Decl. Ex. C at 152. Last, Canaan benefitted from the Zhejiang Suanli purchases and was a "participant" subject to Item 404's mandatory disclosure. See Chen Decl. Ex. C, at 151 (SEC clarifies that change from "party" to "participant" is meant to encompass situations where company benefits from transaction but is not technically a contractual "party" to the transaction).

### ii. Materiality

Under Item 404, "when the amount involved in a transaction exceeds the [$120,000] threshold, a company should evaluate whether the related person has a direct or indirect material interest in the transaction to determine if disclosure is required. Chen Decl. Ex. C at 150. Defendants assert that because the transaction was only 0.07% of Canaan's revenues, it was too small "to have had any material impact on Canaan's disclosures." (Mtn. Br. at 9.) Defendants miss the point. Kong represented that he would continue to conduct bitcoin business via Zhejiang Suanli, which presents a significant risk of continued self-dealing. This is the precise risk of self-dealing that the SEC and GAAP rules mandate must be disclosed to investors. SAB No. 99.

This Circuit rejects the pure mechanical formulaic analysis of materiality. *Ganino*, at 162. "[I]in some cases[,] the significance of an item may be independent of the amount involved. For example, amounts due to and from officers and directors, because of their special nature and origin, ought generally to be set forth separately even though the dollar amounts involved are relatively small." Regulation S–X, 50 Fed.Reg. 49,529–02, at 49,530 n. 3 (Dec. 3, 1985) (SEC explanation of rules) When Canaan disclosed its related party transactions in the Public Transfer Statement, NEEQ was particularly concerned about the necessity and fairness of Canaan's related party transactions,

18

including the ones with Zhejiang Suanli. (¶39.); Chen Decl. Ex. B, at 88, 123. At NEEQ's request, Canaan, its underwriter and accountant separately addressed NEEQ's concerns. *Id*., at 88-93. Also, at NEEQ's request, Canaan's underwriter had to investigate whether Canaan's controlling shareholder, actual controlling shareholder and all related parties misused the Company's funds. Addressing NEEQ's concerns, Canaan's underwriter confirmed to NEEQ that the Company's 5% and up shareholders, directors, supervisors and senior management have all signed promises to reduce related party transactions with the Company; if such transactions could not be avoided, they would strictly follow laws and regulations. Chen Decl. Ex. B, at 101. These qualitative factors demonstrate materiality for Zhejiang Suanli's reoccurring purchases from Canaan in 2017, that continued, undisclosed, in 2018 and 2019. See SAB No. 99 (rejecting immaterial when existing particularly egregious circumstances, such as self-dealing or misappropriation by senior management, despite below the 5% threshold.); *Home Health Corp. of America,* at \*6–7 (declining to hold immaterial failure to report loss of a *de minimis* percentage of total revenue based on qualitative analysis.)

### D.  Defendants' Negative Causation Affirmative Defense Fails

Defendants bear a heavy burden of ***proving*** that something other than the alleged omissions or misstatements caused Plaintiffs' loss because the risk of uncertainty is allocated to defendants. *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 408 (S.D.N.Y. 2003) *(quoting Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 341 (2d Cir. 1987)).  Defendants' proof consists solely of their argument that "the MAV report did not mention (i) the Zhejiang Suanli transaction, (ii) Mr. Yao's alleged position on Hangzhou Canaan's Board of Supervisors or as an international sales executive, or (iii) any facts about the Grandshores Agreement that were not already public. (Mtn. Br. at 21). This "proof" fails for several reasons.  First, the MVA Report stated generally that "[t]ransactions with related parties and/or sham entities have been a hallmark of the fraudulent US-listed Chinese companies that have often used these dealings to artificially inflate revenue or otherwise falsify their

financials" and "Undisclosed Related Party Transactions Contaminate CAN's Stock Promotion". Cantor Decl. Ex. 4 at 4-6. (Dkt. 56-4.) The MAV report went on to specifically identify the Grandshores transaction as a related party disclosure violation because Yao secretly controlled Grandshores and was also a major shareholder of Canaan. (*Id*. at 4.) This alone obliterates Defendants' negative causation defense. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 523 (S.D.N.Y. 2013) (refusing to consider negative causation because two news articles may be corrective disclosures.); *see also United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) ( at the pleading stage, courts can dismiss a claims on the basis of negative causation only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."). That the Complaint alleges the additional facts that Yao is a related party because of his hidden role as Canaan's head of international sales and his position as Chairman of the Board of Supervisors at Canaan primary operating subsidiary doesn't help Defendants. A corrective disclosure doesn't have to be a mirror image of the false or misleading statement. *Freudenberg*, at 202 (a corrective disclosure need not be a "mirror image tantamount to a confession of fraud"). Here the MAV Report accused Canaan very generally of failing to disclose related party transactions and listed several examples. That it did not list all Canaan's violations isn't a sufficient defense.

Nor does the fact the Grandshores Agreement was reported once on HKSE mean that investors in the U.S. were aware of it prior to the MAV Report. "[S]poradic press reports or reports published in other contexts may 'not be considered to be part of the information that was reasonably available' to investors. *In re WorldCom, Inc. Securities Litigation*, 346 F. Supp. 2d at 688 (quoting *United Paperworkers Intern. Union*, 985 F.2d at 1199. More importantly, the public report didn't disclose that the Grandshores Agreement was a related party transaction.

The MAV Report also identified Canaan's substantial related party transactions that amounted to 6.1% of annual sales in 2016 with Hangzhou Weitui Information Technology Company,

an entity secretly owned by Kong and Sun. (MAV Report at 5-6). The Complaint identifies additional related party transactions with a second entity Zhejiang Suanli, that was also secretly owned by Kong and Sun. (¶¶ 39, 40.) The corrective disclosure need only mention the subject matter of misleading statements. *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 478 (S.D.N.Y. 2013). The MAV Report accused Canaan of engaging in undisclosed related party transactions that inflated revenue, identifying a few specific examples. The Zhejiang Hubei related-party transactions fall into the same bucket as the others the MAV Report specifically identified. Similarly, Canaan's undisclosed payments to Yao for his services as head of international sales are the same subject matter as the undisclosed related party transactions the MAV Report highlights concerning Yao and Canaan's anticipated avalanche of sales to Grandshores. Yao as Canaan's head of international sales spearheaded the transaction with Grandshores, an entity he controls. Yao's role as Canaan's head of international sales and Yao's undisclosed ownership of Grandshores are inextricably linked together and part of the same overarching fraudulent scheme.

## II.     THE COMPLAINT ADEQUATELY STATES A CLAIM UNDER SECTION 10(b)

For the reasons set discussed above, the Complaint pleads the Registration Statement was false and misleading in violation of Section 10(b), for failing to disclose related party transactions. The Complaint also pleads scienter and loss causation under Section 10(b) for the following reasons.

### A.     The Complaint Adequately Pleads Scienter

In evaluating scienter, "courts must, as with any motion to dismiss, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The issue is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation [] meets that standard." *Id.* at 322-23. The inference of scienter "need not be [] of the 'smoking gun' genre, or "irrefutable" or even the 'most plausible of competing inferences.'" *Id.* at 324. It need only be "cogent and at least as compelling as any opposing

21

inference one could draw from the facts alleged." *Id.* In other words, a tie goes to Plaintiffs. The Complaint sufficiently alleges scienter by alleging strong circumstantial evidence of conscious misbehavior or recklessness. *Novak v. Kasaks*, 216 F.3d 300, 308-09 (2d Cir. 2000).

**Mr. Yao's Services**. The Complaint alleges that Canaan tasked Mr. Yao to lead its international sales and compensated him for his services for at least five years. During the IPO, Defendants had a duty to conduct due diligence, including interviewing Canaan's employees, to identify the information to be disclosed. (¶¶34, 45, 76, FN 22.). In the course of their investigation, Defendants would have easily learned from Canaan employees that Yao led Canaan's international sales department. It is "highly unreasonable" and "represents an extreme departure from the standards of ordinary care" that Canaan did not know that it tasked and paid its own senior executive to lead its international sales – "[a]n egregious refusal to see the obvious, or to investigate the doubtful". *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); see also *Novak*, at 308 (reckless due to access to information or to failure to review when having a duty). And a cursory review of its corporate filings would reveal Yao was Chairman of the Board of Supervisors of Canaan's main operating subsidiary.

**Grandshores Agreement**. The Complaint specifically identifies the Agreement which Canaan had access to – in fact its primary subsidiary signed – but the Registration Statement failed to disclose. Therefore, the Complaint sufficiently alleges the recklessness. *Novak*, 308, 309 (alleged recklessness when specifically identifying the statement containing contrary facts.) Furthermore, the timing and true intent for entering into such an Agreement shows strong evidence of Defendants' conscious misbehavior. (¶82.) In great need of outside financing, Canaan had been relentlessly pursuing IPO on the Chinese stock markets, HKSE and finally on NASDAQ. "Going public is our primary goal", said Canaan Sales Director after three unsuccessful IPO attempts. (¶42.) Grandshores announced the Agreement the day before Canaan announced its plan to do an IPO on NASDAQ.

Despite the Agreement being non-binding, Grandshores' stock price shot up 18.6% within one day upon the announcement, showing this Agreement's tremendous value to investors. (¶84.) It gave Underwriter Defendants, most of which have strong presence on the Hong Kong capital market and had access to such information, the basis to increase Canaan's IPO price. Also, any potential IPO investors in Asia or with access to Asian news may have seen the announcement but not known it was a related party transaction. While no sales were ever made, the agreement helped boost Canaan's IPO. (Mtn. Br., at 19.)

**Zhejiang Suanli Purchases**. The mere fact that Canaan disclosed such related party transactions in its Chinese public offering statement shows Defendants' knowledge and hence scienter. *Novak*, at 309; see also *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1122 (C.D. Cal. 2012) (discrepancies between the information reported to SEC and Chinese regulators gives rise to a strong inference of scienter); *Scott v. ZST Digital Networks, Inc.*, No. CV 11-03531 GAF JCX, 2012 WL 538279, at *8 (C.D. Cal. Feb. 14, 2012) (same); *In re China Educ. All., Inc. Sec. Litig.*, No. CV 10-9239 CAS JCX, 2011 WL 4978483, at *6 (C.D. Cal. Oct. 11, 2011) (same).

Lumping together a slew of cases on the general scienter standard, Defendants argue no case specifically applicable to the factual allegations in the Complaint. Neither do they offer any counter-inference exculpating their omissions, let alone one that is "cogent and compelling". The reason is simple: there is none. Taking Plaintiffs' allegations as true and viewing the claims holistically, Plaintiffs adequately allege that at the time of the IPO, Defendants had access to, and a duty to review, all the related party transactions that the Complaint specifically identifies; but they intentionally or recklessly failed to disclose them.

### B. The Complaint Adequately Alleges Loss Causation

Plaintiffs incorporate by reference their argument above on negative loss causation. The MAV Report alerted investors generally to the specter of undisclosed related party transactions. This

is sufficient to plead loss causation. *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 289 (S.D.N.Y. 2008) ("there is no requirement that the [corrective] disclosure take a particular form or be of a particular quality"). *See also United States v. Hatfield*, No. 06-CR-0550 JS AKT, 2014 WL 7271616, at *8 (E.D.N.Y. Dec. 18, 2014) (noting that "whether a release of information to the market constitutes a corrective disclosure is a flexible inquiry" and holding as a corrective disclosure news that caused the market to have a "growing awareness" of defendants' alleged deception).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. Alternatively, if the Court grants any part of the Motion, Plaintiffs respectfully request leave to amend. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (holding that courts should be especially liberal in granting leaves to amend in cases of dismissed securities fraud claims).

Dated: February 5, 2021                          Respectfully submitted,

                                                 **THE ROSEN LAW FIRM, P.A.**

                                                 /s/ Laurence Rosen
                                                 Laurence M. Rosen, Esq.
                                                 Jing Chen, Esq.
                                                 275 Madison Avenue, 40th Floor
                                                 New York, New York 10016
                                                 Telephone: (212) 686-1060
                                                 Fax: (212) 202-3827
                                                 Email: jhorne@rosenlegal.com
                                                          lrosen@rosenlegal.com

                                                 *Counsel for Lead Plaintiffs*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February 2021 a true and correct copy of the foregoing

**MEMORANDUM OF LAW** was served by CM/ECF to the parties registered to the Court's

CM/ECF system.


/s/ Laurence Rosen

25