# EXHIBIT B

MORNINGSIDE
Getting Ideas Right.

# TRANSLATION CERTIFICATION

Date: February 5, 2021

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese

To:

- English

The documents are designated as:

- Select Pages from 关于杭州嘉楠耘智信息科技股份有限公司挂牌申请文件的第一次反馈意见的回复

Eugene Li, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____

Signature of Eugene Li

# 关于

# 杭州嘉楠耘智信息科技股份有限公司

# 挂牌申请文件的第一次反馈意见的回复

推荐主办券商

 山西证券股份有限公司
SHANXI SECURITIES CO., LTD.

（山西省太原市府西街 69 号山西国际贸易中心东塔楼）

报告期内，公司无形资产核算内容主要为公司购入的财务管理软件。报告期内，公司研发费用金额分别为 4,654,970.95 元、21,394,528.60 元和 15,255,207.50 元，公司将相关研发支出费用化处理，导致无形资产规模较小。

截至 2017 年 7 月 31 日，公司及子公司拥有 3 项实用新型专利，目前申请已获受理的发明专利 17 项；正在申请集成电路布图设计专有权 1 项；已取得商标权 8 项、软件著作权 32 项。具体情况详见公开转让说明书"第二节　公司业务"之"三、与公司业务相关的关键资源要素"。

经核查，主办券商认为，公司具有与公司业务相关的关键资源要素，公司无形资产规模与公司业务相匹配。

## 19、关于关联交易。（1）请公司从市场可比角度，补充说明向关联方购销（尤其是杭州微推信息科技有限公司）是否必要、价格是否公允。（2）请主办券商、会计师结合市场行情等就关联交易的必要性、公允性发表明确意见。

【公司回复】

（1）请公司从市场可比角度，补充说明向关联方购销（尤其是杭州微推信息科技有限公司）必要、价格是否公允。

1、报告期内，公司向关联方销售情况如下：

单位：万元

| 关联方名称 | 关联交易内容 | 2017 年 1-4 月 | 2016 年 | 2015 年 |
|---|---|---|---|---|
| 杭州微推信息科技有限公司 | 出售商品 | - | 1,934.69 | - |
| 浙江算力网络科技有限公司 | 出售商品 | 97.33 | - | - |
| 石棉县华晶电子通信产业服务有限公司 | 出售商品 | - | 406.16 | - |
| 赵春华 | 出售商品 | - | 524.73 | 19.74 |
| 合计 | | 97.33 | 2,865.58 | 19.74 |

（1）交易的必要性

关联方杭州微推信息科技有限公司成立于 2012 年，主营计算机软硬件、网

络技术、电子产品的技术开发、技术咨询、成果转让，计算机网络设备的安装及维护，计算机系统集成，设计、制作、代理、发布国内广告；批发、零售：电子产品，数码产品，机器设备及配件。

关联方浙江算力网络科技有限公司成立于 2015 年，主营计算机软硬件、网络科技产品的技术开发、技术服务、技术咨询、技术转让，经济信息咨询（除商务中介），投资管理（未经金融等监管部门批准，不得从事向公众融资存款、融资担保、代客理财等金融服务），投资咨询（除证券、期货），财务信息咨询；零售：计算机、电子产品（除电子出版物）。

关联方杭州微推信息科技有限公司和浙江算力网络科技有限公司采购的AvalonMiner 产品均用于其主营的与比特币相关的区块链计算业务。杭州微推信息科技有限公司 2016 年度为公司董事孔剑平实际控制的公司，浙江算力网络科技有限公司为公司董事孔剑平参股或具有重大影响的公司，孔剑平系比特币行业专业投资人，在投资公司之前即具有多年购买区块链计算设备并从事比特币投资及交易的经历；2015 年因为对公司创始人团队能力及业内影响力较为认同，因此成为公司财务投资人，同时继续通过杭州微推信息科技有限公司和浙江算力网络科技有限公司从事比特币相关业务。

石棉县华晶电子通信产业服务有限公司成立于 2016 年 3 月，主营通信工程设计、施工；通信设备批发及其维护服务；通信软件开发；云平台、云基础设施、云软件服务；数字监控软硬件开发、安装、维护服务。（依法须经批准的项目，经相关部门批准后方可开展经营活动。

赵春华原从事比特币行业投资，后加入公司，专门从事区块链计算设备的销售，并于 2016 年 3 月成为石棉县华晶电子通信产业服务有限公司的股东。

上述关联方由于公司产品稳定性能、功耗较低等优势选择从公司进行采购，采购产品用于自用，关联交易具有必要性。

（2）交易的公允性

公司向上述关联方产品销售基础定价原则与其他客户一致，最终销售均价处于合理区间。

据，价格公允。石棉县华晶电子通信产业服务有限公司为公司提供区块链云计算托管中心建设服务，可以有效满足公司发展需求，具有必要性。

【山西证券回复】

（二）请主办券商、会计师结合市场行情等就关联交易的必要性、公允性发表明确意见。

1、核查过程、事实依据

公司相关业务人员进行访谈，了解关联方采购与销售业务；核查公司与关联方签订的销售合同、采购合同，将其价格与非关联方的销售价格、采购价格进行对比；计算关联交易销售产品的毛利率，并与非关联销售产品价格进行对比。

2、分析过程、核查结论

（1）报告期内，公司向关联方销售情况如下：

单位：万元

| 关联方名称 | 关联交易内容 | 2017 年 1-4 月 | 2016 年 | 2015 年 |
|---|---|---|---|---|
| 杭州微推信息科技有限公司 | 出售商品 | - | 1,934.69 | - |
| 浙江算力网络科技有限公司 | 出售商品 | 97.33 | - | - |
| 石棉县华晶电子通信产业服务有限公司 | 出售商品 | - | 406.16 | - |
| 赵春华 | 出售商品 | - | 524.73 | 19.74 |
| 合计 | | 97.33 | 2,865.58 | 19.74 |

①交易的必要性

关联方杭州微推信息科技有限公司成立于 2012 年，主营计算机软硬件、网络技术、电子产品的技术开发、技术咨询、成果转让，计算机网络设备的安装及维护，计算机系统集成，设计、制作、代理、发布国内广告；批发、零售：电子产品，数码产品，机器设备及配件。

关联方浙江算力网络科技有限公司成立于 2015 年，主营计算机软硬件、网络科技产品的技术开发、技术服务、技术咨询、技术转让，经济信息咨询（除商务中介），投资管理（未经金融等监管部门批准，不得从事向公众融资存款、融资担保、代客理财等金融服务），投资咨询（除证券、期货），财务信息咨询；零

杭州嘉楠耘智信息科技股份有限公司 反馈意见回复

售：计算机、电子产品（除电子出版物）。

关联方杭州微推信息科技有限公司和浙江算力网络科技有限公司采购的 AvalonMiner 产品均用于其主营的与比特币相关的区块链计算业务。杭州微推信息科技有限公司 2016 年度为公司董事孔剑平实际控制的公司，浙江算力网络科技有限公司为公司董事孔剑平参股或具有重大影响的公司，孔剑平系比特币行业专业投资人，在投资公司之前即具有多年购买区块链计算设备并从事比特币投资及交易的经历；2015 年因为对公司创始人团队能力及业内影响力较为认同，因此成为公司财务投资人，同时继续通过杭州微推信息科技有限公司和浙江算力网络科技有限公司从事比特币相关业务。

石棉县华晶电子通信产业服务有限公司成立于 2016 年 3 月，主营通信工程设计、施工；通信设备批发及其维护服务；通信软件开发；云平台、云基础设施、云软件服务；数字监控软硬件开发、安装、维护服务。（依法须经批准的项目，经相关部门批准后方可开展经营活动。

赵春华原从事比特币行业投资，后加入公司，专门从事区块链计算设备的销售，并于 2016 年 3 月成为石棉县华晶电子通信产业服务有限公司的股东。

上述关联方由于公司产品稳定性能、功耗较低等优势选择从公司进行采购，采购产品用于自用，关联交易具有必要性。

②交易的公允性

公司向上述关联方产品销售基础定价原则与其他客户一致，最终销售均价处于合理区间。

以杭州微推为例说明，杭州微推于 2015 年 9 月与公司签订购买合同并支付预付款，当年 9-10 月同样采取支付预付款形式的客户一共 20 家，销售统计情况如下：

| 项目 | 平均销售单价（元） |
|------|------|
| 最高 | 5,332.19 |
| 最低 | 4,831.17 |
| 算术平均 | 5,193.30 |

21、请公司披露：报告期初至反馈回复期间，公司是否存在控股股东、实际控制人及其关联方占用公司资金的情形，若存在，请说明资金占用情况，包括且不限于占用主体、发生的时间与次数、金额、决策程序的完备性、资金占用费的支付情况、是否违反相应承诺、规范情况。请主办券商、律师及会计师核查前述事项，并就公司是否符合挂牌条件发表明确意见。

【公司回复】

公司报告期各期末应收关联方资金余额如下：

| 科目名称 | 关联方名称 | 2017 年 4 月 30 日 | 2016 年 12 月 31 日 | 2015 年 12 月 31 日 |
|---|---|---|---|---|
| 其他应收款 | 吴敬杰 | | 88,591.69 | |
| 其他应收款 | 石棉县华晶电子通信产业服务有限公司 | 2,480,000.00 | 480,000.00 | |
| 其他应收款合计 | | 2,480,000.00 | 568,591.69 | |

2016 年末其他应收吴敬杰款项为吴敬杰借支的备用金。其他应收石棉县华晶电子通信产业服务有限公司款项为区块链云计算托管中心建设保证金，截至本反馈意见回复出具日，公司已收回该保证金。

公司收到反馈意见之后，对报告期初至反馈回复期间的关联方关系及往来款明细、银行日记账、现金日记账、银行对账单进行核查，公司不存在控股股东、实际控制人及其关联方占用公司资金的情形。

【山西证券回复】

1、核查过程

查阅公司及关联公司的工商资料，核查关联方基本情况；查阅公司账簿、明细账、银行收付款回单及银行交易流水；通过查阅公司关联交易相关规章制度及报告期后的关联方往来账、银行流水等；获取公司实际控制人、控股股东出具的《关于避免资金和其他资产占用的承诺函》等。

杭州嘉楠耘智信息科技股份有限公司                                          反馈意见回复

2、事实依据

公司及关联公司工商档案，公司账簿、明细账、银行收付款回单及银行交易流水，公司关联交易相关规章制度、承诺函等。

3、分析过程

经核查，报告期内，公司与关联方往来余额情况如下：

| 科目名称 | 关联方名称 | 2017 年 4 月 30 日 | 2016 年 12 月 31 日 | 2015 年 12 月 31 日 |
|---|---|---|---|---|
| 其他应收款 | 吴敬杰 | | 88,591.69 | |
| 其他应收款 | 石棉县华晶电子通信产业服务有限公司 | 2,480,000.00 | 480,000.00 | |
| 其他应收款合计 | | 2,480,000.00 | 568,591.69 | |

2016 年末其他应收吴敬杰款项为吴敬杰借支的备用金。其他应收石棉县华晶电子通信产业服务有限公司款项为区块链云计算托管中心建设保证金，截至本反馈意见回复出具日，公司已收回该保证金。

主办券商收到反馈意见之后，对报告期初至反馈回复期间的的关联方关系及往来款明细、银行日记账、现金日记账、银行对账单等进行核查，公司不存在控股股东、实际控制人及其关联方占用公司资金的情形。

公司对控股股东、实际控制人及其关联方占用公司资金的规范措施如下：

（1）内控制度为有效防止控股股东、实际控制人及其他关联方占用公司资金、资产或资源提供了制度保证。

股份公司成立后，公司依法建立了较为完善的法人治理结构和完备的管理制度，公司制定了《公司章程》、《股东大会议事规则》、《董事会议事规则》、《关联交易管理办法》、《防范控股股东及其他关联方资金占用管理制度》等，建立了较为完善的治理机制和管理规范及管理制度，对关联交易的决策权限、决策程序及关联董事、关联股东的回避表决制度、控股股东及关联方资金占用等进行了详细的规定，以保证公司董事会、股东大会的关联交易决策对其他股东利益的公允性。公司严格按照股份公司有关法律法规要求及《公司章程》等各项制度的约定对关

联方的资金往来及交易进行规范。

（2）公司控股股东、实际控制人出具了《关于避免资金和其他资产占用的承诺函》，承诺"1、本人保证本人及本人控制的除股份公司以外的其他企业严格遵守法律法规和中国证券监督管理委员会有关规范性文件及股份公司《公司章程》、《关联交易管理办法》等制度的规定，不会以委托管理、借款、代偿债务、代垫款项或者其他任何方式占用股份公司的资金或其他资产。2、如违反上述承诺占用股份公司及其控股子公司的资金或其他资产，而给股份公司及股份公司其他股东造成损失的，由本人承担赔偿责任。3、本人保证本人及本人控制的除股份公司以外的其他企业将尽量避免与股份公司之间产生关联交易事项，对于不可避免发生的关联业务往来或交易，将在平等、自愿的基础上，按照公平、公允和等价有偿的原则进行，交易价格将按照市场公认的合理价格确定。本人保证将严格遵守股份公司公司章程等规范性文件中关于关联交易事项的回避规定，所涉及的关联交易均将按照规定的决策程序进行，并将履行合法程序，及时对关联交易事项进行信息披露。本人承诺不会利用关联交易转移、输送利润，不会通过股份公司的经营决策权损害股份公司及其他股东的合法权益。"

（3）公司持股 5%以上的股东、董事、监事、高级管理人员已出具《关于规范和减少关联交易的承诺函》，承诺将尽可能减少与股份公司间的关联交易，对于无法避免的关联交易，将严格按照《公司法》、《公司章程》及《关联交易决策制度》等规定，履行相应的决策程序。

4、核查结论

经核查，主办券商认为，报告期初至反馈回复期间，公司不存在控股股东、实际控制人及其关联方占用公司资金的情形，公司符合挂牌条件。

22、请会计师就推荐挂牌业务审计中是否存在证监会《会计监管风险提示第 6 号——新三板挂牌公司审计》涉及的审计项目质量控制、通过了解被审计单位及其环境识别和评估重大错报风险、持续经营、收入确认、关联方认定及其交易、货币资金、费用确认和计量、

过加强企业管理，细化岗位分工、提高工作效率，减少冗余岗位；另一方面，公司拟采用劳务外包或签订劳动合同的方式降低派遣员工比例，且采用劳务外包或签订劳动合同的形式不会大幅加重公司用工成本，影响公司的正常经营。

4、核查结论

经核查，主办券商认为，报告期内，公司存在劳务派遣用工比例超限的情况，相关风险公司已在《公开转让说明书中》充分提示，公司拟采用劳务外包或签订劳动合同的方式进行规范；报告期内，公司未遭受行政处罚或产生劳动纠纷；公司降低劳务派遣员工比例的措施切实可行，不会影响公司的正常经营。该事项不构成公司挂牌的实质性障碍。

律师核查意见详见律师出具的《补充法律意见书（一）》。

**25、公司现有 12 家机构股东。请穿透说明相关机构股东的适格性、持有公司股权是否合法合规、是否存在变相公开发行等情况，其出资人、实际控制人与公司及公司实际控制人、董事、监事、高级管理人员、其他核心人员有无关联关系，有无代持或其他利益安排；相关机构及其主要出资人、实际控制人是否存在其他投资、投资的其他企业与发行人是否存在同业竞争或交易、资金往来。请主办券商和律师补充核查并发表明确意见。**

【山西证券回复】

1、核查过程

主办券商核查国家企业信用信息公示系（http://www.gsxt.gov.cn/index.html）、启信宝（http://www.qixin.com）、企查查（http://www.qichacha.com）等公开网站，并审阅公司机构股东及其出资人、实际控制人提供的《权益人调查表》、各机构股东营业执照、公司章程或合伙协议，取得公司、公司机构股东出具的承诺函。

| | 公司 | | 发、技术服务、技术咨询、成果转让，计算机系统集成，国内广告的设计、制作、代理、发布（除网络）；批发、零售：计算机软硬件及配件，电子产品（除电子出版物），数码产品，通信设备，办公自动化设备，机械设备及配件。 | 台 |
|---|---|---|---|---|

根据水木泽华出具的承诺函，上述表格中所涉企业因与嘉楠耘智的主营业务不同，不构成同业竞争。

其中，浙江算力网络科技有限公司作为关联方已在《公开转让说明书》"十一、关联方及关联交易（二）关联方交易情况"中予以披露。其与嘉楠耘智在报告期内的交易如下（单位：元）：

| 关联方 | 关联交易内容 | 2017年1-4月 | 2016年度 | 2015年度 |
|---|---|---|---|---|
| 浙江算力网络科技有限公司 | 出售商品 | 973,333.33 | | |

根据嘉楠耘智、水木泽华出具的承诺函及水木泽华出资人、实际控制人填写的《权益人调查表》，除上述交易外，水木泽华及其主要出资人（持有合伙份额比例超过 5%的出资人）、实际控制人全部对外投资企业与发行人不存在其他交易、同业竞争、资金往来等情况。

（3）　数芯投资

①　穿透基本情况

数芯投资持有嘉楠耘智 46,573,342 股，占总股本比例为 15.5244%。截至本反馈出具之日，数芯投资的出资情况如下：

| 序号 | 类型 | 合伙人姓名或名称 | 认缴数额（万元） | 认缴比例（%） |
|---|---|---|---|---|
| 1 | 有限合伙人 | 李恩光 | 147.0575 | 5.8823 |
| 2 | 有限合伙人 | 王钢 | 147.0575 | 5.8823 |
| 3 | 有限合伙人 | 韩奇玮 | 147.0575 | 5.8823 |
| 4 | 有限合伙人 | 谭晓敏 | 147.0575 | 5.8823 |
| 5 | 有限合伙人 | 孙奇锋 | 735.2925 | 29.4117 |
| 6 | 有限合伙人 | 张文栋 | 147.0575 | 5.8823 |
| 7 | 有限合伙人 | 吴剑鸣 | 294.1175 | 11.7647 |

# Reply to

# the First Round of Feedback

# on the Listing Application Documents of

# Hangzhou Canaan Creative Information Technology Inc.

**Recommended Sponsoring Broker**

 **Shanxi Securities Co., Ltd.**

(East Tower, Shanxi World Trade Center, No. 69 Fuxi Street, Taiyuan City, Shanxi Province)

During the reporting period, accounting for the company's intangible assets was concerned primarily with the financial management software purchased by the company. During the reporting period, the company's research and development expenses were 4,654,970.95 RMB, 21,394,528.60 RMB and 15,255,207.50 RMB respectively. The company expensed the related research and development expenditures, resulting in a small size of intangible assets.

As of July 31, 2017, the company and its subsidiaries have 3 utility model patents; the applications for patents on 17 inventions have been accepted; the application for the exclusive right to a layout design of an integrated circuit is being processed; 8 trademark rights and 32 software copyrights have been obtained. For details, please refer to "3. Key Resource Elements Related to the Company's Business" under "Section 2 The Company's Business" of the Public Transfer Statement.

After verification, the sponsoring broker believes that the company has key resource elements related to the company's business and that the size of the company's intangible assets matches the company's business.

**19. Related Party Transactions. (1) Please use market comparison to explain whether it is necessary to purchase from and sell to related parties (especially Hangzhou Weitui Information Technology Co., Ltd.) and whether the price is fair. (2) The sponsoring broker and accountant are requested to give a clear opinion on the necessity and fairness of related party transactions in light of market conditions.**

[Reply from the Company]

(1) Please use market comparison to explain whether it is necessary to purchase from and sell to related parties (especially Hangzhou Weitui Information Technology Co., Ltd.) and whether the price is fair.

1. The company's sales to related parties during the reporting period are as follows:

Unit: RMB

| Name of Related Party | Related Party Transaction | January to April 2017 | 2016 | 2015 |
|---|---|---|---|---|
| Hangzhou Weitui Information Technology Co., Ltd. | Selling goods | - | 19,346,900 | - |
| Zhejiang Suanli Network Technology Co., Ltd. | Selling goods | 973,300 | - | - |
| Shimian Huajing Electronic Communication Industry Service Co., Ltd. | Selling goods | - | 4,061,600 | - |
| Zhao Chunhua | Selling goods | - | 5,247,300 | 197,400 |
| **Total** | | 973,300 | 28,655,800 | 197,400 |

(1) Necessity of Transactions

Founded in 2012, the related party Hangzhou Weitui Information Technology Co., Ltd. is mainly engaged in technology development, technology consulting and technology transfer for computer hardware and software, network technologies, and electronic products; the installation and maintenance of computer network equipment; computer system integration; the design, production, and publication of domestic advertisements, and the provision of domestic advertising agency services; and the wholesale and retail of electronic products, digital products, machinery, equipment, and related accessories.

Founded in 2015, the related party Zhejiang Suanli Network Technology Co., Ltd. is mainly engaged in technology development, technology services, technology consulting, and technology transfer for computer software and hardware and network technology products; economic information consulting (except business intermediary services); investment management (without the approval of financial and other regulatory authorities, the company shall not provide financing, deposit, financing guarantee, money management and other financial services to the public); investment consulting (except securities and futures) and financial information consulting; and the retail of computer and electronic products (except electronic publications).

The AvalonMiner products purchased by related parties Hangzhou Weitui Information Technology Co., Ltd. and Zhejiang Suanli Network Technology Co., Ltd. are used for their main business, namely Bitcoin-related blockchain computing. Hangzhou Weitui Information Technology Co., Ltd. was actually controlled by the company's director Kong Jianping in 2016; Zhejiang Suanli Network Technology Co., Ltd. is a company in which the company's director Kong Jianping holds shares or over which the company's director Kong Jianping has significant influence. Kong Jianping is a professional investor in the Bitcoin industry. Before investing in the company, he had many years of experience in purchasing blockchain computing equipment and engaging in Bitcoin investment and trading. In 2015, recognizing the ability of the company's founder team and the company's influence in the industry, he became a financial investor in the company. Meanwhile, he continues to engage in Bitcoin-related business through Hangzhou Weitui Information Technology Co., Ltd. and Zhejiang Suanli Network Technology Co., Ltd.

Founded in March 2016, Shimian Huajing Electronic Communication Industry Service Co., Ltd. is mainly engaged in communication engineering design and construction; communication equipment wholesale and maintenance services; communication software development; cloud platform, cloud infrastructure, and cloud software services; digital monitoring software and hardware development, installation and maintenance services. (Business activities that require approval in accordance with the law shall be subject to the business scope approved by the relevant authorities.)

Zhao Chunhua was originally engaged in Bitcoin investment and later joined the company, specializing in the sale of blockchain computing equipment. He became a shareholder in Shimian Huajing Electronic Communication Industry Service Co., Ltd. in March 2016.

The above related parties choose to purchase products from the company for their own use owing to the advantages of the company's products such as stable performance and low power consumption. Related party transactions are necessary.

(2) Fairness of Transactions

The basic principles of pricing for the company's sales to the above related parties are consistent with those for other customers, and the final average selling price is within a reasonable range.

**(II) The sponsoring broker and accountant are requested to give a clear opinion on the necessity and fairness of related party transactions in light of market conditions.**

1. Verification Process and Factual Basis

We interviewed the relevant business personnel of the company to learn about purchases from and sales to related parties; checked the company's sales contracts and purchase contracts with related parties, and compared their prices with the selling prices and purchase prices of non-related parties; calculated the gross profit margin of products sold in related party transactions, and compared the prices of the products with the prices of products sold to non-related parties.

2. Analysis Process and Verification Conclusion

(1) The company's sales to related parties during the reporting period are as follows:

Unit: RMB

| Name of Related Party | Related Party Transaction | January to April 2017 | 2016 | 2015 |
|---|---|---|---|---|
| Hangzhou Weitui Information Technology Co., Ltd. | Selling goods | - | 19,346,900 | - |
| Zhejiang Suanli Network Technology Co., Ltd. | Selling goods | 973,300 | - | - |
| Shimian Huajing Electronic Communication Industry Service Co., Ltd. | Selling goods | - | 4,061,600 | - |
| Zhao Chunhua | Selling goods | - | 5,247,300 | 197,400 |
| **Total** | | 973,300 | 28,655,800 | 197,400 |

① Necessity of Transactions

Founded in 2012, the related party Hangzhou Weitui Information Technology Co., Ltd. is mainly engaged in technology development, technology consulting and technology transfer for computer hardware and software, network technologies, and electronic products; the installation and maintenance of computer network equipment; computer system integration; the design, production, and publication of domestic advertisements, and the provision of domestic advertising agency services; and the wholesale and retail of electronic products, digital products, machinery, equipment, and related accessories.

Founded in 2015, the related party Zhejiang Suanli Network Technology Co., Ltd. is mainly engaged in technology development, technology services, technology consulting, and technology transfer for computer software and hardware and network technology products; economic information consulting (except business intermediary services); investment management (without the approval of financial and other regulatory authorities, the company shall not provide financing, deposit, financing guarantee, money management and other financial services to the public); investment consulting (except securities and futures) and financial information consulting; and the retail of computer and electronic products (except electronic publications).

The AvalonMiner products purchased by related parties Hangzhou Weitui Information Technology Co., Ltd. and Zhejiang Suanli Network Technology Co., Ltd. are used for their main business, namely Bitcoin-related blockchain computing. Hangzhou Weitui Information Technology Co., Ltd. was actually controlled by the company's director Kong Jianping in 2016; Zhejiang Suanli Network Technology Co., Ltd. is a company in which the company's director Kong Jianping holds shares or over which the company's director Kong Jianping has significant influence. Kong Jianping is a professional investor in the Bitcoin industry. Before investing in the company, he had many years of experience in purchasing blockchain computing equipment and engaging in Bitcoin investment and trading. In 2015, recognizing the ability of the company's founder team and the company's influence in the industry, he became a financial investor in the company. Meanwhile, he continues to engage in Bitcoin-related business through Hangzhou Weitui Information Technology Co., Ltd. and Zhejiang Suanli Network Technology Co., Ltd.

21. The company should disclose: Between the beginning of the reporting period and the reply to feedback, have the controlling shareholder, actual controllers, and their related parties occupied the company's capital? If so, please explain how the capital has been occupied, including but not limited to the occupying entity, the times and instances of such occurrences, the completeness of the decision-making process, payment of capital possession fees, whether relevant commitments have been violated, and how such situations are regulated. The sponsoring broker, lawyer, and accountant are requested to verify the aforementioned matter, and to give a clear opinion regarding whether the company meets the conditions for listing.

The company's regulatory measures for the occupation of company capital by the controlling shareholder, actual controllers, and their related parties are as follows:

(1) Internal control measures provide systematic assurances to effectively prevent the controlling shareholder, actual controllers, and their related parties from occupying the company's capital, assets, or resources.

After the joint stock company was founded, the company established a relatively more robust legal person governance structure and comprehensive management system. The company formulated the *Articles of Association*, *Shareholder Meeting Rules of Procedure*, *Board of Directors Rules of Procedure*, *Administrative Rules Governing Related Party Transactions*, *Administrative Rules to Prevent Controlling Shareholders and Other Related Parties from Capital Occupation*, among others. The relatively comprehensive governance mechanisms, management regulations, and management systems have imposed detailed requirements on the decision-making authority and decision-making procedures for related party transactions; the system of vote recusal for related directors and related shareholders; and the capital occupation by controlling shareholders and related parties. This guarantees the fairness of the related party transaction decisions made by the company's board of directors and general shareholder meetings. The company will strictly comply with relevant laws and regulations governing joint stock companies, as well as stipulations in various systems of the *Articles of Association* in

regulating financial dealings and transactions with related parties.

(2) The company's controlling shareholders and actual controllers have issued the *Letter of Commitment to Prevent Occupation of Capital and Other Assets*, with the following promise: "1. I guarantee that I and other enterprises under my control other than the joint stock company shall strictly comply with stipulations of laws, regulations, regulatory documents of China Securities Regulatory Commission, and the joint stock company's *Articles of Association* and *Administrative Rules Governing Related Party Transactions*; I and other enterprises under my control other than the joint stock company shall not occupy the joint stock company's capital or other assets by means of commissioned management, loans, debt repayment on our behalf, advanced funds, or any other method. 2. In the event that the aforementioned commitment is violated and any capital or other assets of the joint stock company and its controlled subsidiary companies is occupied, in turn causing losses to be incurred by the joint stock company and its other shareholders, then I shall bear compensation liability. 3. I guarantee that as much as possible, I and other enterprises under my control other than the joint stock company shall avoid the occurrence of related party transactions with the joint stock company. Any inevitable related party dealings or transactions shall be made on the basis of fairness and voluntary agreement, in accordance with principles of equity, fairness, and equal compensation; trading prices shall be confirmed by reasonable prices publicly recognized on the market. I guarantee that I shall strictly comply with the recusal requirements for related party transaction matters as stipulated in regulatory documents such as the *Articles of Association* of the joint stock company, any involved related party transaction shall be conducted in accordance with the stipulated decision-making procedures, and information disclosures for the related party transactions shall be made in a timely manner as part of the performance of lawful proceedings. I guarantee that related party transactions shall not be used to transfer or convey profits, and that the right to make operating decisions regarding the joint stock company will not be used to harm the lawful interests of the joint stock company and other shareholders."

(3) Shareholders holding more than 5% of stock in the company, directors, supervisors, and senior management have already issued the *Letter of Commitment Regarding Regulation and Reduction of Related Party Transactions*, guaranteeing that related party transactions involving the joint stock company will be minimized as much as possible. Decision-making procedures for inevitable related party transactions shall be performed in strict compliance with *Company Law*, *Articles of Association*, and *Decision-Making System for Related Party Transactions*.

4. Verification Conclusions

After verification, it is the opinion of the sponsoring broker that between the beginning of the reporting period and the reply to feedback, the controlling shareholder, actual controllers, and their related parties have not occupied the company's capital, and that the company meets the conditions for listing.

**25. The company has 12 institutional shareholders. Please thoroughly explain the eligibility of relevant institutional shareholders, whether their holdings in the company are legal and compliant, whether there is any disguised primary offering, etc., whether their investors and actual controllers are related to the company and its actual controller, directors, supervisors, senior managers and other core personnel, and whether there is any entrusted shareholding or other interest arrangement; whether there are other investments by the relevant institutions and their main investors and actual controllers, and whether there is horizontal competition or any transaction or funds transfer between the other firms they invest in and the issuer. The sponsoring broker and lawyer are requested to conduct additional verification and give a clear opinion.**

[Reply from Shanxi Securities]

1. Verification Process

The sponsoring broker checked the National Enterprise Credit Information Publicity System (http://www.gsxt.gov.cn/index.html), Qixinbao (http://www.qixin.com), Qichacha (http://www.qichacha.com), and other public sites, reviewed the Equity Holder Questionnaires provided by the company's institutional shareholders and their investors and actual controllers, and the business license, articles of association, or partnership agreement of each institutional shareholder, and obtained the letters of undertaking issued by the company and its institutional shareholders.

| | | Services: technology development, technology services, technology consulting, and technology transfer for computer software and hardware, electronic products, communication equipment, network technologies and computer network equipment, computer system integration, and the design, production and publication of domestic advertisements, and the provision of domestic advertising agency services (except online advertising); wholesale and retail: computer hardware and software and accessories, electronic products (except electronic publications), digital products, communication equipment, office automation equipment, mechanical equipment, and related accessories. | Blockchain computing Cloud-based integration platform |
| Hangzhou Kuangchi Technology Co., Ltd. | | | |

According to the letter of undertaking issued by Shuimu Zehua, the firms listed in the above table are not horizontal competitors as their main business is different from that of Canaan Creative.

The related party transaction with the related party Zhejiang Suanli Network Technology Co., Ltd. has been disclosed in "(2) Related Party Transactions" of "XI. Related Parties and Related Party Transactions" of the Public Transfer Statement. Its transaction with Canaan Creative during the reporting period is as follows (unit: RMB):

| Related Party | Related Party Transaction | January to April 2017 | 2016 | 2015 |
|---|---|---|---|---|
| Zhejiang Suanli Network Technology Co., Ltd. | Selling goods | 973,333.33 | | |

According to the letters of undertaking issued by Canaan Creative and Shuimu Zehua and the Equity Holder Questionnaires filled in by the investors and the actual controller of Shuimu Zehua, there are no other transactions outside the above transaction, no horizontal competition and no funds transfers between the other firms, Shuimu Zehua, its main investors (investors holding more than 10% of the partnership shares), or the actual controller—which only invests in outside enterprises, or the issuer.