UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BOLUKA GARMENT CO., LIMITED and HONGKUO TANG, Individually and on behalf of all others similarly situated, <br> Plaintiff, <br><br> v. <br><br> CANAAN, INC., NANGENG ZHANG, JIAXUAN LI, JIANPING KONG, QIFENG SUN, QUANFU HONG, CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CMB INTERNATIONAL CAPITAL LIMITED, GALAXY DIGITAL ADVISORS LLC, HUATAI FINANCIAL HOLDINGS (HONG KONG) LIMITED, TIGER BROKERS (NZ) LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, and VIEWTRADE SECURITIES, INC. <br><br> Defendants. | Civil Action No. 1:20-cv-07139-JPO |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated: March 8, 2021

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
*Attorneys for Defendants Citigroup Global
Markets Inc., China Renaissance Securities
(Hong Kong) Limited, Galaxy Digital Partners
LLC, Huatai Financing Holdings (Hong Kong)
Limited, Tiger Brokers (NZ) Limited, and
ViewTrade Securities, Inc.*

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
*Attorneys for Defendant Canaan, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.    PLAINTIFFS' SECTION 11 CLAIM FAILS TO PLEAD MATERIALITY OR LOSS CAUSATION BECAUSE THE ALLEGEDLY OMITTED FACTS WERE PUBLICLY DISCLOSED ...................................................................................................................... 2

II.    THERE WERE NO MATERIAL MISREPRESENTATIONS OR OMISSIONS IN THE REGISTRATION STATEMENT ...................................................................................... 5

    A.    The Zhejiang Suanli Sales Were Not Required to Be Disclosed ........................... 5

    B.    Yao Yongjie's Supposed Employment Was Not a Related-Party Transaction Under SEC Rules or GAAP ................................................................................... 7

    C.    The Grandshores Cooperation Agreement Was Not Required to Be Disclosed. ... 8

III.    PLAINTIFFS' SECTION 10(B) CLAIM FAILS. ............................................................. 9

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) ................................................................................................ 4, 5

*Garber v. Legg Mason, Inc.*,
347 F. App'x 665 (2d Cir. 2009) ................................................................................................. 3

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd,* 566 F. App'x 93 (2d Cir. 2014)......................... 10

*In re Barclays Bank PLC Sec. Litig.*,
2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017), *aff'd*, 756 F. App'x 41 (2d Cir. 2018), *as amended* (Nov. 20, 2018) ............................................................................................................. 3

*In re GeoPharma, Inc. Sec. Litig.*,
411 F. Supp. 2d 434 (S.D.N.Y. 2006) ...................................................................................... 10

*In re Intuitive Surgical Sec. Litig.*,
2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)............................................................................ 9

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................................................ 8

*In re Omnicom Grp., Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd,* 597 F.3d 501 (2d Cir. 2010)............................ 4, 5

*In re Perrigo Co. PLC Sec. Litig.*,
2021 WL 517441 (S.D.N.Y. Feb. 10, 2021).............................................................................. 10

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
774 F. Supp. 2d 584 (S.D.N.Y. 2011) ........................................................................................ 3

*In re UBS AG Sec. Litig.*,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................................................................ 3

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ....................................................................................................... 4

*Monroe Cty. Employees' Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014) .......................................................................................... 9

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ..................................................................................................... 10

*Peifa Xu v. Gridsum*,
2021 WL 773002 (S.D.N.Y. Feb. 23, 2021)............................................................................... 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
    886 F. Supp. 2d 328 (S.D.N.Y. 2012) ........................................................................................ 4

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008)...................................................................................................................... 9

*Tabak v. Canadian Solar Inc.*,
    549 Fed. App'x 24 (2d Cir. 2013) ............................................................................................... 5

*Van Dongen v. CNinsure Inc.*,
    951 F. Supp. 2d 457 (S.D.N.Y. 2013) ........................................................................................ 4

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ........................................................................................ 7

**Other Authorities**

Grandshores (01647) Signs Strategic Cooperation Agreement, available at
    http://www.etnet.com.hk/www/eng/stocks/realtime/quote_news_detail.php?newsid=ETE2910
    28203&page=1&section=related&code=1647 (Oct. 28, 2019).................................................... 2

SHIS: Strategic Cooperation Framework Agreement in Respect of Investment in Blockchain
    Industry, available at https://www.marketscreener.com/news/latest/SHIS-STRATEGIC-
    COOPERATION-FRAMEWORK-AGREEMENT-IN-RESPECT-OF-INVESTMENT-IN-
    BLOCKCHAIN-INDUSTRY--29464884/ (Oct. 27, 2019) ....................................................... 2

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition makes clear that their claims rest on three exceedingly immaterial alleged related-party transactions: (i) a series of sales to Zhejiang Suanli in early 2017 totaling $150,000, just 0.07% of Canaan's consolidated products revenue, (ii) the mere fact that a shareholder (Mr. Yao) was employed as a salesperson, and (iii) a nonbinding "cooperation" agreement with Grandshores that never resulted in any sales.  Plaintiffs not only fail to explain why an investor would consider these transactions material, they expressly admit that Canaan previously "disclosed all of the subject persons and entities as related parties, and one of the related party transactions at issue." (Opp. at 1.)  Plaintiffs' attempt to transform these immaterial—and publicly disclosed—transactions into highly technical federal securities law violations clearly fails as a matter of law, and is arguably frivolous.

As a threshold matter, Plaintiffs' remarkable admission that the facts supporting their claims were publicly disclosed torpedoes their case.  The crux of any securities law claim is that the defendant made a misstatement or omission of material fact that misled investors.  But Plaintiffs concede that investors had all the allegedly omitted information, which appeared in government filings, market news reports, and even a press release.  Thus, as a matter of law, Plaintiffs cannot state a claim under Section 11 because they cannot adequately allege materiality or loss causation.  Further, even if this information were not already public, Plaintiffs' Section 11 claim would fail because, even under the highly technical regulations Plaintiffs cite, Defendants were not required to disclose these transactions in the Registration Statement.  Finally, the Court should dismiss Plaintiffs' Section 10(b) claim for the same reasons, and also because Plaintiffs do not adequately plead reliance or scienter.  Plaintiffs rely on an erroneous scienter standard and improperly equate Canaan's alleged knowledge of the omitted facts with fraudulent intent.

**ARGUMENT**

## I.  PLAINTIFFS' SECTION 11 CLAIM FAILS TO PLEAD MATERIALITY OR LOSS CAUSATION BECAUSE THE ALLEGEDLY OMITTED FACTS WERE PUBLICLY DISCLOSED.

Plaintiffs' Opposition makes clear that they cannot adequately allege materiality or loss causation because, as the AC concedes, the public was well aware of the supposedly concealed facts, which appeared in records filed with the Chinese and Hong Kong governments and on multiple financial news sites.  First, Plaintiffs concede that: (i) Canaan disclosed Mr. Yao's employment at Hangzhou Canaan in its Public Transfer Statement (Opp. at 7), (ii) Canaan disclosed the Zhejiang Suanli sales (totaling just 0.07% of Canaan's consolidated products revenue) and Canaan's directors' ownership of Zhejiang Suanli in both the Public Transfer Agreement and Hangzhou Canaan's Feedback Response (Opp. at 17, 23), and (iii) the Grandshores Cooperation Agreement was publicly filed with the Hong Kong Stock Exchange. (Opp. at 14, 20.)  Further, Plaintiffs' assertion that the Cooperation Agreement "was not disclosed anywhere else" (*id.*) is demonstrably false: it was readily available online, as illustrated by the direct link in the MAV Report.[1]  Cantor Decl. ¶ 3, Ex. 4 at *4.  Indeed, Plaintiffs acknowledge that the Cooperation Agreement was well known to investors, alleging that Grandshores' stock price "shot up 18.6% within one day" of the announcement, "showing [its] tremendous value to investors."  (Opp. at 16.)  Plaintiffs' Section 11 claim fails because there can be no materiality or loss causation given these public disclosures.

---

[1]  *See* https://www1.hkexnews.hk/listedco/listconews/sehk/2019/1027/2019102700015.pdf.  The Cooperation Agreement was also reported on two additional English-language market news sites: SHIS: Strategic Cooperation Framework Agreement in Respect of Investment in Blockchain Industry, available at https://www.marketscreener.com/news/latest/SHIS-STRATEGIC-COOPERATION-FRAMEWORK-AGREEMENT-IN-RESPECT-OF-INVESTMENT-IN-BLOCKCHAIN-INDUSTRY--29464884/ (Oct. 27, 2019) and Grandshores (01647) Signs Strategic Cooperation Agreement, available at http://www.etnet.com.hk/www/eng/stocks/realtime/quote_news_detail.php?newsid=ETE291028203&page=1&section=related&code=1647 (Oct. 28, 2019).

*Materiality*.  Because the allegedly omitted facts were previously disclosed, Plaintiffs cannot establish materiality.  The omission of publicly available information, by definition, does not significantly alter the mix of information available to investors and, thus, is immaterial as a matter of law.  *See Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 668–69 (2d Cir. 2009) (finding that because information "was already in the public domain and was reasonably available to [] shareholders," "the omission of the information from the registration statement at issue here was not material"); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *33 (S.D.N.Y. Sept. 28, 2012) (holding that "[i]n light of these existing disclosures in the public domain, the Court finds that the alleged misstatements and omissions [] were not material and would not be viewed by the reasonable investor as significantly altering the total mix of information available").

*Loss Causation.*  Similarly, Plaintiffs' admission that the alleged related-party transactions were already publicly disclosed demonstrates a lack of loss causation.  For a Section 11 claim to succeed, "it is crucial that there be a revelation of the concealed risk and that the revelation cause a depreciation in the value of the security."  *In re Barclays Bank PLC Sec. Litig.*, 2017 WL 4082305, at *18 (S.D.N.Y. Sept. 13, 2017), *aff'd*, 756 F. App'x 41 (2d Cir. 2018), *as amended* (Nov. 20, 2018).  Failure to plead loss causation results in dismissal even at the pleading stage.  (*See* Mot. at 21.)  And because the information allegedly omitted by Canaan was publicly available, its omission had "no ability to inflate the price of [Canaan's] shares" and so "this theory does not adequately plead loss causation."  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 595 (S.D.N.Y. 2011) (dismissing Section 11 claim for "facially apparent negative loss causation").

3

Plaintiffs have also inadequately pled loss causation because the MAV Report did not "correct" the truth about the alleged related-party transactions. Indeed, Plaintiffs do not dispute that the MAV Report *said absolutely nothing at all* about the Zhejiang Suanli sales or Mr. Yao's employment, and acknowledge that the MAV Report merely "accused Canaan very generally of failing to disclose related party transactions." (Opp. at 20.) Plaintiffs nonetheless claim that the MAV Report was a corrective disclosure because it "need only mention the subject matter of misleading statements." (*Id*. at 21.) They are wrong. It is well established in the Second Circuit that the alleged corrective disclosure must be more than tenuously related to the alleged misstatements or omissions.[2] In *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, the court found no loss causation because the alleged corrective disclosures—press releases addressing investigations into the defendant—did not mention the type of fraudulent accounting practices allegedly omitted. 886 F. Supp. 2d 328, 338 (S.D.N.Y. 2012). Plaintiffs' lone citation is not to the contrary. (Opp. 21.) In *Van Dongen v. CNinsure Inc.*, the Court held that a press release was a sufficient corrective disclosure where, despite not connecting all the dots pointing to fraud, it "specifically referenced . . . exactly the subject matter" of the alleged misstatements. 951 F. Supp. 2d 457, 478 (S.D.N.Y. 2013). The MAV Report's general reference to related-party transactions lacks the requisite specifics.

The MAV Report likewise did not reveal "the truth" of anything to the market about the nonbinding Cooperation Agreement, as Plaintiffs concede that the market knew that the Cooperation Agreement had been announced, that Mr. Yao was a signatory, and that Mr. Yao

---

[2] *See In re Omnicom Grp.*, 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008) ("While a disclosure need not reflect every detail of an alleged fraud, it must reveal some aspect of it.") *aff'd*, 597 F.3d 501 (2d Cir. 2010); *see also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) ("These allegations do not amount to a corrective disclosure . . . because they do not reveal to the market the falsity of the prior recommendations."); *Cent. States Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 77 (2d Cir. 2013) ("As [defendant's] alleged [] misrepresentations are never connected to the disclosures responsible for the corrective stock price decline, the [] allegations are unavailing to plead loss causation.").

was a Canaan shareholder.  The MAV Report simply labeled the Cooperation Agreement a

"related-party" transaction—a self-serving characterization by a short-seller, not a corrective

disclosure.  *See Cent. States*, 543 F. App'x at 75 ("At most, the cited third-party articles and

reports expressed negative opinions [] based on information that was already publicly available.

Such disclosures are not 'corrective' for the purpose of pleading loss causation."); *In re

Omnicom*, 541 F. Supp. 2d at 552  ("A recharacterization of previously disclosed facts cannot

qualify as a corrective disclosure.").

## II.  THERE WERE NO MATERIAL MISREPRESENTATIONS OR OMISSIONS IN THE REGISTRATION STATEMENT.

Even if the alleged de minimis sales to Zhejiang Suanli, employment relationship with

Mr. Yao, or provisional agreement with Grandshores had not been disclosed before the IPO—

and they were—Plaintiffs' Opposition fails to establish that SEC rules and GAAP required those

plainly immaterial transactions to be disclosed in the Registration Statement.

### A.  The Zhejiang Suanli Sales Were Not Required to Be Disclosed.

Plaintiffs do not dispute that the Zhejiang Suanli sales represented a tiny percentage of

Canaan's consolidated products revenue or that Canaan's directors owned only an indirect sub-

10% interest in Zhejiang Suanli.  The Zhejiang Suanli sales were thus plainly immaterial and

disclosure was not required.[3]  (Mot. at 9–13.)  In an attempt to overcome the clear immateriality

of sales totaling just 0.07% of Canaan's consolidated products revenue, the Opposition steers the

Court down a regulatory rabbit hole of inapplicable rules.

---

[3] *See Peifa Xu v. Gridsum*, 2021 WL 773002, at *9 (S.D.N.Y. Feb. 23, 2021) (dismissing Section 11 claim, holding that "materiality analysis must be made in the context of the company's 'total operations.'"), citing *Tabak v. Canadian Solar Inc.*, 549 Fed. App'x. 24, 27 (2d Cir. 2013) (allegedly omitted facts must be "material in light of [company's] overall financial picture.").

First, Plaintiffs invoke Item 404, Opp. at 18, ignoring that Item 404's disclosure requirements expressly exempt transactions where the related party's ownership interest is less than 10%. (Mot. at 12.) Plaintiffs argue that "egregious circumstances" make these transactions material because Mr. Kong allegedly continued to engage in Bitcoin-related business through Zhejiang Suanli, and Canaan's sales continued in 2018 and 2019. (Opp. at 17, 19.) But Mr. Kong's interest in Bitcoin has no bearing on the 2017 Zhejiang Suanli sales' materiality. And the allegation of post-2017 transactions between Canaan and Zhejiang Suanli appears only in the Opposition and is unsupported by any factual citation. But even if the sales had continued, Plaintiffs' claim is based solely on the omission of Zhejiang Suanli's 2017 sales. (AC ¶ 7.) Second, Plaintiffs attempt to disguise that Item 7.B did not require disclosure because Messrs. Kong and Sun's combined interest in Zhejiang Suanli was less than 10%, the threshold to presume significant influence. (Mot. at 13–14.) Plaintiffs assert that because Kong and Sun had significant control over Zhejiang Shubei, which owns 10% of Zheijang Suanli, Zhejiang Suanli is an enterprise under common control with Canaan. (Opp. at 16.) But that ignores basic math— 50% ownership of a company with a 10% interest in Zheijiang Suanli is an indirect 5% interest. Neither Kong nor Sun has control over Zhejiang Suanli, directly or indirectly. Third, Plaintiffs misleadingly cite the Public Transfer Agreement filed by Hangzhou Canaan for the proposition that Zhejiang Suanli is a related party that needed to be disclosed. (Opp. at 17.) But the Public Transfer Agreement disclosures were made under Chinese law—the Accounting Standards for Enterprises No. 36 – Disclosure of Affiliated Parties—which, unlike Item 7.B, does not have exemptions for materiality or percentage ownership. Supp. Cantor Decl. ¶ 3, Ex. 11.

**B. Yao Yongjie's Supposed Employment Was Not a Related-Party Transaction Under SEC Rules or GAAP.**

Plaintiffs' Opposition makes clear that the related-party transaction involving Mr. Yao was merely that he was allegedly employed as a salesman by Canaan, not any specific sales that might have been made. But even leaving aside the near-total lack of plausible allegations that Mr. Yao was actually employed as a salesman, much less in charge of international sales (Mot. at 14–15), Plaintiffs fail to explain why that would be a material fact that needed to be disclosed. There are no allegations that Mr. Yao received excessive compensation; the AC simply alleges he received unspecified salary and commissions, making it impossible to conclude that these payments were material. Plaintiffs attempt to divert attention away from this obvious pleading failure by pointing out that Canaan's international sales amounted to 20% of Canaan's total revenue at the time of the IPO. (Opp. at 10.) But that is a non sequitur. Plaintiffs do not allege that Mr. Yao was Canaan's only international salesperson, much less that all of Canaan's international sales were related-party transactions.[4]

Plaintiffs exacerbate their pleading failure by ignoring the applicable exceptions to disclosure under SEC rules and GAAP. First, SEC guidance dictates that a transaction with an officer or director of a wholly owned subsidiary—who is not an officer or director of the parent and holds only a nominal amount of the parent's shares—does not need to be disclosed under Item 404. (Mot. at 17.) Second, ASC 850 specifically carves out compensation arrangements from disclosure. (Mot. at 17.) Plaintiffs misleadingly cite ASC 850-10-05-4.b as requiring

---

[4] Mr. Yao's departure from Hangzhou Canaan's Board of Supervisors in May 2018 further demonstrates that his alleged employment was not a material fact when Canaan went public in November 2019. Plaintiffs object to Canaan introducing an English translation of Hangzhou Canaan's corporate record verifying that Mr. Yao left this position in May 2018. But this exhibit is proper, because it is a Chinese government record and "[c]ourts routinely take judicial notice of such governmental records." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015). For completeness of the record, the Chinese version of this exhibit is attached as Supp. Cantor Decl. ¶ 3, Ex. 10.

7

disclosure of Mr. Yao's alleged position.  But that provision requires disclosure only of "services received or furnished, such as accounting, management, engineering, and legal services."  This reference to third-party services does not create an exception to ASC 850's exemption for salaries or commissions paid to a registrant's employees.  Third, Mr. Yao does not meet Item 7.B's 10% threshold for "significant influence" over Canaan, nor was he part of key management.[5]  (Mot. at 17.)

**C.  The Grandshores Cooperation Agreement Was Not Required to Be Disclosed.**

Defendants were not required to disclose the provisional and nonbinding Cooperation Agreement that, as Plaintiffs concede, Opp. at 23, resulted in no sales.  Plaintiffs' Opposition does not identify any financial information that was rendered false or misleading by the omission of the Cooperation Agreement from the Registration Statement.  (Mot. at 18.)  Further, neither Item 5(D) nor Item 7.B required disclosure of the Cooperation Agreement, which was not binding or even concrete about its potential financial impact on Canaan.  (Mot. at 20.)  Indeed, Plaintiffs do not even attempt to establish that disclosure was required under Item 5(D).  As to Item 7.B, Plaintiffs selectively quote from the Cooperation Agreement press release, making it seem as if only the paperwork needed finalization.  (Opp. at 14.)  The complete press release, however, reflects the tentativeness and ambiguity of the proposed framework, noting that it could be a purchase or a distribution agreement and that the aggregate amount would not exceed $150 million through December 31, 2020, but setting no other specific terms.  Cantor Decl. ¶ 3 Ex. 8.

---

[5] Plaintiffs' reliance on *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 462, 488 (S.D.N.Y. 2006), a Section 10(b) case, is entirely misplaced.  The case does not discuss Item 7.B and does not involve allegedly undisclosed related-party transactions.  Indeed, the Court seems to have been simply adopting the plaintiffs' allegation in referring to "related-party transactions."  *Id.* at 487-88.

## III. PLAINTIFFS' SECTION 10(B) CLAIM FAILS.

Plaintiffs' Section 10(b) claim fails for the same reasons as their Section 11 claim: Plaintiffs cannot establish materiality or loss causation.[6]  And because the allegedly omitted facts were all publicly disclosed, Plaintiffs also cannot adequately allege reliance, dooming their Section 10(b) claim.  Plaintiffs do not dispute that the *Affiliated Ute* reliance presumption does not apply where, as here, none of the alleged omissions were material.  (*See* Mot. at 22.) Plaintiffs also cannot invoke the fraud-on-the-market reliance presumption, because the alleged related-party transactions were publicly disclosed and, thus, the market did not rely on the alleged omissions.  *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 149 (2008) (affirming dismissal of Section 10(b) claim because "deceptive acts were not communicated to the investing public during the relevant times" and thus fraud-on-the-market presumption did not apply).  And reliance allegations are not plausible where the alleged corrective disclosure was unrelated to the alleged omissions.  *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *16 (N.D. Cal. Dec. 22, 2016) (holding defendants successfully rebutted reliance presumption where the alleged corrective disclosures were unrelated to the allegations).

Plaintiffs also fail to plead scienter.  As an initial matter, Plaintiffs' Opposition relies on an erroneous scienter standard, claiming to have adequately alleged facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness."  (Opp. at 22.)  But the case Plaintiffs cite for this standard, *Novak v. Kasaks*, does *not* permit pleading scienter based on "conscious misbehavior or recklessness" where the allegations are "GAAP violations or accounting irregularities, standing alone"; such allegations must be "coupled with evidence of

---

[6] Indeed, Canaan's loss causation argument applies with even greater force to Plaintiffs' Section 10(b) claim, for which loss causation is an element. *See Monroe Cty. Employees' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 357 (S.D.N.Y. 2014) (granting motion to dismiss Section 10(b) claim where public disclosure "severed the causal link between the alleged misconduct and plaintiffs' economic harm").

9

corresponding fraudulent intent."  216 F.3d 300, 309 (2d Cir. 2000); *see also In re Perrigo Co. PLC Sec. Litig.*, 2021 WL 517441, at *3 (S.D.N.Y. Feb. 10, 2021) (holding plaintiff could not state a securities fraud claim by "conflating evidence of a GAAP violation with evidence of scienter").  Applying the correct scienter standard, Plaintiffs' Section 10(b) claim fails because the AC includes no allegations of actual fraudulent intent.  And Plaintiffs' Opposition simply argues, incorrectly and without support, that Canaan's alleged knowledge of the omitted facts constitutes scienter.

Further, "because the plaintiffs allege fraudulent omissions, rather than false statements, it is especially important to rigorously apply the standard for pleading intent."  *In re GeoPharma, Inc. Sec. Litig.,* 411 F. Supp. 2d 434, 437 (S.D.N.Y.2006).  Plaintiffs do not meet that burden. That the alleged related-party transactions were in the public domain and that Canaan disclosed the alleged related-party transactions in China and Hong Kong "support[s] an inference against scienter that is far stronger than the competing inference that the plaintiffs suggest," because "[t]he market's access to this information [] supports a compelling inference that any failure to disclose occurred because the defendants reasonably believed that no further disclosure was required."  *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013), *aff'd,* 566 F. App'x 93 (2d Cir. 2014).  And it was Grandshores, not Canaan, that issued the press release—further evidence that Canaan did not view it as material.

## CONCLUSION

For all the foregoing reasons and the reasons described in the Motion, the Court should grant Canaan's Motion and dismiss Plaintiffs' AC in its entirety with prejudice.

Dated: March 8, 2021
       New York, New York

Respectfully submitted,

/s/ *Daniel L. Cantor*

Daniel L. Cantor
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

William K. Pao (*pro hac vice*)
Meg K. Lippincott
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

*Attorneys for Defendant Canaan, Inc.*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Susanna M. Buergel
Audra J. Soloway, Esq.
Yahonnes Cleary, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
sbuergel@paulweiss.com
asoloway@paulweiss.com
ycleary@paulweiss.com

*Attorneys for Defendants Citigroup Global Markets
Inc., China Renaissance Securities (Hong Kong)
Limited, Galaxy Digital Partners LLC, Huatai
Financing Holdings (Hong Kong) Limited, Tiger
Brokers (NZ) Limited, and ViewTrade Securities, Inc.*

11