UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

BOLUKA GARMENT CO., LIMITED,
et al., *individually and on behalf of all
others similarly situated*,

                           Plaintiffs,

            -v-

CANAAN INC., et al.,

                           Defendants.

20-CV-7139 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    Boluka Garment Co., Limited ("Boluka"), and Hongkuo Tang, individually and on behalf of all others similarly situated, bring suit against Canaan Inc., five of its senior executives, and a number of companies involved in underwriting its initial public offering (together, "Defendants"), alleging violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants have moved to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is granted.

**I.    Background**

    The following facts, drawn from the amended complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 51 ("AC").)

    Canaan Inc., a Cayman Islands company headquartered in China, designs and manufactures computer hardware used for mining Bitcoin. (AC ¶ 2.) Between 2016 and 2018, Canaan made three unsuccessful attempts to go public on various Asian stock exchanges, each time abandoning its plans after regulatory scrutiny. (AC ¶¶ 38-41.) Canaan then set its sights on the United States. On November 21, 2019, after filing the relevant paperwork with the U.S.

Securities and Exchange Commission, Canaan made an initial public offering of ten million shares on the Nasdaq Global Market.  (AC ¶¶ 52, 53.)

On February 20, 2020, a short seller using the pseudonym Marcus Aurelius published an online report accusing Canaan of deceptive business practices.  (AC ¶ 8.)  In the report, Aurelius claimed that Canaan had inflated its customer base, overstated its financial prospects, and failed to disclose certain related-party transactions between the company and its executives or major shareholders.  (*See* Dkt. No. 56-4.)  The day the report was published, the value of Canaan's stock fell more than 6.8 percent.  (AC ¶ 8.)

In the wake of the report, Lead Plaintiffs Boluka and Tang ("Plaintiffs") brought this action[1] on behalf of those who bought or otherwise acquired Canaan securities between November 20, 2019, and February 20, 2020, alleging that Defendants omitted material information from Canaan's registration statement — the set of documents a company must file with the SEC before proceeding with a public offering — and seeking remedies under the Securities Act and the Exchange Act.  (AC ¶ 1.)  In particular, Plaintiffs allege that the registration statement failed to disclose (1) that Yongjie Yao, who held 8.8 percent of Canaan's total shares, also served as a senior executive in charge of Canaan's international sales and marketing; (2) that Grandshores Technology Group Limited ("Grandshores"), a company controlled by Yao, had announced a "strategic cooperation framework agreement" to purchase or distribute Canaan blockchain equipment worth up to $150 million; and (3) that Zhejiang Suanli

---

[1] The initial complaint was filed on March 4, 2020, in the District of Oregon, listing Canaan shareholder Philippe Lemieux as lead plaintiff.  (*See* Dkt. No. 1.)  On June 2, 2020, Judge Mosman appointed Boluka and Tang as lead plaintiffs in Lemieux's stead.  (Dkt. No. 20.) On August 31, 2020, Judge Mosman granted Canaan's motion to change venue, transferring the action to this Court, and Plaintiffs filed the operative complaint on October 7, 2020.  (Dkt. No. 39; AC.)

Network Science and Technology Company Ltd. ("Zhejiang Suanli"), a company controlled in part by two of Canaan's directors, Defendants Jianping Kong and Qifeng Sun, had purchased roughly $149,697 worth of Canaan products between January and April 2017. (AC ¶¶ 5-7.) Defendants have filed a motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6). (*See* Dkt. No. 54.)

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Plaintiffs alleging securities fraud claims, however, must satisfy "heightened pleading requirements" to withstand a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting" that fraud. This means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). The particularity requirement of Rule 9(b) applies to claims brought under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). It also applies to claims brought under Section 11 of the Securities Act "insofar as the claims are premised on allegations of fraud." *Id.* at 171.

**III.   Discussion**

Plaintiffs allege that Defendants violated Section 10(b) and Section 20(a) of the Exchange Act, as well as Section 11 and Section 15 of the Securities Act, by failing to disclose three related-party transactions in their SEC filings.  (AC ¶¶ 1, 5-7.)

    **A.   Yao and Grandshores**

The Court begins by grouping together two of the three claims: (1) Canaan's failure to disclose shareholder Yao's position as senior executive of Canaan's international sales and marketing, and (2) Canaan's failure to disclose the related-party nature of its dealings with Zhejiang Suanli.  (*See* AC ¶¶ 5, 7.)

        **1.   Section 10(b) of the Exchange Act and Rule 10b–5**

In connection with the purchase or sale of a security, Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit "mak[ing] any untrue statement of a material fact" or "omit[ting] to state a material fact necessary in order to make the statements made … not misleading."  17 C.F.R. § 240.10b-5.  To state a claim under these provisions, a plaintiff must establish "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or a sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

Defendants argue that Plaintiffs have failed to plead (1) a material omission, (2) scienter, and (3) loss causation.  (*See* Dkt. No. 55 at 28.)  The Court begins with the third of these arguments.  If Defendants have failed to plead loss causation, the Court need not proceed further.  *See, e.g.*, *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (affirming dismissal where claim failed to satisfy the loss causation requirement under Section 10(b) and Rule 10b–5); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 365 (S.D.N.Y. 2008)

(dismissing Section 10(b) and Rule 10b-5 claims upon holding that plaintiff failed to plead loss causation).

"Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (noting that securities statutes exist "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause"). To plead loss causation, a plaintiff must "allege not only that its loss was foreseeable, but also that the alleged misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). "In its simplest form, this may be achieved by alleging that the market reacted negatively to a corrective disclosure, which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted." *Id.* (internal quotation marks and citation omitted). A plaintiff may also plead loss causation by alleging that "a defendant's misstatements or omissions concealed a risk that later materialized to cause the plaintiff's loss." *Id.*

Here, Plaintiffs' theory of loss causation flows from an alleged corrective disclosure: the release of the Aurelius report.[2] In their telling, the report "expos[ed] the problems arising from

---

[2] Defendants suggest that Plaintiffs cannot plead loss causation based on a report written by an anonymous short seller with a financial incentive to mislead investors. (*See* Dkt. No. 55 at 31.) But there is no requirement that a corrective disclosure come from a particular source, "take a particular form[,] or be of a particular quality." *In re Winstar Commc'ns*, No. 01-CV-3014, 2006 WL 473885, at *14 (S.D.N.Y. Feb. 27, 2006). A short seller's report can constitute a corrective disclosure so long as "the report reveals accurate information" exposing a company's misstatements or omissions. *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30

[Canaan's] related-party transactions," which then caused a roughly 6.8 percent dip in the value of Canaan's stock. (AC ¶ 92.) But the report said nothing about Yao's alleged role as a senior executive, nor did it include any information about Zhejiang Suanli's alleged purchase of nearly $150,000 worth of Canaan products in 2017. (*See* Dkt. No. 56–4.) Defendants therefore argue that "Plaintiffs have no basis to attribute Canaan's drop in stock price to the omission of these facts from the Registration Statement." (Dkt. No. 55 at 27.)

Plaintiffs respond that the wrongdoing described in the report — which "accused Canaan very generally of failing to disclose related-party transactions" — is broad enough to encompass the claims regarding Yao and Zhejiang Suanli. (Dkt. No. 57 at 27.) The report stated, for example, that "[t]ransactions with related parties and/or sham entities have been a hallmark of … fraudulent US-listed Chinese companies," and that Canaan used related-party transactions to "boost[] sales prior to [its] Chinese listing attempts." (Dkt. No. 56–4 at 5-6.) For the purposes of establishing loss causation, however, these general accusations fall short. Although "a plaintiff may plead loss causation without alleging a disclosure that precisely mirrors the substance of a prior undisclosed fraud," the disclosure must nevertheless "reveal to the market some part of the truth regarding the alleged fraud." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 285 (S.D.N.Y. 2008). Broadly accusing "US-listed Chinese companies" of fraudulent behavior reveals nothing about Canaan's alleged failure to disclose Yao's role in the company or the related-party nature of the company's dealings with Zhejiang Suanli. The same is true of the report's claim that related-party transactions "boosted sales prior to [Canaan's] Chinese listing attempts." In context, that statement refers specifically to Canaan's relationship

---

(S.D.N.Y. 2015); *see also In re Winstar*, 2006 WL 473885, at *12-15 (holding that plaintiffs had adequately alleged loss causation based on short-seller report that the company had insufficient cash flow to fund its operations and had engaged in questionable accounting practices).

with two entities: (1) Hangzhou Weitui Information Technology Company, a firm controlled by Canaan executives Kong and Sun, and (2) Shimian, a Canaan customer founded in 2016 by employees of a Canaan subsidiary. (*See* Dkt. No. 56–4 at 6-7.) It does not refer to Yao or Zhejiang Suanli. Plaintiffs attempt to characterize the related-party transactions identified in the report — Canaan's failure to disclose the Grandshores agreement, and its failure to disclose the related-party nature of its dealings with Hangzhou Weitui and Shimian — as "part of the same overarching fraudulent scheme" as the transactions involving Yao and Zhejiang Suanli. (Dkt. No. 57 at 28.) But this is a stretch. The closest the complaint comes to alleging an "overarching fraudulent scheme" is noting that Canaan's SEC filings contained "omissions of a similar nature" to the ones regulators had flagged when the company attempted to go public in Asia. (AC ¶ 4.) Without more, however, these alleged similarities are not enough to suggest a sweeping scheme to hide related-party transactions from investors.

At least with respect to the claims about Yao and Zhejiang Suanli, then, the Aurelius report did not "disclose the information that the [complaint] describes." *In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 367 (S.D.N.Y. 2015). These claims must therefore be dismissed under Section 10(b) and Rule 10b–5 for failure to establish loss causation. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 338-39 (S.D.N.Y. 2012) (finding that plaintiff had not adequately alleged loss causation where the corrective disclosure said nothing about defendant's "general accounting policies and practices," the subject of the fraud alleged in the complaint).

### 2. Section 11 of the Securities Act

To state a claim under Section 11 of the Securities Act, a plaintiff must allege that: (1) "she purchased a registered security," (2) "the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11," and (3) "the registration statement contained

7

an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 414 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

Unlike claims under Section 10(b) of the Exchange Act, Section 11 claims do not require plaintiffs to plead loss causation. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 572 (S.D.N.Y. 2009) ("[I]t is unnecessary to plead loss causation to maintain claims under Sections 11 and 12."); *Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007) ("Loss causation … is not an element of a § 11 claim under the Securities Act."). But Section 11(e) of the Securities Act does provide for a "negative causation" affirmative defense to claims that a registration statement was materially misleading:  A plaintiff cannot recover damages for losses that the defendant proves did not result from the alleged omission or misrepresentation. *See* 15 U.S.C. § 77k(e); *Akerman v. Oryx Commc'ns Inc.*, 810 F.2d 336, 341 (2d Cir. 1987) ("[S]ection 11(e) expressly creates an affirmative defense of disproving causation.").  "As an affirmative defense, the burden of disproving loss causation falls on defendants." *Levine*, 508 F. Supp. 2d at 272.

Because analyzing causation can be a fact-intensive inquiry, "the affirmative defense of negative causation is generally not properly raised on a Rule 12(b)(6) motion." *In re Giant*, 643 F. Supp. 2d at 572; *Levine*, 508 F. Supp. 2d at 272-3 ("[N]egative causation is generally established by a defendant on a motion for summary judgment or at trial.").  However, "[w]here it is apparent from the face of the complaint that the plaintiff cannot recover her alleged losses, dismissal of the complaint pursuant to [Rule] 12(b)(6) is proper." *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 253 (S.D.N.Y. 2003).

8

That is the case here.  As explained above, *see supra* III.A.1, the alleged corrective disclosure — the Aurelius report — says nothing about Yao's position as a senior executive or Canaan's relationship with Zhejiang Suanli.  As a result, Plaintiffs' losses cannot be tied to the omission of these facts from Defendants' SEC filings, making dismissal appropriate at this stage.  *See In re Merrill Lynch*, 272 F. Supp. 2d at 255 (dismissing Section 11 claims under Rule 12(b)(6) where, as here, plaintiff's alleged loss "occurred *before* public disclosure of the allegedly concealed information"); *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 417 (2d Cir. 2011) (affirming Rule 12(b)(6) dismissal of Section 11 claim where lack of causation was "apparent from the face of the complaint"); *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419 (S.D.N.Y. 2009) (holding that Section 11 claims were subject to Rule 12(b)(6) dismissal where the alleged corrective disclosure did "not speak at all" to the alleged fraud).

The Section 11 claims regarding Yao and Zhejiang Suanli are therefore dismissed.

**B.     Grandshores**

The Court next considers Plaintiffs' claim that Canaan failed to disclose a $150 million deal it made with Grandshores, a company controlled by Yao.  (*See* AC ¶ 6.)  Unlike Plaintiffs' other two claims, this one does appear in the Aurelius report.  Instead of beginning with loss causation, however, the Court first considers whether the Grandshores omission is actionable under the securities laws; if not, the Court need not proceed further.  For an omission to be actionable under Section 10(b) of the Exchange Act or Section 11 of the Securities Act, a plaintiff must allege both that the defendant had a duty to disclose the information, and that the omitted information would have been material to investors.  *See In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 560 (S.D.N.Y. 2011) (holding that an omission is actionable under Section 10(b) only if "the omitted fact is material" and "the speaker had a duty to disclose the omitted

9

fact"); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 760 (S.D.N.Y. 2012) (same with respect to Section 11).

The test for materiality is the same under both Section 10(b) and Section 11. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 376 (S.D.N.Y. 2011). An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re Britannia*, 665 F. Supp. 2d at 413 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). Materiality is a "mixed question of law and fact," often requiring a fact-intensive inquiry into "the inferences a reasonable shareholder would draw from a given set of facts." *Id.* (internal quotation marks and citation omitted). It is therefore "not ordinarily a question appropriate for resolution as a matter of law in a motion to dismiss." *Id.* A court may conclude that an alleged omission is immaterial as a matter of law, however, when the omission is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] importance." *Id.* (internal citation omitted).

Here, the alleged omission concerns an October 2019 agreement under which Grandshores announced its intent to purchase or distribute up to $150 million in blockchain equipment from Canaan by the end of 2020. (*See* Dkt. No. 56–8.) Plaintiffs argue that Defendants had a duty to disclose the deal under two provisions of SEC Form 20-F: Item 5(D), under which companies are asked to disclose "any known trends, uncertainties, demands, commitments[,] or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity[,] or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition"; and Item 7.B.1, under which companies are

asked to disclose the "nature and extent of any transactions or presently proposed transactions which are material to the company or [to a] related party."  (*See* AC ¶¶ 78, 86.)

The parties disagree as to whether Canaan had a duty to disclose the Grandshores deal under these provisions.  (*See* Dkt. No. 55 at 26.)  The Court need not resolve that question, however, because the deal was not material — meaning that even if Canaan did have an affirmative duty to disclose the deal, its failure to do so is not actionable under Section 10(b) or Section 11.  To determine whether a given event is material, a court must balance "both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic*, 485 U.S. at 238 (internal citation omitted).  Here, the agreement in question was non-binding, meaning, as Defendants argue in their briefing, "that the probability of any specific impact on Canaan's financials at the time of the Registration Statement's filing was so low or uncertain that it rendered the transaction immaterial."  (Dkt. No. 55 at 24-25.)  Indeed, the press release announcing the agreement made clear that the deal was only a "strategic cooperation framework" that did not "constitute a legally binding contract or otherwise give rise to legally enforceable rights and obligations."  (Dkt. No. 56–8 at 3.)  The anticipated magnitude of the deal was also ambiguous.  Aside from a vague assertion that Grandshores intended to purchase or distribute "not more than" $150 million of Canaan equipment, the press release did not specify exactly how much money Grandshores would end up spending and emphasized that "[a]ll transactions contemplated under the Agreement" were "subject to the signing of a definitive agreement by [Grandshores] and Canaan."  (Dkt. No. 56–8 at 2-3.)  Given the speculative nature of the agreement, no reasonable investor would have "consider[ed] it important in deciding how to invest."  *S.E.C. v. Thrasher*, 152 F. Supp. 2d 291, 298 (S.D.N.Y. 2001) (cleaned up).  In fact, had Canaan disclosed the agreement in its SEC

11

filings, the disclosure might have misled investors by giving "the false impression that Canaan expected to receive substantial revenue from Grandshores even though the agreement was provisional and nonbinding" — especially since no sales ever materialized from the deal  (Dkt. No. 55 at 25.)

In light of Plaintiffs' failure to plead the materiality of the Grandshores agreement, the claim is dismissed under both Section 10(b) and Section 11.

### C. Claims under Section 20(a) and Section 15

Plaintiffs also bring claims under Section 20(a) of the Exchange Act and Section 15 of the Securities Act.  These sections are "substantially the same." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 233 (S.D.N.Y. 2004).  To state a claim under both provisions, a plaintiff must successfully allege an "underlying primary violation." *Id*.  Plaintiffs have not done so here.  Since their Section 10(b) and Section 11 claims — the primary violations alleged — fail as a matter of law, their claims under Section 20(a) and Section 15 must also be dismissed.  *See, e.g.*, *City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, No. 19-CV-10825, 2021 WL 212337, at *11 (dismissing Section 20(a) claims where Section 10(b) claim failed as a matter of law); *Singh v. Schikan*, 106 F. Supp. 3d 439, 452 (S.D.N.Y. 2015) (same with respect to Section 11 and Section 15).

### D. Leave to Amend

Plaintiffs have requested leave to amend in the event that their claims are dismissed.  (Dkt. No. 57 at 31.)  Courts "should freely give leave [to amend] where justice so requires." *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (quoting Fed. R. Civ. P. 15(a)(2)).  This is especially so in cases involving securities fraud.  *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) ("Leave to amend should be freely

granted, especially where dismissal of the complaint was based on Rule 9(b)."). Accordingly, Plaintiffs' request for leave to amend is granted.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.[3]

Plaintiffs may file a letter motion requesting leave to file a second amended complaint, provided that they do so on or before August 6, 2021. The letter motion shall explain how a second amended complaint would state a claim consistent with this Opinion and Order, and shall append a draft of the proposed complaint indicating the changes from the current operative one. If Plaintiffs choose not to seek leave to amend, they are directed to so indicate in a letter filed by the same date. If Plaintiffs choose not to amend, or do not file a letter within the indicated time limit, the Court will enter final judgment and direct the Clerk of Court to close this case, permitting an appeal.

The Clerk of Court is directed to close the motion at Docket Numbers 54 and 61.

SO ORDERED.

Dated: July 8, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[3] Plaintiffs have also filed a letter motion to strike a number of Defendants' exhibits or, in the alternative, to convert the motion to dismiss into a motion for summary judgment. (*See* Dkt. No. 61.) This Opinion and Order does not rely on any of the exhibits at issue. Accordingly, Plaintiffs' motion is denied as moot.