

**The Rosen Law Firm**
I N V E S T O R   C O U N S E L

Jing Chen, Esq.
jchen@rosenlegal.com

August 6, 2021

**VIA ECF**
Hon. J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, New York, NY 10007

Re: *Boluka Garment Co., Limited, et al v. Canaan, Inc. et al* – Case #: 1:20-cv-07139-JPO

Your Honor:

Lead Plaintiffs Boluka Garment Co., Limited and Hongkuo Tang ("Plaintiffs") respectfully submit this letter motion for leave to file their proposed Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"), amending the Amended Class Action Complaint for Violations of the Federal Securities Law. ("AC", Dkt. 51).  A redlined version of the proposed SAC against the AC is attached hereto as Exhibit A and a clean version is attached as Exhibit B.

The AC alleged that in its Registration Statement, Defendant Canaan, Inc. ("Canaan") failed to disclose three categories of related party transactions, violating Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Securities Exchange Act: (i) that Canaan entered into a strategic cooperation framework agreement with Grandshores Technology Group Limited ("Grandshores"), a company controlled by Yongjie Yao, a principal shareholder of Canaan, to purchase up to $150 million Canaan blockchain equipment ("Cooperation Agreement"); (ii) that in 2017-2019, Yao served as a senior executive at Canaan and provided sales and management services to Canaan as the head of its international sales ("Yao's Executive Position and Services"); (iii) that Zhejiang Suanli Network Science and Technology Company Ltd. ("Zhejiang Suanli"), a company controlled in part by two of Canaan's directors, Defendants Jianping Kong and Qifeng Sun, had purchased roughly $149,697 worth of Canaan products between January and April 2017 and continued to make purchases ("Zhejiang Transactions"). In its Opinion and Order dismissing the AC dated March 31, 2021 (the "Order", Dkt. 66), the Court ruled that Plaintiffs had not sufficiently alleged materiality as to the Cooperation Agreement and loss causation/lack of negative causation as to Yao's Executive Position and Services and Zhejiang Transactions.

In the proposed SAC, Plaintiffs have cured the deficiencies identified by the Court and significantly bolstered their allegations against Defendants. The Court should grant Plaintiffs leave to file the proposed SAC because amendment is neither futile nor prejudicial against Defendants.

I.    **THE SAC ADDRESSES THE DEFICIENCIES IN THE AC**

a.    ***The Cooperation Agreement***
In the Order, the Court held that Plaintiffs had failed to allege materiality of the omission

**THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827**

of the Cooperation Agreement in the Registration Statement because the Cooperation Agreement was a non-binding framework that was vague in the dollar amount of the purchase. (Order at 11.) "Given the speculative nature of the [Cooperation] Agreement, no reasonable investor would have considered it important in deciding how to invest". (*Id*.)

To address the Court's finding, the SAC alleges that Grandshores, a company listed on the Hong Kong Stock Exchange ("HKEX"), acknowledged that the Cooperation Agreement was specific information material to its businesses and therefore disclosed it on the HKEX's website. HKEX is the world's largest exchange in terms of market capitalization and is regulated by various laws and regulations similar to those governing securities markets in the U.S. SAC ¶¶94-97. Under Hong Kong's Securities and Futures Ordinance ("SFO"), the primary law regulating its securities markets, an HKEX-listed company is required to disclose inside information, defined as "***specific*** information that … is not generally known to the persons who are accustomed or would be likely to deal in the listed securities of the corporation but would if generally known to them be likely to ***materially*** affect the price of the listed securities". SAC ¶94. The Securities and Futures Commission ("SFC") of Hong Kong, which enforces the SFO, provides in its *Guidelines on Disclosure of Inside Information* ("Guidelines") that a non-binding agreement should be disclosed "if there [is] a substantial commercial reality to such negotiations which goes beyond a merely exploratory testing of the waters and which is at a more concrete stage where the parties intend to negotiate with a realistic view to achieving an identifiable goal." SAC ¶96. The materiality test under the Hong Kong regulation is almost identical to the requirements here in the U.S., which requires consideration of, inter alia, "the anticipated ***magnitude*** of the event … in the context of the ***totality*** of the corporation's activity". *Id*.

Grandshores's mere disclosure of the Cooperation Agreement shows that the Cooperation Agreement was a material event to Grandshores. SAC ¶99. It was not a mere "vague hope or wishful thinking that a transaction will occur or come to fruition". SAC ¶96. And Grandshores's shareholders agreed, driving its stock price to open up 65.1% the day after the disclosure. SAC ¶100. Given both Form 20-F and Item 404 of Reg. S-K require disclosure of presently proposed transactions which are material to the related party (like Grandshores), Canaan was obligated to disclose the Cooperation Agreement. SAC ¶¶88,89.

The Cooperation Agreement was material to Canaan, too. The SAC alleges that based on the HKEX rules, that Grandshores disclosed the Cooperative Agreement shows that it is not speculative in nature but instead, had "a substantial commercial reality … where the parties intend[ed] to negotiate with a realistic view to achieving an identifiable goal". SAC ¶¶95,96. The SAC further alleges the Cooperation Agreement's materiality by showing that Yao is an important promoter in the global blockchain industry blessed with financial support from certain parts of the government. SAC ¶¶109. Indeed, that Canaan's stock price fell when the Marcus Aurelius Report revealed that the Cooperation Agreement was a related party transaction further confirms its materiality. SAC ¶111. The Cooperation Agreement is also material because it was part of Canaan's overall scheme to use undisclosed transactions to pump up its share price value for its IPO as discussed below. SAC ¶¶140-146.

b.      ***Yao's Executive Position and Services***
In the Order, the Court held that the AC failed to allege loss causation as to Yao's Executive

2

Position and Services to Canaan because the Marcus Aurelius Report did not mention Yao's role as a senior executive at Canaan. (Order at 6.) Nor did the AC sufficiently allege a scheme to hide related party transactions from investors. (Order at 7.)

To address the Court's finding, as to the Sec. 10(b) and 20(a) claims, the SAC bolsters its allegation of Canaan's scheme to pump up its IPO valuation by adding allegations that Canaan entered into a similar illusory cooperation agreement with Zhejiang Jingu Co. Ltd. ("Jingu"), also announced one day before Canaan announced it was pursuing an IPO on the Nasdaq. SAC ¶¶140-146. Canaan's joint venture agreement was bizarre because Jingu's business is manufacturing automotive wheels and tires. SAC ¶142. It struck the Shenzhen Stock Exchange, where Jingu trades, as bizarre, too. SAC ¶145. In response to that Exchange's questions interrogating the validity of the transaction, Jingu admitted that its CEO was a long-term close personal friend of Canaan's CEO. *Id*. Canaan's agreement with Jingu, in conjunction with the Cooperation Agreement, shows that Canaan was simply entering into agreements with companies run by insiders or their friends to pump up its stock price before its IPO. SAC ¶¶140,141,146.

Defendants scheme to pump up investor expectations for increased sales just prior to Canaan's IPO is also demonstrated by allegations found in the Marcus Aurelius report that Canaan's sales director gave a media interview in October 2019 claiming that Canaan would reach US$1 billion in sales in 2020 (Marcus Aurelius Report at pg.5). SAC ¶141. In the interview, Canaan's sales director claimed Canaan had already received purchase orders for 500,000 units and expected to have sales of over a million units in 2020 based on existing letters of intent. *Id.* The Grandshores Agreement and the Jingu agreement are one of these "letters of intent". *Id.* Thus, Canaan used these agreements to support its claim that it would reach US$1 billion in sales in 2020. SAC ¶¶102,103,141.

To bolster the claim regarding Yao's Executive Position and Services to Canaan, the SAC alleges the significance of international sales to Canaan and additional SEC rules. SAC ¶¶81,84.

## II.    THE COURT SHOULD GRANT LEAVE TO FILE THE SAC

Courts should freely give leave to amend "when justice so requires." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam). The Second Circuit has held that courts should be especially lenient in granting leave to amend in securities cases as they "combine[] a complex commercial reality with a long, multi-prong complaint". *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015)). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party ... [or] futility of the amendment" will prevent amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962). The "outright refusal to grant . . . leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the federal rules." *Foman*, 371 U.S. at 182.

A party opposing leave to amend must establish grounds to deny leave. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the

**THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827**

nonmovant of prejudice or bad faith." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). Mere delay, absent bad faith or undue prejudice, is not sufficient to deny the right to amend. *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

### a.     *Plaintiffs' Motion is Timely and Not the Result of Bad Faith of Dilatory Motive*

Courts consistently find that a party's effort to amend a complaint at the motion to dismiss stage is a valid reason to amend, and not one that constitutes bad faith, particularly where the matter arises under the heightened pleading standards of Rule 9(b) or the PSLRA. *In re Take-Two Interactive Securities Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008). Indeed, "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986). Accordingly, there is no undue delay, bad faith or dilatory motive, as Plaintiffs promptly moved for leave to amend after the dismissal.

### b.     *The Defendants Will Suffer No Prejudice*

"In determining what constitutes prejudice, courts consider whether the amended pleading would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute.'" *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 CV 3858 KMW JLC, 2012 WL 4513546, at *2 (S.D.N.Y. Oct. 1, 2012) (*quoting Block*, 988 F.2d at 350). Where, as here, a party seeks leave to amend before the parties have initiated discovery, courts in this circuit routinely find a lack of prejudice. See e.g. *Jt. Stock Co. v. Infomir LLC*, 16CIV1318GBDBCM, 2017 WL 2988249, at *1 (S.D.N.Y. Mar. 27, 2017) (finding lack of prejudice where discovery has not yet begun and no answer has yet been served). At best, the only prejudice that Defendants can plausibly articulate is that they will have to expend time and resources opposing this motion or in drafting motion to dismiss papers. But "the time, effort, and money that [the party opposing amendment] expended in litigating th[e] case" does not amount to "substantial prejudice … or even the lesser prejudice". *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (citing *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968) and *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). Additionally, in the Order, the Court allowed Plaintiffs to move for leave to amend on or before August 6, 2021. (Order at 13.) So Defendants have been on notice of Plaintiffs' likely intention to amend and cannot, therefore, claim they are surprised by such an amendment.

Thus, the Court should grant Plaintiffs leave to amend.

### c.     *Plaintiffs' Proposed Amendments are Not Futile*

An amendment is futile where it cannot survive a motion to dismiss. *Lucente v. Intl. Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). However, "[w]here … the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *In re Initial Pub. Offering Securities Litig.*, 214 F.R.D. 117, 125 (S.D.N.Y. 2002).

In deciding a motion to dismiss under Rule 12(b)(6), the district court must "treat the complaint in the light most favorable to the Plaintiffs, and to draw reasonable inferences in the Plaintiffs' favor". *Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) (vacating the dismissal order for "failing to treat the complaint in the light most favorable to the Plaintiffs").

4

The SAC sufficiently alleges the materiality of the Cooperation Agreement for purposes of both Sections 11 and 10(b) claims by adding the HKEX rules and Grandshores stock price movements. As shown in the HKEX rules, Grandshores disclosed the Cooperation Agreement **because** it, was specific, concrete and material to Grandshores. The materiality issue here is analogous to Second Circuit' decision in *Christine Asia.* There, although the Chinese government issued a non-binding administrative guidance to Alibaba, the Second Circuit ruled that such administrative guidance was highly material to Alibaba investors given the potential, but not definitive, huge fines that Alibaba might have faced at the time of administrative guidance, even though Alibaba was in fact never fined in the hindsight. *Christine Asia, at* 22–23. The Second Circuit specifically pointed out the 13% stock price drop upon the corrective disclosure to support the materiality of the non-binding administrative guidance. *Id.* The instant case here is even more favorable to Plaintiffs than *Christine Asia* as Grandshores had acknowledged the materiality of the Cooperation Agreement by disclosing it pursuant to HKEX rules.

The sharp rise of Grandshores' stock price further boosts the materiality. *See Sec. & Exch. Comm'n v. Aly*, No. 16 CIV. 3853 (PGG), 2018 WL 1581986, at \*14–15 (S.D.N.Y. Mar. 27, 2018) (that the market reacted to a filing of a Schedule 13D in anticipation of a potential tender offer or merger proposal with 26% price increase showed materiality); *see also United States v. Martoma*, 993 F. Supp. 2d 452, 457–58 (S.D.N.Y. 2014) (in an efficient market, "the concept of materiality translates into information that alters the price of the firm's stock".); *In re Regeneron Pharms., Inc. Sec. Litig.*, No. 03 CIV.3111 RWS, 2005 WL 225288, at \*21 (S.D.N.Y. Feb. 1, 2005) (price drop upon the corrective disclosure supports materiality.)

Moreover, Plaintiffs' Section 11 claims specifically disclaim fraud[1] and therefore, easily meet the minimal requirements imposed by Rule 8's mere plausibility burden and Section 11's strict liability standard.

With the amendments, the SAC has sufficiently alleges materiality and hence is not futile. *See Union Carbide Corp. v. Siemens Westinghouse Power Corp.*, No. 99 CIV. 12003 (LMM), 2002 WL 31387269, at \*10 (S.D.N.Y. Oct. 23, 2002) (amendment is appropriate where it "is closely related to the original claim and is based on a similar set of operative facts."); *see also Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (a complaint may not properly be dismissed for immateriality "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.")

## III.    CONCLUSION

For the reasons stated herein, Plaintiffs' motion for leave to file the proposed SAC should be granted.

Respectfully submitted,
/s/ Jing Chen
Jing Chen, Esq.

cc:    All counsel of record by ECF

---

[1] *See* SAC ¶¶1, 121,132; *see also In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 149 (S.D.N.Y. 2015) (Oetken, J.) ("Because Plaintiff expressly disclaims any claims of fraud, these claims are not subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).")

5

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th of August 2021 a true and correct copy of the foregoing Letter Motion was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Jing Chen

6