

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number: 133.016-00001

August 27, 2021

**Daniel L. Cantor**
D: +1 212 408 2483
dcantor@omm.com

**VIA CM/ECF**

Honorable J. Paul Oetken, U.S.D.J.
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:    *Boluka Garment Co., Limited, et al. v. Canaan, Inc. et al., Case No. 1:20-cv-07139-JPO***

Dear Judge Oetken:

Defendants respectfully submit this letter in opposition to Plaintiffs' August 6 letter motion for leave to file a second amended complaint (the "proposed SAC").[1]  In its July 8, 2021 Opinion and Order, which dismissed Plaintiffs' amended complaint ("AC") for failing to plead any facts on which to base their far-fetched claims under Sections 10(b) and 20(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act, the Court instructed Plaintiffs to "explain how a second amended complaint would state a claim consistent with this Opinion and Order."  (Order at 13.) Plaintiffs do not and cannot.  Plaintiffs have once again failed to plead facts establishing that (i) the alleged non-disclosures concerning shareholder Yongjie Yao ("Yao")'s employment caused Plaintiffs' losses, or (ii) the allegedly undisclosed "cooperation" agreement between Canaan and Grandshores Technology Group Limited ("Grandshores") was a material fact that would have altered the total mix of information available to investors in Canaan's IPO.  Instead, Plaintiffs have returned to this Court with an even weaker case than the one this Court already rejected as "a stretch."  (Order at 7.)

First, Plaintiffs repeat their baseless assertion that Canaan—a global leader in the design and manufacture of Bitcoin mining machines—failed to disclose its supposed employment of Yao as a senior executive for international sales and marketing.  Not only would such information, even if true, have made little difference to investors in Canaan's IPO, but as the Court previously found, no purported "corrective disclosure" ever revealed Yao's alleged position to the market. (Order at 6.)  As a result, Plaintiffs still have failed to plead loss causation—a fatal defect that no amount of amendment can cure.

---

[1] Defendants are Canaan, Inc. ("Canaan"), Citigroup Global Markets Inc., China Renaissance Securities (Hong Kong) Limited, Galaxy Digital Partners LLC, Huatai Financing Holdings (Hong Kong) Limited, Tiger Brokers (NZ) Limited, and ViewTrade Securities, Inc.

Second, Plaintiffs again try to make hay of a provisional, non-binding "cooperation" agreement between Canaan and Grandshores that *never resulted in any sales*. As the Court previously recognized, the agreement was "speculative" and "ambiguous" and thus "not material." (Order at 11.) Plaintiffs' allegation that Grandshores itself decided to disclose this tentative cooperation agreement in a foreign stock market, based on its own interpretation of foreign reporting requirements, does not address, much less alter, the Court's conclusion—the agreement's supposed importance to *Grandshores* still does not translate into a material omission by *Canaan*.

In their proposed SAC, Plaintiffs have withdrawn a third claim that the Court likewise rejected: that Defendants should have disclosed a *de minimis* sale of Canaan products to Zhejiang Suanli, a company allegedly controlled, in part, by two Canaan directors. Indeed, Plaintiffs have removed all references to the Zhejiang Suanli transaction from the SAC. In its place, however, Plaintiffs introduce the even more attenuated assertion that an allegedly undisclosed cooperation agreement with Zhejiang Jingu Co. Ltd. ("Jingu") was a related-party transaction because Jingu's founder is a personal friend of Canaan's then-Director Jianping Kong. Replacing one transaction with an even more nebulous one—which Plaintiffs do not even allege rises to a Section 10(b) or Section 11 claim—is the definition of futility.

Given that Plaintiffs' proposed amendments would be futile, a final judgment dismissing this action should be entered in Defendants' favor.

**Discussion**

  **I.    Legal Standard.**

Leave to amend may be denied where the proposed amendment would be futile. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "[M]otions to amend should generally be denied in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Plaintiffs' August 6 letter motion confirms the futility of their proposed amendment.

  **II.   Plaintiffs still cannot plead loss causation, and cannot rebut a negative causation defense, for Yao's alleged position with Canaan.**

In the Order, the Court rejected any possibility that Plaintiffs could make out a securities claim based on Yao's alleged role with Canaan. In particular, the Court observed that the so-called "corrective disclosure" alleged by Plaintiffs—the short-seller MAV Report—clearly cannot establish a causal relationship between the claimed omissions and Plaintiffs' losses because the MAV Report "said nothing about Yao's alleged role as a senior executive." (Order at 5–6.) The Court also rejected Plaintiffs' argument that the MAV Report's "general accusations" about fraud at US-listed Chinese companies and references to other Canaan transactions were broad enough to establish loss causation. (*Id*. at 6.) Turning to Plaintiffs' fallback argument—that the transactions disclosed in the MAV Report were "part of the same overarching fraudulent

scheme" as Yao's undisclosed role and the now-unmentioned Zhejiang Suanli transaction—the Court rejected it as "a stretch," holding that Plaintiffs had failed to plead facts sufficient "to suggest a sweeping scheme to hide related-party transactions from investors." (*Id*. at 7.) The Court further held that these same pleading deficiencies demonstrated that Plaintiffs could not rebut Defendants' negative causation defense. (*Id.* at 9.)

Plaintiffs' attempt to cure the AC's deficiencies reflects a fundamental misunderstanding of the Court's causation holding. Because the MAV Report said nothing about Yao's position or Canaan's relationship with Zhejiang Suanli, the Court held that "Plaintiffs' losses cannot be tied to the omission of these facts from Defendants' SEC filings." (Order at 9.) Plaintiffs fail to address this fatal flaw—they still do not, and cannot, point to any corrective disclosure about Yao's alleged employment in the MAV Report or otherwise. Plaintiffs instead focus solely on the Court's "overarching fraudulent scheme" discussion, arguing that the proposed SAC now adequately alleges a "scheme to pump up" Canaan's IPO valuation through related-party transactions. (Letter Motion at 3.) Oddly, Plaintiffs claim to have strengthened their allegations despite having deleted any claim based on, and all references to, the supposedly related-party Zhejiang Suanli transaction. (*See* Letter Motion, Exh. A at 6–7, 17–18, 42–44.) In its place, Plaintiffs added only (i) two paragraphs of *publicly disclosed* information about Canaan's international sales and expansion plan (SAC ¶¶ 81, 84), and (ii) allegations that, shortly before the IPO, Canaan entered into a cooperation agreement with Jingu, a company Plaintiffs assert is a related party to Canaan because its founder is allegedly a "long-term close friend" of Defendant Jianping Kong (SAC ¶¶ 140-46). Plaintiffs, however, do not allege that Yao even had anything to do with Jingu. And, like the Zhejiang Suanli transaction, the Jingu transaction was not discussed in the MAV Report, which again precludes a finding of loss causation. In any event, replacing sparse allegations about one transaction with even more bare-bone allegations about another, which even Plaintiffs do not allege was the subject of any alleged fraudulent misrepresentation or omission, falls far short of alleging an "overarching fraudulent scheme." Finally, Plaintiffs' assertion in the Letter Motion that the alleged friendship between Canaan and Jingu executives creates a "related-party" transaction is unsupported and unavailing.[2] *See* 17 C.F.R. § 229.404 (extending the scope of related persons only to "immediate family member" or "any person (other than a tenant or employee) sharing the household" of a director, executive officer, or more than 5% beneficial owner of the registrant).

### III.   Plaintiffs still cannot establish the Grandshores agreement's materiality to prospective Canaan investors.

In the Order, the Court also concluded that the non-binding Grandshores cooperation agreement, which resulted in no sales, was immaterial and thus could not support a securities claim. (Order at 9-11.) Plaintiffs' attempt to revive its claims based on this agreement misreads the Court's holding. The Court recognized that "[t]he parties disagree as to whether Canaan

---

[2] Plaintiffs' Letter Motion—but not the proposed SAC—attempts to support their "fraudulent scheme" argument by suggesting that the Jingu transaction was "illusory" and "bizarre." (Letter Motion at 3.) But the very same article cited by Plaintiffs (SAC, ¶ 146, n.30) demonstrates the transaction's legitimate business purpose: to embrace the Chinese government's directive to develop additional uses for blockchain technology by using it to improve tracking of auto repair parts and maintenance records.

had a duty to disclose the Grandshores deal under" various SEC regulations, but it held that it "need not resolve that question, however, because the deal was not material—meaning that even if Canaan did have an affirmative duty to disclose the deal, its failure to do so is not actionable under Section 10(b) or Section 11." (Order at 11.)  Critically, the Court held that "[g]iven the speculative nature of the agreement, no reasonable investor would have 'consider[ed] it important in deciding how to invest.'" (Id. (citation omitted).)

Plaintiffs' Letter Motion ignores the Court's analysis completely, focusing instead on whether Hong Kong securities regulations required Canaan to disclose the Grandshores agreement.  But if the Court's ruling does not require delving into whether there is a duty to disclose under U.S. securities regulations, it certainly does not require delving into whether there is a duty to disclose under Hong Kong securities regulations.  Plaintiffs also rely on Grandshores' decision to disclose the agreement, claiming that this somehow demonstrates that the non-binding cooperation agreement was important for Canaan investors.  (Letter Motion at 2, 5.)  But the mere fact that Grandshores chose to tell its own shareholders about the agreement does not make it material to Canaan's shareholders.  While Grandshores may well have had its own reasons for publicly disclosing the agreement—Plaintiffs can only speculate as to Grandshores' motives—none of those reasons would speak to whether the agreement was material information about Canaan.  Indeed, Plaintiffs again fail to address the language in Grandshores' own securities filing in Hong Kong, which is incorporated by reference into the proposed SAC, confirming the tentative nature of that agreement:

> "The Agreement only provides a strategic cooperation framework between GS Weicheng and Canaan, and does not constitute a legally binding contract or otherwise give rise to legally enforceable rights and obligations. All transactions contemplated under the Agreement are subject to the signing of a definitive agreement by GS Weicheng and Canaan."[3]

This is precisely the language that previously led the Court to conclude that the agreement was too indefinite to be material to Canaan investors.  (Order at 11.)  Plaintiffs' guesswork about Grandshores' disclosure motivation does nothing to undermine that conclusion.  Moreover, the fact that the information was publicly available as a result of Grandshores' disclosure, if anything, undermines any argument by Plaintiffs that shareholders were defrauded because Canaan did not also separately disclose the agreement.

Plaintiffs' assertion that the Grandshores agreement's materiality is "confirmed" by the drop in Canaan's stock price after the MAV Report mentioned the agreement is not even colorable.  Indeed, if that were so, the materiality requirement would be eviscerated, and even inconsequential omissions that are followed by a stock drop would support securities law claims.  Contrary to Plaintiffs' reading, the case they cite, Christine Asia Co. v. Ma, 718 F. App'x 20 (2d Cir. 2017), did not hold that a stock-price drop alone is sufficient to establish materiality.  In Christine Asia Co., the Second Circuit held that Alibaba's alleged pre-IPO failure to disclose that, in a private meeting with the Alibaba, the Chinese government had threatened "huge repeating fines" against the company unless it ceased hosting a marketplace for counterfeit

---

[3] https://www1.hkexnews.hk/listedco/listconews/sehk/2019/1027/2019102700015.pdf

goods was a material omission.  *Id*. at 22.  The plaintiffs alleged that this concealed information was highly material because "the threat required Alibaba to choose between giving up an important source of its revenue or risking enormous fines, where either would have significant negative impact on Alibaba's revenues and on the success of its IPO."  *Id.*  The court then observed that the information's importance was "illustrated" by the 13% drop in Alibaba's stock price when it was ultimately disclosed four months after the IPO.  *Id*.  But the court did not hold that the stock-price drop alone established materiality.

Here, Plaintiffs do not allege any omission of similar information, and instead rely on alleged non-disclosure of an agreement that already had been disclosed to the investing public.  And even if Plaintiffs were able to show materiality through a drop in the stock price, which it cannot, the proposed SAC's own allegations demonstrate that the Grandshores agreement was just one of many issues discussed in the 18-page MAV Report (*see* SAC ¶ 111), and therefore cannot plausibly support a conclusion that an issue that was already public caused a subsequent stock price drop.  In any event, as the Court also noted, the non-binding agreement was so speculative that Canaan's disclosure of it could not be material and actually "might have misled investors," giving them the false impression that Canaan expected to profit handsomely— "especially since no sales ever materialized from the deal."  (Order at 11-12.)

Plaintiffs' remaining materiality arguments add nothing.  For example, Plaintiffs speculate that the Grandshores agreement, which was not announced by Grandshores until October 27, 2019, was "one of the chief letters of intent that Canaan had received," as described by Canaan's Sales Director during a 30-minute October 17, 2019 live broadcast.  SAC ¶¶ 102, 104.  But there is no allegation that the broadcast mentioned Grandshores at all.[4]  And Plaintiffs' assertion that "Yao is an important promoter in the global blockchain industry" (Letter Motion at 2; SAC ¶ 109) fails to plausibly allege materiality.  Under Plaintiffs' theory, Yao's alleged involvement was a bad thing because he was a shareholder of both Canaan and Grandshores, but also a good thing because he was allegedly "important" in the blockchain industry. This equivocal allegation simply fails to transform a non-binding agreement into a material event.

**Conclusion**

The Order directed Plaintiffs to "explain how a second amended complaint would state a claim consistent with this Opinion and Order."  (Order at 13.)  Plaintiffs' effort to make that showing is futile.[5]  Accordingly, Plaintiffs' letter motion should be denied and a final judgment dismissing this action should be entered in Defendants' favor.

---

[4] Although beyond the scope of this letter brief, Plaintiffs' description of Canaan's statements during the broadcast is misleading and inaccurate.  If Plaintiffs are granted leave to file the SAC, Defendants' motion to dismiss will demonstrate, among other things, that Grandshores was not mentioned during the broadcast.

[5] The Court's causation and materiality rulings made it unnecessary for the Court to reach Defendants' other arguments for dismissing the AC.  Those arguments apply with equal force to the proposed SAC and are further proof that amendment would be futile here.  If Plaintiffs are granted leave to file the SAC, Defendants will include those arguments in their motion under Fed. R. Civ. P. 12(b)(6).

O'Melveny

Respectfully submitted,


/s/ Daniel L. Cantor


Daniel L. Cantor
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendant Canaan, Inc.*

_____
Susanna M. Buergel
Audra J. Soloway
Yahonnes Cleary
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
sbuergel@paulweiss.com
asoloway@paulweiss.com
ycleary@paulweiss.com

*Attorneys for Defendants Citigroup Global
Markets Inc., China Renaissance Securities
(Hong Kong) Limited, Galaxy Digital Partners
LLC, Huatai Financing Holdings (Hong Kong)
Limited, Tiger Brokers (NZ) Limited, and
ViewTrade Securities, Inc.*

cc:    All counsel of record (via CM/ECF)

Respectfully submitted,

/s/ Daniel L. Cantor


Daniel L. Cantor
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendant Canaan, Inc.*

Susanna M. Buergel
Audra J. Soloway
Yahonnes Cleary
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
sbuergel@paulweiss.com
asoloway@paulweiss.com
ycleary@paulweiss.com

*Attorneys for Defendants Citigroup Global
Markets Inc., China Renaissance Securities
(Hong Kong) Limited, Galaxy Digital Partners
LLC, Huatai Financing Holdings (Hong Kong)
Limited, Tiger Brokers (NZ) Limited, and
ViewTrade Securities, Inc.*

cc:    All counsel of record (via CM/ECF)

6